**GOLDENBERG, MACKLER, SAYEGH, MINTZ,**
**PFEFFER, BONCHI & GILL**
**A Professional Corporation**
660 New Road, Suite 1-A
Northfield, New Jersey 08225
(609) 646-0222
Attorneys for Defendant, S.W. Café, LLC (46556-14)

**BY:** /s/ Keith A. Bonchi
      *KEITH A. BONCHI, ESQ. (KAB3664)*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GREAT AMERICAN E & S**<br>**INSURANCE COMPANY**<br>　　　　　　　**Plaintiff,**<br>**v.**<br><br>**S.W. CAFÉ CORP.; S.W. CAFÉ, LLC;**<br>**and JOSEPH CAVALIERI**<br><br>　　　　　　　**Defendant**<br>────────────────────<br>**S.W. CAFÉ, LLC**<br>　　　　　　　**Third Party Plaintiff,**<br>**v.**<br><br>**SWEETWATER HOLDINGS, LLC;**<br>**JEFFREY R. ANASTASI, and**<br>**ANITA ANASTASI**<br><br>　　　　　**Third Party Defendants** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:　　**Civil Action No. 1:08-cv-04117-JEI-JS**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

---

### CERTIFICATION OF CLIFF SHUTE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT, S.W. CAFÉ, LLC

---

Cliff Shute hereby certifies:

　　　1.　I am the managing member of defendant, S.W. Café, LLC

in the above-captioned matter.

2.    I am fully familiar with the within matter and submit this certification in support of defendant, S. W. Café, LLC's Motion for Summary Judgment.

3.    On August 29, 2005, third-party defendant, Sweetwater Holdings, LLC (hereinafter "Mortgagor Sweetwater Holdings") executed a Note to secure the sum of $1,400,000.00. Said Note was executed in favor of defendant, S.W. Café, LLC (hereinafter "Mortgagee S.W. Café, LLC"). (See **Exhibit "A"** for a copy of the Note, dated August 29, 2005).

4.    On August 29, 2005, to secure the payment of said Note, the Mortgagor Sweetwater Holdings executed to Mortgagee S.W. Café, LLC a Mortgage, recorded September 7, 2005. The subject Property is located at 2780 7th Avenue, Sweetwater, New Jersey 08037 (hereinafter "Property"). (See **Exhibit "B"** attached hereto for a copy of the First Mortgage and Security Agreement). The subject Property is commonly known as the Sweetwater Casino.

5.    On August 29, 2005, defendant, S.W. Café Corp. (hereinafter "Guarantor Sweetwater Café") entered into a Guaranty Agreement guaranteeing the obligations of the Mortgagor Sweetwater Holdings. (See **Exhibit "C"** attached hereto for a copy of the Guaranty Agreement).

6.    One of the Mortgage requirements was that the Mortgagor Sweetwater Holdings place into effect a policy of insurance containing the standard mortgage non-contribution

2

clause endorsement, naming Mortgagee S.W. Café, LLC as the person to which all payments made by the insurer shall be paid in the case, for example, of a loss or fire. (See **Exhibit "B"** attached hereto for a copy of the First Mortgage and Security Agreement at page 3, paragraph 7).

7. As such, Guarantor Sweetwater Café obtained a policy of insurance from plaintiff, Great American E & S Insurance Company (hereinafter "Great American"). Great American issued to Guarantor Sweetwater Café a policy of insurance, No. PAC 3896203, effective December 12, 2007 to December 12, 2008 (hereinafter "Policy"). (See **Exhibit "D"** attached hereto for Policy attached to the Complaint as Exhibit "A").

8. The Policy provided fire insurance coverage for the subject Property. (See **Exhibit "D"** attached hereto for Policy attached to the Complaint as Exhibit "A" at Document 1-3, page 1 of 50 being the Businesspro Policy Common Declarations).

9. Mortgagee S.W. Café, LLC is listed as a "Mortgage Holder" on the "Mortgage Clause." (See **Exhibit "D"** attached hereto for Policy attached to the Complaint as Exhibit "A" at Document 1-3, page 6 of 50 being the Businesspro Property Damage Part Declarations Page).

10. Pursuant to the terms of the Policy, Great American was supposed to notify Mortgagee S.W. Café, LLC of the cancellation of the Policy prior to a cancellation. (See

**Exhibit "D"** attached hereto for Policy attached to the Complaint as Exhibit "A" at Document 1-4, page 20 of 50 being Building and Personal Property Coverage Form, Section G.2.f)

11. On June 30, 2008, the subject Property was severely damaged by fire.

12. On or about July 1, 2008, Mortgagee S.W. Café, LLC received a "Notice of Cancellation of Insurance" from Great American wherein Great American indicated that the Policy allegedly was cancelled on June 9, 2008. (See **Exhibit "E"** attached hereto for Notice of Cancellation, "Date Mailed: 1st day of July, 2008").

13. However, Mortgagee S.W. Café, LLC never received any notice of the cancellation prior to the alleged cancellation of June 9, 2008 despite the explicit terms of the Policy requiring the same.

14. Mortgagee S.W. Café, LLC also never received any notice of the cancellation concurrent with the alleged cancellation of June 9, 2008.

15. It was Mortgagee S.W. Café, LLC's reasonable expectation that Great American would abide by the clear terms of the Policy in providing the required notice to it as to the alleged cancellation of the Policy.

16. If Mortgagee S.W. Café, LLC had been provided with notice of the same in accordance with the explicit terms of the

4

Policy, it would timely have caused Mortgagor Sweetwater Holdings to place alternate insurance coverage into effect to protect itself as the Mortgagee.

17. On or about August 15, 2008, Great American filed a Complaint against Guarantor Sweetwater Café, Mortgagee S.W. Café, LLC, and Guarantor Cavalieri seeking a declaratory judgment that Great American had no liability under the Policy for any loss and damage sustained as a result of the June 30, 2008 fire at the Property. (See **Exhibit "D"** attached hereto).

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: October 30, 2008

Cliff Shute

# EXHIBIT "A"

\\Rhel01\terri's docs\SHUTE\SWEETWATER\Financing Documents\Note Sweetwater - Anastasi & Cavalieri.doc

# NOTE

$1,400,000.00                                                         August 29, 2005

FOR VALUE RECEIVED, SWEETWATER HOLDINGS, LLC, a New Jersey Limited Liability Company, with an address of 2780 7th Avenue, Sweetwater, Mullica Township, NJ 08037 (hereinafter referred to as "Borrower") hereby promises to pay to the order of S.W. CAFÉ, LLC, a New Jersey Limited Liability Company, with an address at 4730 Pleasant Mills Road, Sweetwater, NJ 08037 ("Lender") the principal sum of ONE MILLION FOUR HUNDRED THOUSAND ($1,400,000.00) DOLLARS (the "Principal"), together with interest from the date hereof on the outstanding balance thereof at the rate of interest set forth below (the "Interest Rate").

Principal and Interest shall be payable, in lawful money of the United States, at the aforesaid office of Lender, or at such other place as the holder of this Note may designate, as follows:

1.       Thirty-five (35) consecutive monthly payments commencing on September 29, 2005, and continuing thereafter on the same day of each month until July 29, 2008, consisting of Interest only on the outstanding principal balance and one final payment of all outstanding principal plus accrued interest then due, which sum shall be due on August 29, 2008.

2.       The Interest Rate shall be 8% per annum rate.

3.       Interest will be calculated on the basis of a 365/366 day year based upon the actual number of days elapsed in any year or part thereof. All payments hereunder shall be without notice, demand, setoff, or deduction. All payments shall further be applied first to late charges and other costs of Lender, then to interest, and the balance to principal.

4.       The entire outstanding principal balance, accrued interest and other charges hereunder shall be due and payable on August 29, 2008 (hereinafter the "Maturity Date").  The term of this Note commencing on the date hereof and continuing until the Maturity Date is hereinafter referred to as the "Loan Period".

5.       Borrower acknowledges that the failure of Borrower to make any payment of Principal or Interest, including the payment due at maturity, within fifteen (15) days after the same is due and payable, will cause Lender to incur additional expense in servicing the indebtedness evidenced by this Note and will deprive Lender of the use of the monies so due to Lender, the precise measure of which expense and loss is not susceptible to exact determination. Accordingly, Borrower agrees that in the event any payment, including the payment due upon maturity, shall be overdue for a period in excess of fifteen (15) days, Borrower shall pay to

Lender a late charge of five ($.05) cents for each dollar so overdue, which Borrower acknowledges is a reasonable basis on which to compensate Lender for the additional expense incident to such delinquency. This shall not be construed to obligate Lender to accept any overdue installment nor to limit Lender's rights and remedies for Borrower's default, as hereinafter set forth.

6.    The Borrower shall have the right to prepay all or any portion of this Note prior to the Maturity Date without penalty or premium.

7.    This Note is secured by certain loan documents (the "Loan Documents") including, without limitation, a first mortgage and security agreement, an assignment of leases, rents, and profits, and certain other collateral security documents all of even date, covering certain premises located at 2780 7th Avenue, Sweetwater, Mullica Township, Atlantic County, New Jersey. Any failure by Borrower to comply with the terms, covenants or conditions of the Loan Documents, or any of them, shall automatically constitute an "Event of Default" under this Note.

8.    Borrower agrees that if Borrower shall, without in each instance obtaining the prior written consent of Lender, sell, transfer or convey (hereinafter called, "Transfer") the Mortgaged Property or any interest therein, or any interest in Borrower, whether voluntarily or by operation of law, then, at the option of Lender, the maturity of this Note shall be advanced to the date of such sale, transfer or conveyance, whereupon the obligations of Borrower evidenced by this Note shall immediately be due and payable.

9.    If Borrower should default in the payment of any monthly installment of principal and interest, or in the payment of any other monetary sum due in accordance with the terms of this Note or the Loan Documents, including but not limited to insurance premiums, taxes and other liens or assessments, within ten (10) days from the date on which any of the foregoing shall fall due; or should Borrower fail to comply with any other terms or conditions contained herein; or should an Event of Default occur in the Loan Documents executed by Borrower or any of its guarantors to Lender in connection herewith; then Lender, at its option and without further notice to Borrower, subject to applicable notice and grace periods provided in the Loan Agreement, may declare immediately due and payable the entire unpaid balance of principal with interest accrued thereon, and payment thereof may be enforced and recovered in whole or in part at any time by one or more of the remedies provided to Lender in this Note or in the other Loan Documents. In such case, Lender may also recover all costs of suit and other expenses in connection therewith, together with an attorneys' fee for collection, together with interest on the principal amount then due and on all other charges hereunder or under the Loan Documents, at a fixed rate of five (5%) percent in excess of the interest rates set forth above (the "Default Rate of Interest").

10.    The remedies of Lender provided herein and in the Loan Documents or otherwise available to Lender at law or in equity shall be cumulative and concurrent, and may be pursued singly, successively and together at the sole discretion of Lender, and may be exercised as often as occasion therefore shall occur. The failure to exercise any such right or remedy shall in no event be construed as a waiver or release of the same.

2

11.     In the event that Borrower or any guarantor of Borrower ("Guarantor") shall default under any other obligation held by Lender and made by Borrower or Guarantor, whether nor or hereafter created (collectively, the "Other Obligations"), such default shall constitute a default hereunder and under the Note and the Loan Documents, and shall entitle Lender to declare this Agreement, the Note, and the Loan Documents immediately due and payable. In the event that Borrower or any Guarantor shall default hereunder or under the Note, or Loan Documents, or under the Other Obligations, such default shall constitute a and by virtue of the Loan Documents shall serve as additional collateral security for such shall serve as additional collateral security for the Loan and the Loan Documents.

12.     To the extent permitted by law, Borrower hereby waives all benefit that might accrue to Borrower by virtue of any present or future laws exempting the Mortgaged Property, or any other property, real or personal, or any part of the proceeds arising from part of the proceeds arising from any sale of any such property, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process or extension of time, and agrees that such property may be sold to satisfy any judgment entered on this Note or the Loan Documents, in whole or in part and in any order as may be desired by Lender.

13.     Except as may be specifically provided in this Note, Borrower (and all endorsers, sureties and guarantors) waive presentment for payment, demand, notice of demand, notice of nonpayment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note; liability hereunder shall be unconditional and shall not be affected in any manner by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Lender.

14.     Borrower shall pay the cost of any revenue, tax or other stamps now or hereafter required by law at any time to be affixed to this Note or the Loan documents. If any taxes shall be imposed with respect to debts secured by the Loan Documents or with respect to notes evidencing debts so secured, Borrower agrees to pay or to reimburse Lender upon demand the amount of such taxes, and if Borrower fails or refuses or is not legally permitted to do so, Lender may at its option accelerate this Note to maturity as in the case of default by Borrower.

15.     The words "Lender" shall be construed to include all of Lender's successors and assigns. Borrower shall not be permitted to assign this Note without prior written consent of Lender, which shall be granted or withheld in Lender's sole and absolute discretion.

16.     Notwithstanding any provision contained herein, Borrower's liability for the payment of Interest shall not exceed the limits imposed by the applicable usury law. If any provision of this Note requires interest payments in excess of the highest rate permitted by law) the provision in question shall be deemed to require only the highest such payment permitted by law. Any amounts theretofore received by Lender hereunder in excess of the maximum amount of interest so permitted to be collected by Lender shall be applied by Lender in reduction of the outstanding principal balance (in which event any applicable prepayment prohibition shall be

3

waived with respect to the amount so prepaid) or if this Note shall have theretofore been paid in full, the amount of such excess shall be promptly returned by Lender to the Borrower.

17.    IN ANY LITIGATION ARISING OUT OF OR RELATING TO ANY OF THE MATTERS CONTAINED IN THIS MORTGAGE NOTE IN WHICH THE BORROWER AND THE LENDER ARE ADVERSE PARTIES) THE BORROWER AND THE LENDER WAIVE TRIAL BY JURY.

IN WITNESS WHEREOF, Borrower has duly executed this Mortgage Note under seal the day and year first above mentioned.

WITNESS:                                    SWEETWATER HOLDINGS, LLC


                                            By: _____
                                                JOSEPH S. CAVALIERI

                                            By: _____
                                                JEFFREY A. ANASTASI

4

# EXHIBIT "B"

\\Rhel01\terri's docs\SHUTE\SWEETWATER\Financing Documents\Mortgage & Security Agt. Sweetwater - Anastasi & Cavalieri.doc

ATLANTIC COUNTY, NJ
MICHAEL J GARVIN, COUNTY CLERK
RCPT # 58500 RECD BY yvette
VOL 12129
REC FEES 150.00
RECORDED 09/07/2005 03:03:35 PM
INST # 2005094789

Prepared by:

15 30

GUARANTEED TITLE AGENCY LLC
524 White Horse Pike
Audubon, NJ 08106

ROBERT P. LANG, ESQ.

# FIRST MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE AND SECURITY AGREEMENT ("Mortgage"), dated August 29, 2005, is by and between **SWEETWATER HOLDINGS, LLC**, with an address of 2780 7th Avenue, Sweetwater, Mullica Township, NJ 08037 ("Mortgagor") and **S.W. CAFÉ, LLC**, the principal office of which is located at 4730 Pleasant Mills Road, Sweetwater, NJ 08037 ("Mortgagee").

To secure the payment of the principal sum of **One Million Four Hundred Thousand Dollars ($1,400,000.00)** with interest thereon at the rate or rates specified in, and represented by a Note, bearing even date herewith, payable to the order of Mortgagee (the "Note") as well as any and all other indebtedness of the Mortgagor to the Mortgagee, whether now existing or hereafter arising ("Debt") and in return for other good and valuable consideration receipt of which is hereby acknowledged, Mortgagor hereby mortgages, grants and transfers to Mortgagee the land known as 2780 7th Avenue, Hammonton, Mullica Township, Atlantic County, New Jersey, also known as Block 5002, Lots 24 and 30 on the official Tax Map of Mullica Township, Atlantic County, New Jersey and more particularly described in Schedule "A" annexed, including the buildings, fixtures, equipment, structures, appliances, machinery, furniture, furnishings and improvements now and hereafter constructed thereon (the "Premises"), all of which shall be deemed real property.

In addition and as independent and separate security for the payment of the Debt and the performance of the obligations, covenants and agreements secured thereby, Mortgagor gives and grants to Mortgagee an exclusive security interest in and to all items of personal property owned by Mortgagor located on the Premises, including but not limited to, all personal property, fixtures, equipment, furnishings, inventory, supplies and articles of tangible personal property of every kind and nature whatsoever, now or hereafter located in or upon the real estate described herein, or any part thereof, and used or usable in connection with any present or future use of the real estate now owned or hereafter acquired and accessions, improvements and additions, replacements and substitutions thereof, together with the rights of the undersigned under any manufacturer's warranties relating to the foregoing and all condemnation awards and rights of warranty, indemnification and recovery from third parties for loss or damage to or diminution of value of the collateral hereby pledged as well as all accounts, accounts receivable, contract rights, instruments, and general intangibles ("Personal Property"). Upon an Event of Default by Mortgagor, Mortgagee shall, at its option, without notice or demand, be entitled to enter upon the Premises to take immediate possession of the Personal Property. Upon request by Mortgagee, Mortgagor shall



# SCHEDULE · A

COMMITMENT NUMBER: 1530 LK

**ALL THAT CERTAIN** tract, lot and parcel of land situate in the Township of Mullica, County of Atlantic, State of New Jersey, being more particularly described as follows:

Beginning at a point at the intersection of the Northeasterly Right-of-Way line of Seventh Avenue (50.00 feet wide) and the Southwesterly Right-of-Way line of New Hampshire Avenue (50.00 feet wide); thence running

1) South 51 degrees 50 minutes 00 seconds West, a distance of 575.00 feet to a point; thence

2) North 38 degrees 10 minutes 00 seconds West, a distance of 98.64 feet to a point; thence

3) North 22 degrees 34 minutes 00 seconds East, a distance of 195.95 feet to a point; thence

4) North 77 degrees 39 minutes 00 seconds West, a distance of 88.64 feet to a point; thence

5) South 22 degrees 34 minutes 00 seconds West, a distance of 131.34 feet to a point; thence

6) North 38 degrees 10 minutes 00 seconds West, a distance of 612.36 feet to a point at the Northwesterly corner of the Combined Pierhead and Bulkhead Line as established by the Department of Conservation and Economic Development, Division of Planning and Development ( Deed Book 1928, page 479); thence

7) Along said Combined Pierhead and Bulkhead Line, North 26 degrees 11 minutes 53 seconds East, a distance of 522.00 feet plus or minus to a point; thence

8) South 38 degrees 10 minutes 00 seconds East, a distance of 97.00 feet to a point; thence

9) North 25 degrees 40 minutes 44 seconds East, a distance of 4.84 feet to a point; thence

10) South 38 degrees 10 seconds 00 seconds East, a distance of 170.00 feet to a point; thence

11) North 51 degrees 50 minutes 00 seconds East, a distance of 50.00 feet to a point; thence

12) North 38 degrees 10 minutes 00 seconds West, a distance of 5.14 feet to a point; thence

13) North 38 degrees 19 minutes 44 seconds East, a distance of 51.38 feet to a point in the Southwesterly Right-of-Way Line of New Hampshire Avenue; thence

14) Southeasterly, along the Southwesterly line of New Hampshire Avenue, South 38 degrees 10 minutes 00 seconds East, a distance of 37.00 feet to a point; thence

15) South 51 degrees 50 minutes 00 seconds West, a distance of 75.00 feet to a point; thence

16) South 38 degrees 10 minutes 00 seconds East, a distance of 140.00 feet to a point in the common dividing line between Lot 24 and Lot 29 in Block 5002; thence

17) Along the common dividing line of Lot 24 and Lot 29 in Block 5002, South 51 degrees 50 minutes 00seconds West, a distance of 75.00 feet to a Capped Iron Pin found; thence

18) Along the dividing line of Lot 24 and Lot 29 in Block 5002, South 38 degrees 10 minutes 00 seconds East, a distance of 75.00 feet to a Capped Iron Pin found; thence

19) Along the dividing line of Lot 24 and Lot 29, North 51 degrees 50 minutes 00 seconds East, a distance of 150.00 feet to a Capped Iron Pin found in the Southwesterly Right-of-Way Line of New Hampshire Avenue; thence

20) Along the Southwesterly Right-of-Way Line of New Hampshire Avenue, South 38 degrees 10 minutes 00 seconds East, a distance of 537.15 feet to the point and place of Beginning.

*__FOR INFORMATIONAL PURPOSES ONLY:__*
*BEING* known as Lot 24 and 30, Block 5002 on the Township of Mullica Tax Map


**Legal Description drawn in accordance with a survey prepared by Thomas J. Ertle & Associates, LLC, dated 8/23/05**

assemble and make the Personal Property available to Mortgagee at a place designated by Mortgagee which is reasonably convenient to both parties. Mortgagee may propose to retain the Personal Property in partial satisfaction of the Debt, or sell all or any portion of the Personal Property at public or private sale in accordance with the Uniform Commercial Code of the State of New Jersey or in accordance with foreclosure sale under this Mortgage. In the event that Mortgagee elects to proceed under the Uniform Commercial Code as to the Personal property and notification of intended disposition of any of the Personal Property is required by law, such notification, if mailed, shall be deemed reasonably and properly given if mailed at least five (5) days before such disposition, postage prepaid, addressed to Mortgagor at the address of Mortgagor. Mortgagor agrees that a commercially reasonable manner of disposition of the Personal property on a default shall, at the option of Mortgagee, include a sale of the Personal Property, in whole or in part, concurrently with the foreclosure upon the Premises in accordance with the provisions of the Mortgage. In the event Mortgagee shall dispose of any or all of the Personal Property after default, the proceeds of this disposition shall be applied as required by law, or to the extent not required by law, at the absolute discretion of Mortgagee in the following order: (a) to the expenses of retaking, holding and preparing for sale, selling and the like; (b) to reasonable attorney's fees and legal expenses incurred by Mortgagee; (c) to the satisfaction of the Debt; and (d) at the discretion of Mortgagee, any surplus may be applied to the payment of the indebtedness of Mortgagor to third parties claiming a security interest in the Personal Property. Mortgagor shall execute, deliver, file and refile any financing statements, continuation statements or other security agreements Mortgagee may require from time to time to confirm the lien of the Mortgage with respect to the foregoing. Without limiting the foregoing, the Mortgagor hereby irrevocably appoints Mortgagee attorney-in-fact for Mortgagor to execute, deliver and give such instruments for and on behalf of Mortgagor. Mortgagor agrees to execute any and all documents, including financing statements, which may be required by Mortgagee from time to time to perfect the security interest granted hereby.

In addition to any other paragraph of this Mortgage and notwithstanding any term, condition or covenants hereof to the contrary, this Mortgage secures the present obligation of the Mortgagor as well as any other obligations of the Mortgagor to Mortgagee. These obligations shall include present and future obligations, whether direct, indirect, primary, secondary, fixed or contingent.

Mortgagor warrants, covenants and agrees with Mortgagee as follows:

1.     **Definitions**.   The term "Loan Documents" shall mean the Note, this Mortgage and Security Agreement, the Guaranty, the Loan and/or Security Agreement, and any and all documents executed by Mortgagor and/or any Guarantor before, during or following the Closing.

2.     **Payment of Debt**. Mortgagor shall pay the Debt in accordance with its terms.

3.     **Title Warranty**.   Mortgagor is seized of an indefeasible estate in fee simple in the Premises, and subject to permitted liens, Mortgagor warrants the title to the Premises.

- 2 -

4. **Repair**. Mortgagor shall maintain the Premises in a good and substantial state of repair so as not to impair Mortgagee's collateral and shall make such repairs to same as may be reasonably required by Mortgagee from time to time.

5. **Compliance with Law**. Mortgagor shall comply with and maintain the Premises in compliance with all laws and requirements of all governments and governmental authorities applicable thereto.

6. **Taxes**. Mortgagor shall pay promptly, as the same become payable, all taxes, assessments and governmental charges on or to the Premises; and no owner of the Premises shall be entitled to any credit by reason of the payment of any tax thereon.

7. **Insurance**. The Mortgagor will keep the Premises and Personal Property insured against loss or damage by fire, standard extended coverage perils and such other hazards as the Mortgagee shall from time to time require in amounts approved by the Mortgagee, which amounts shall in no event be less than the Debt or the value of the Premises and the Personal Property [whichever is greater], and will maintain such other forms of insurance coverage with respect to the Premises and the Personal Property as the Mortgagee shall from time to time require in amounts approved by the Mortgagee and provide copies of such policies to the Mortgagee. All Policies shall contain the standard mortgagee non-contribution clause endorsement, satisfactory to the Mortgagee, naming the Mortgagee as the person to which all payments made by the insurer thereunder shall be paid and shall be satisfactory in all respects to the Mortgagee. Not later than twenty (20) days prior to the expiration date of each of the policies, the Mortgagor will deliver to the Mortgagee a renewal policy or policies. If at any time the Mortgagee is not in receipt of written evidence that all insurance policies are in force and effect, the Mortgagee shall have the right, without notice to the Mortgagor, to take such action as the Mortgagee deems necessary to protect its interest in the Premises and the Personal Property, including, without limitation, the obtaining of such insurance coverage as the Mortgagee in its sole discretion deems appropriate, and all expenses incurred by the Mortgagee in connection with such action or in obtaining such insurance and keeping it in effect shall be paid by the Mortgagor to the Mortgagee upon demand. The Mortgagor shall at all times comply with and shall cause the Premises and the Personal Property to comply with the terms, conditions, stipulations and requirements of the insurance policies. If the Premises, or any portion thereof, is located in a Federally designated "special flood hazard area," in addition to the other policies required under this paragraph, a flood insurance policy shall be delivered by the Mortgagor to the Mortgagee. If the Premises or Personal Property shall be damaged or destroyed, in whole or in part, by fire or other property hazard or casualty, the Mortgagor shall give prompt notice thereof to the Mortgagee. Sums paid to the Mortgagee by any insurer may be retained and applied by the Mortgagee toward payment of the Debt, whether or not then due and payable, in such order, priority and proportions as the Mortgagee, in its sole and absolute discretion, shall deem proper or, at the discretion of the Mortgagee, the same may be paid, either in whole or in part, to the Mortgagor for restoration of the Premises and/and Personal Property or such other purposes as the Mortgagee shall designate. If the Mortgagee shall receive and retain such insurance proceeds, the lien of this Mortgage shall be reduced only by the amount received and retained by the Mortgagee and actually applied by the Mortgagee in reduction of the Debt.

- 3 -

8.    **Tax and Insurance Reserve**.  As for a tax and insurance reserve if required by Mortgagee, each month on the day that the payment is due under the Note, Mortgagor shall pay to Mortgagee one-twelfth (1/12th) of the sum of the taxes on the Premises and the aggregate of the premiums on insurance on the Premises, which Mortgagee estimates will become payable within the next succeeding twelve (12) months.

9.    **Eminent Domain**.  Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise, the Mortgagor shall continue to pay the Debt at the time and in the manner provided for its payment in the Note and this Mortgage and the Debt shall not be reduced until any award or payment therefor shall have been actually received and applied by the Mortgagee to the discharge of the Debt.  The Mortgagee may apply the entire amount of any such award or payment to the discharge of the Debt, whether or not then due and payable, in such order, priority and proportions as the Mortgagee in its discretion shall deem proper.  If the Premises are sold, through foreclosure or otherwise, prior to the receipt by the Mortgagee of such award or payment, the Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive such award or payment, or a portion thereof sufficient to pay the Debt, whichever is less.  The Mortgagor shall file and prosecute its claim or claims for any such award or payment in good faith and with due diligence and cause the same to be collected and paid over to the Mortgagee.  The Mortgagor hereby irrevocably authorizes and empowers the Mortgagee, in the name of the Mortgagor or otherwise, to collect and receipt for any such award or payment and to file and prosecute such claim or claims.  Although it is hereby expressly agreed that the same shall not be necessary in any event, the Mortgagor shall, upon demand of the Mortgagee, make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning any such award or payment to the Mortgagee, free and clear of any encumbrances of any kind or nature whatsoever.

10.    **Environmental Provisions**.

10.1.    For purposes of this paragraph, the term "Environmental Laws" shall mean all federal, state and local laws, regulations and orders, whether now or in the future enacted or issued, pertaining to the protection of land, water, air, health, safety or the environment.  The term "Regulated Substances" shall mean all substances regulated by Environmental Laws, or which are known or considered to be harmful to the health or safety of persons, or the presence of which may require investigation, notification or remediation under the Environmental Laws.  The term "Contamination" shall mean the discharge, release, emission, disposal or escape of any Regulated Substances into the environment.

10.2.    The Mortgagor represents and warrants (i) that no Contamination is present at, on or under the Premises and that no Contamination is being or has been emitted onto any surrounding property; (ii) all operations and activities on the Premises have been and are being conducted in accordance with all Environmental Laws, and the Mortgagor has all permits and licenses required under the Environmental Laws; (iii) no underground or aboveground storage tanks are or have been located on or under the Premises; and (iv) no legal or administrative proceeding is pending or

- 4 -

threatened relating to any environmental condition, operation or activity on the Premises, or any violation or alleged violation of Environmental Laws. These representations and warranties shall be true as of the date hereof, and shall be deemed to be continuing representations and warranties which must remain true, correct and accurate during the entire duration of the term of this Mortgage.

10.3.   The Mortgagor shall ensure, at its sole cost and expense, that the Premises and the conduct of all operations and activities thereon comply and continue to comply with all Environmental Laws. The Mortgagor shall notify the Mortgagee promptly and in reasonable detail in the event that the Mortgagor becomes aware of any violation of any Environmental Laws, the presence or release of any Contamination with respect to the Premises, or any governmental or third party claims relating to the environmental condition of the Premises or the conduct of operations or activities thereon. The Mortgagor also agrees not to permit or allow the presence of Regulated Substances on any part of the Premises, except for those Regulated Substances (i) which are used in the ordinary course of the Mortgagor's business, but only to the extent they are in all cases used in a manner which complies with all Environmental Laws; and (ii) those Regulated Substances which are naturally occurring on the Premises. The Mortgagor agrees not to cause, allow or permit the presence of any Contamination on the Premises.

10.4.   The Mortgagee shall not be liable for, and the Mortgagor shall indemnify, defend and hold the Mortgagee and all of its officers, directors, employees and agents, and all of their respective successors and assigns harmless from and against all losses, costs, liabilities, damages, fines, claims, penalties and expenses (including, without limitation, reasonable attorneys', consultants' and contractors' fees, costs incurred in the investigation, defense and settlement of claims, as well as costs incurred in connection with the investigation, remediation or monitoring of any Regulated Substances or Contamination) that the Mortgagee may suffer or incur (including, without limitation, as holder of the Mortgage, as mortgagee in possession or as successor in interest to the Mortgagor as owner of the Premises by virtue of a foreclosure or acceptance of a deed in lieu of foreclosure) as a result of or in connection with (i) any Environmental Laws (including, without limitation, the assertion that any lien existing or arising pursuant to any Environmental Laws takes priority over the lien of the Mortgage); (ii) the breach of any representation, warranty, covenant or undertaking by the Mortgagor in this paragraph; (iii) the presence on or the migration of any Contamination or Regulated Substances on, under or through the Premises; or (iv) any litigation or claim by the government or by any third party in connection with the environmental condition of the Premises or the presence or migration of any Regulated Substances or Contamination on, under, to or from the Premises.

10.5.   Upon the request of the Mortgagee, the Mortgagor shall execute and deliver an Environmental Indemnity Agreement satisfactory in form and substance to the Mortgagee, to more fully reflect the representations, warranties, covenants and indemnities of the Mortgagor with respect to the Environmental Laws.

11.   **Events of Default**. At the option of the Mortgagee, the occurrence of any of the following events shall constitute an "Event of Default" under this Mortgage and the other Loan Documents:

- 5 -

11.1.   if an Event of Default has occurred under the Note[s] or other Loan Documents.

11.2.   a sale, conveyance or other disposition of all or a portion of the Premises or the abandonment or vacating of the Premises or any substantial part thereof.

11.3.   a default under any other mortgage which is a lien upon the Premises.

11.4.   the creation of a security interest, whether perfected or otherwise, in the Premises or any collateral provided for herein (other than the security interest of the Mortgagee); the placing of any additional mortgage lien on the Premises, or the entering into of any secondary financing, without the prior written consent of Mortgagee, which consent Mortgagee shall be entitled to withhold.

12.   **Assignment of Rents**.

12.1.   Mortgagor hereby unconditionally assigns to Mortgagee the rents, issues and profits of the Premises theretofore accrued and thereafter accruing. Pending and so long as the Mortgagor is not in default of any covenant or condition imposed upon it by the terms of the Note, this Mortgage or any of the other Loan Documents, all dated even date herewith, the Mortgagor is hereby granted a revocable license to collect rents and exercise any and all other rights under the leases.

12.2.   Mortgagor shall hold in trust for Mortgagee the rents, issues and profits of the Premises which Mortgagor receives, shall not commingle the same with Mortgagor's other property, and shall pay the same promptly to Mortgagee upon demand; and

12.3.   Upon the occurrence of an event of default, Mortgagor shall pay Mortgagee, monthly in advance, as a tenant from month to month, a reasonable rent for any part of the Premises occupied or used by Mortgagor; if Mortgagor does not do so, Mortgagee may dispossess Mortgagor by summary proceedings; and, in any event, Mortgagor's occupancy shall terminate upon delivery of a deed, whether voluntary or in foreclosure.

12.4.   If Mortgagor has executed a separate Assignment of Leases, Rents, and Other Agreements, the terms and conditions of such assignment are hereby incorporated herein by reference.

13.   **Remedies**.  If an Event of Default occurs, at Mortgagee's option, Mortgagee may do any and all of the following and to effectuate same Mortgagor hereby nominates and appoints Mortgagee its true and lawful attorney-in-fact with full power of substitution in the Premises, and hereby empowers said attorney or attorney as follows:

13.1.   Declare the Debt to be immediately payable, and thereupon the same shall become immediately payable;

13.2.   Recover judgment against Mortgagor for the Debt and neither the recovery of judgment nor the levy of execution thereof on any property, including the Premises, shall affect Mortgagee's rights hereunder or the lien hereof;

13.3.   Enter upon and take possession of the Premises, or have a receiver of the rents, issues and profits appointed, without proof of depreciation in the value of the Premises, inadequacy of the Premises, or insolvency of Mortgagor, and Mortgagee or the receiver may lease the Premises, in the name of Mortgagor, Mortgagee or the receiver, and may receive the rents, issues and profits and apply the same, in its sole and absolute discretion (i) to the payment of expenses of operating, maintaining, repairing and improving the Premises, including rent and commissions and rental collection commissions paid to an agent of Mortgagee or of the receiver; and/or (ii) on account of the Debt, in such order and in such amounts as Mortgagee determines; but, while in possession of the Premises, Mortgagee or the receiver shall be liable to account only for the rents, issues and profits actually received.

13.4.   Take such other action to protect and enforce Mortgagee's rights hereunder and the lien hereof, as Mortgagee deems advisable, including but not limited to:

13.4.1. The foreclosure of this Mortgage, subject, at Mortgagee's option, to the rights of tenants and other persons in the Premises; and, in any proceeding to enforce any personal liability for the Debt, Mortgagor shall not assert, as a defense, that Mortgagee failed to foreclose any such rights or that any such rights adversely affected the value of the Premises; and

13.4.2. Upon filing a Complaint in Foreclosure, the appointment of a receiver of rents, issues and profits without proof of depreciation in the value of the Premises, inadequacy of the Premises, or insolvency of Mortgagor; and

13.4.3. The sale of the Premises, in a foreclosure proceeding, in one or several parcels, at Mortgagee's option and without obligation to have the Premises marshalled; and

13.4.4. To use any funds of Mortgagor on deposit with Mortgagee; and

13.4.5. To employ such contractors, subcontractors and agents, architects and inspectors as shall be required for said purposes; to pay, settle or compromise all existing bills and claims which may be liens against the Premises, or as may be necessary or desirable for the completion of any construction thereon, or for the clearance of title; and with regard to all of the above, apply the amounts so paid by the Mortgagee to the Debt owed by the Mortgagor; and

13.4.6. To execute all applications and certificates in the name of Mortgagor which may be required and every act which Mortgagor might do in its own behalf. It is further understood and agreed that this power of attorney shall be deemed to be a power coupled with an interest and cannot be revoked. The above-mentioned attorney shall also have power to prosecute and defend all actions or proceedings in connection with the Premises and to take such action and require such performance as said attorney-in-fact deems necessary; and

13.4.7. Immediately, and without notice or other action, set-off any money owed by Mortgagee in any capacity to Mortgagor against any of Mortgagor's liability to Mortgagee, whether due or not, and Mortgagee shall be deemed to have exercised such right of set-off and to have made a charge against any such money immediately upon the occurrence of such Event of Default, even though the actual book entries may be made at some time subsequent thereto; and

13.4.8. Take any of the remedies otherwise available to Mortgagee as a matter of law or equity.

14.    **Additional Remedies**.  In the event of the failure of Mortgagor to comply with any of the requirements of N.J.S.A. 13:1K-6, et. seq., and/or N.J.S.A. 58:10-23.11, et. seq., and/or any related environmental rules or regulations, or in the case of the occurrence of any Event of Default by Mortgagor and failure to cure said Event of Default within any time period set forth therein, Mortgagee shall have the right, at its sole option, to comply with such statutory or regulatory requirements, and/or to cure any such Event of Default, and the costs and expenses of such compliance and/or cure shall be added to the indebtedness secured by this Mortgage and shall be due and payable upon demand with interest computed from the date(s) on which said costs and expenses were incurred by Mortgagee at the default interest rate set forth in the Note which this Mortgage secures.

15.    **Mortgagee's Rights Cumulative**.  The rights and remedies of Mortgagee hereunder shall be in addition to every other right and remedy now and hereafter provided by law; the rights and remedies of Mortgagee shall be cumulative and not exclusive one of the other; Mortgagee may exercise the same at such times, in such order, to such extent, and as often as Mortgagee deems advisable, and without regard to whether the exercise of one precedes, concurs with, or succeeds the exercise of another; no delay or omission by Mortgagee in exercising a right or remedy shall exhaust or impair the same, or constitute a waiver of, or acquiescence in, the default; and no waiver of a default by Mortgagee shall extend to or affect any other default or impair any right or remedy with respect thereto.

16.    **Indulgences; Extensions**.    Mortgagee may allow Mortgagor any indulgences, forebearances and extensions with respect to the Debt, the Premises and Mortgagor's obligations hereunder, may waive compliance with any of the provisions hereof, and may release all or any part of the Premises from the lien hereof, without affecting the personal liability of any person for the payment of the Debt, or the priority of the lien hereof upon the remainder of the Premises.

17.    **Other Security**.  If the Debt is secured at any time by a lien on or a security interest in any other real or personal property under any mortgage or security instrument executed and delivered by Mortgagor or any other person (corporate or individual), Mortgagor consents to Mortgagee's exercising with respect thereto any of the rights herein and therein provided, at Mortgagee's option and without obligation to have the Premises and such other real and personal property marshalled.

18.   **Advances by Mortgagee.**   Whether or not an Event of Default shall have occurred, if Mortgagor does not pay any amount payable by it under, or fails to comply with any provision of this Mortgage or the Debt or any instrument evidencing any part of the Debt, Mortgagee may pay such amount or comply with such provision and make such expenditures, including reasonable counsel fees, in connection therewith and with enforcing this Mortgage and the Debt, for repairing, maintaining and preserving the Premises, for establishing, preserving, protecting and restoring the priority of the lien hereof or the value of any and all collateral for this Mortgage, for obtaining official tax searches of the Premises, for protecting and preserving any use being made of the Premises now or hereafter, and for advances to any trustee or receiver of the Premises, as Mortgagee deems advisable; each amount so paid or expended, with interest at the default rate of interest set forth in the Note to cover the administrative expense of making the aforesaid advances, shall become part of the Debt and be secured hereby and shall be payable on demand; and such obligation shall constitute a personal obligation of Mortgagor and shall survive the foreclosure hereof and any sale of the Premises; but no such payment or compliance by Mortgagee shall constitute a waiver of Mortgagor's failure so to do or affect any right or remedy of Mortgagee with respect thereto. If, during the term of this Mortgage, Mortgagee shall be required to participate, directly or indirectly, in the investigation, prosecution or resolution of any claim with respect to the Mortgagor or the Premises, whether or not such claim shall result in litigation, Mortgagor shall pay any and all expenses of Mortgagee incidental to such participation, including reasonable counsel fees.

19.   **Personal Representatives, Etc.**   The provisions hereof shall bind, and inure to the benefit of, Mortgagor and Mortgagee and their respective heirs, personal representatives, successors and assigns.

20.   **Indemnity.**   Anything in this Mortgage or the other Loan Documents to the contrary notwithstanding, Mortgagor shall indemnify and hold Mortgagee harmless and defend it at Mortgagor's sole cost and expense against any loss or liability, cost or expense (including, without limitation, reasonable attorneys' fees and disbursements of Mortgagee's counsel, whether in-house staff, retained firms, or otherwise) and all claims, actions, procedures and suits arising out of or in connection with (i) any ongoing matters arising out of the transaction contemplated by this Mortgage, the Note and any other document or instrument now or hereafter executed and/or delivered in connection with the Debt and the Debt (including, but not limited to, all costs of any reappraisals of the Premises or any other collateral for the Debt), (ii) any amendment to, or restructuring of, the Debt and the Loan Documents, (iii) any and all lawful action that may be taken by Mortgagee in connection with the enforcement of the provisions of this Mortgage or the Note or any of the other Loan Documents, whether or not suit is filed in connection with the same, or in connection with Mortgagor, any Guarantor and/or any partner, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding; and (iv) the past current and/or future sale or offering for sale of partnership interests in Mortgagor, including, without limitation, liabilities under any applicable securities or blue sky laws. All sums expended by Mortgagee shall be payable on demand and, until reimbursed by Mortgagor pursuant hereto, shall be deemed additional principal of the Debt and shall bear interest at the default rate provided for in the Note.

21.   **Relationship**. The relationship of the Mortgagee to the Mortgagor hereunder is strictly and solely that of lender and borrower and nothing contained in the Note, this Mortgage, or any other document or instrument now or hereafter executed and delivered in connection therewith or otherwise in connection with the loan secured hereby is intended to create, or shall in any event or under any circumstance be construed as creating, a partnership, joint venture, tenancy-in-common, joint tenancy or other relationship of any nature whatsoever between the Mortgagee and the Mortgagor other than as lender and borrower.

22.   **Non-Merger**. All of the terms and conditions of the loan commitment letter between Mortgagee and Mortgagor, if any, together with any amendments thereof, are incorporated herein by reference, and shall survive the making of the loan herein and therein contemplated.

23.   **Cross Collateral/Cross Default**. This Mortgage shall secure, in addition to the Debt evidenced by the Note and secured hereby, all other obligations of Mortgagor, its successors or assigns, whether oral or written, secured or unsecured, and regardless of their nature, and shall also secure any and all such future obligations, when they are incurred. This covenant shall be effective without the execution of any affirmative action by Mortgagor. In the event that the Mortgagor shall default under any other obligation or mortgage held by Mortgagee and made by Mortgagor, such default hereunder and under the Note which the Mortgage secures, shall be immediately due and payable, anything to the contrary herein notwithstanding. In the event that Mortgagor shall default under this Mortgage, such default shall constitute an Event of Default under any and all obligations and mortgages of Mortgagor to Mortgagee, and Mortgagee, at its option, may declare all such obligations and mortgages immediately due and payable.

24.   **Waiver of Trial by Jury.** The Mortgagor hereby irrevocably and unconditionally waives, and the Mortgagee by its acceptance of the Note and this Mortgage irrevocably and unconditionally waives, any and all rights to trial by jury in any action, suit or counterclaim arising in connection with, out of or otherwise relating to the Note, this Mortgage or any other Loan Document or instrument now or hereafter executed and delivered in connection therewith or the loan secured by this Mortgage.

25.   **Modifications and Extensions.** The within Mortgage also secures any and all extensions, renewals and modifications of the Note, this Mortgage or any other Loan Documents including without limitation, any and all notes given in renewal of, substitution for, or in modification of the Note which is secured by this Mortgage. Modification means a change in the interest rate, due date, or other terms and conditions of the Debt. If the parties to this Mortgage agree to a change which is a modification as defined in L. 1991, c.364, this shall be subject to the priority provisions of the law. Advances made pursuant to the agreement secured by this Mortgage shall be "modifications" as defined in L. 1991, c.364, and the priority of this Mortgage shall be subject to that law.

26.   **Security Agreement.** This Mortgage constitutes both a real property mortgage and a "security agreement," within the meaning of the Uniform Commercial Code. The Mortgagor by

executing and delivering this Mortgage has granted to the Mortgagee, as security for the Debt, a security interest in the Personal Property.

**IN WITNESS WHEREOF,** Mortgagor has caused this Mortgage to be duly executed and delivered on the day and year first above written.

SWEETWATER HOLDINGS, LLC

By: _____
Joseph S. Cavalieri, Member

By: _____
Jeffrey R. Anastasi, Member

STATE OF NEW JERSEY    :
                       : SS.:
COUNTY OF ATLANTIC     :

Be it remembered, that on this 29th day of August, 2005, before me the subscriber, a Notary Public, personally appeared Joseph S. Cavalieri, who, I am satisfied, is the person who signed the within instrument as a Member of Sweetwater Holdings, LLC, the limited liability company named therein and he thereupon acknowledged that the said instrument made by the limited liability company was signed and delivered by him as such member and is the voluntary act and deed of the limited liability company made by virtue of authority from its members.

_____ Notary Public

MARY K. YOUNG
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires June 19, 2010

STATE OF NEW JERSEY    :
                       : SS.:
COUNTY OF ATLANTIC     :

Be it remembered, that on this 29th day of August, 2005, before me the subscriber, a Notary Public, personally appeared Jeffrey R. Anastasi, who, I am satisfied, is the person who signed the within instrument as a Member of Sweetwater Holdings, LLC, the limited liability company named therein and he thereupon acknowledged that the said instrument made by the limited liability company was signed and delivered by him as such member and is the voluntary act and deed of the limited liability company made by virtue of authority from its members.

_____ Notary Public

MARY K. YOUNG
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires June 19, 2010

- 11 -

*1530 UL*

# LOAN POLICY OF TITLE INSURANCE

### Issued by Lawyers Title Insurance Corporation



*Lawyers Title Insurance Corporation is a member of the LandAmerica family of title insurance underwriters.*

**POLICY NUMBER**

G47-2706677

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.
   The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, LAWYERS TITLE INSURANCE CORPORATION has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

**LAWYERS TITLE INSURANCE CORPORATION**

Attest: *J.A.D.West*      By: *Janet A. Alpert*

Secretary            President

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
       (i) to timely record the instrument of transfer; or
       (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

NJRB 2-0

# LAWYERS TITLE INSURANCE CORPORATION

### ALTA Loan Policy

## SCHEDULE A

File No.: 1530 LK
Policy #: G47-2706677
Date of Policy: 09/07/05
Amount of Insurance: $1,400,000.00

1. **Name of Insured:**

   ### S.W. Café, LLC, ITS SUCCESSORS
   ### AND/OR ASSIGNS AS THEIR INTEREST MAY APPEAR

2. **The estate or interest in the land described in this Schedule and which is encumbered by the insured mortgage is:**

   Fee Simple

3. **The estate or interest referred to herein is at Date of Policy vested in:**

   Sweetwater Holdings, LLC by Deed from S.W. Café, LLC dated 08/29/05, recorded 09/07/05 as Instrument #2005094788 in the Atlantic County Clerk's Office.

4. **The mortgage herein referred to as the insured mortgage, and assignments thereof, if any, are described as follows:**

   **MORTGAGE:** made by Sweetwater Holdings, LLC to S.W. Café, LLC, dated 08/29/05 and recorded 09/07/05 as Instrument #2005094789 in the Atlantic County Clerk's Office. To secure the sum of $1,400,000.00.

   NOTE: Subject to the exclusions from coverage the exceptions contained on Schedule B and the conditions and stipulations hereof, this policy insures that the mortgage set forth in Schedule A, Item Number 4 is a first lien.

5. **The land referred to in this policy is described as follows:**

   PREMISES situate in the Township of Mullica, County of Atlantic and State of New Jersey. BEING more particularly described as Instrument #2005094789.

   *Mary K. Young*

   **Countersigned Authorized Officer or Agent**
   **This policy is invalid unless the cover sheet and Schedule B are attached**

# Schedule B
## PART I

Loan Policy #: G47-2706677

**This policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses) by reason of:**

1. Encroachments, overlaps, boundary line disputes, and any other matters which would be disclosed by an accurate survey and inspection of the premises.  **(Removed)**

2. Taxes paid through September 30, 2005. (Subsequent taxes not yet due and payable)

3. Possible liability for added or omitted tax assessment pursuant to N.J.S.A. 54:4:63.1 et seq.

4. Subject to Right of Way as contained in Deed Book 1446, page 246.

5. Subject to covenants, conditions and a right of way as contained in Deed Book 1473, page 166.

6. Rights granted to the Atlantic City Electric Company in Deed Book 1108, page 313.

7. Rights granted to Atlantic City Electric Company and New Jersey Bell Telephone Company as contained in Deed Book 3667, page 19.

8. Subject to terms, conditions and limitation of Riparian Grant given by the State of New Jersey as contained in Deed Book 3667, page 19.

9. Title to that portion of premises lying within the bed(s) of Seventh Avenue and New Hampshire Avenue; is subject to public and private rights therein.

10. Rights, public and private, together with flooding and drainage rights if any, appurtenant thereto, in and to all streams or other water courses crossing, bounding or affecting premises in questions.

11. Subject to the paramount rights of the United States of American over commerce and/or navigation including the right to fix and alter harbor, bulkhead or pierhead lines from time to time and to take land or an interest therein or remove any fill or improvements thereon or thereunder at any point below the ordinary high water mark of the Mullica River, all with compensation therefore.

NOTE: The improvements located on the land as of the date of this Policy do not encroach on the easements (and/or setback lines) nor do the easements interfere with the use and occupancy of the improvements.

# SCHEDULE B - PART II

**Loan Policy # G47-2706677**

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that such matters are subordinate to the lien or change of the insured mortgage upon the estate or interest:

**ASSIGNMENT OF LEASES AND RENTS:** between Sweetwater Holdings, LLC and S.W. Café, LLC dated 08/29/05 and recorded 09/07/05 as Instrument #2005094790 in the Atlantic County Clerk's Office.

**FINANCING STATEMENT:** File #2316218-1, Filed with the Department of Treasury, UCC Section; S.W. Café LLC, Secured Party; Sweetwater Holdings LLC, Debtor; S.W. Café Corp, Additional Debtors, Filed 09/02/2005; Covers Personal Property, Fixtures, Equipment, Inventory, Supplies and articles of tangible personal property of every kind and nature whatsoever, now or hereafter located in upon the real estate described herein.

**FINANCING STATEMENT:** Instrument Number#2005094791, recorded 09/07/2005 in the Atlantic County Clerk's Office; S.W. Café LLC, Secured Party; Sweetwater Holdings LLC, Debtor; S.W. Café Corp, Additional Debtors; Covers Inventory, Supplies and articles of tangible personal property of every kind and nature whatsoever, now or hereafter located in upon the real estate described herein.

**MORTGAGE:** made by Sweetwater Holdings, LLC to Joseph J. Cavalieri, dated 08/29/2005 and recorded 09/07/2005 as Instrument Number# 2005094792 in the Atlantic County Clerk's Office.  To secure the sum of $400,000.00.

**FINANCING STATEMENT:** File #2319682-7, Filed with the Department of Treasury, UCC Section; Joseph J. Cavalieri, Secured Party; S.W. Café Inc., Debtors, Filed 09/22/2005; Covers All Furniture, Fixtures, Equipment, Inventory and systems located within the Sweetwater Casino, including the trade-name "Sweetwater Casino"

**FINANCING STATEMENT:** Instrument Number#2005099119, recorded 09/16/2005 in the Atlantic County Clerk's Office; Joseph J. Cavalieri, Secured Party; S.W. Café Inc., Debtors,; Covers All Furniture, Fixtures, Equipment, Inventory and systems located within the Sweetwater Casino, including the trade-name "Sweetwater Casino"

# SURVEY ENDORSEMENT

Issued by **Lawyers Title Insurance Corporation**

Land America
**Lawyers Title** Lawyers Title Insurance Corporation is a member of the LandAmerica family of title insurance underwriters

File No:  1530LK

Attached to and made a part of Policy No:  G47-2706677

Exception No. 1   is removed.  Unless an exception is taken in Schedule B, the policy insures against loss arising from easements, encroachments, overlaps and boundary line disputes.  The following matters shown on a survey made by Thomas J. Ertle & Associates, LLC dated 08/23/05 are added to Schedule B:

    a) Concrete and Asphalt Drives extend beyond title lines
    b) Wire Fences do not coincide with title lines
    c) Existing Timber Floating Docks extend beyond Riparian Grant Lines

NOTE:  The success of any proceedings in a court of competent jurisdiction to require the elimination of violation set forth above is hereby insured against.

This policy does not insure against errors or inaccuracies in the survey with respect to matters which do not affect title.

This endorsement is made a part of the commitment or policy.  It is subject to all of the terms of the commitment or policy and prior endorsements thereto.  Except as expressly stated on this endorsement, the terms, dates and amount of the commitment, policy and prior endorsements are not changed.

**LAWYERS TITLE INSURANCE CORPORATION**

Dated:  September 7, 2005

Countersigned:

By:_____
    Authorized Officer or Agent

End. – Survey
Form 1107-7

NJRB 5-01
Rev. 03/02/98

# SCHEDULE "C"
## (CONTINUED)

LOAN POLICY NUMBER: G47-2706677

16) South 38 degrees 10 minutes 00 seconds East, a distance of 140.00 feet to a point in the common dividing line between Lot 24 and Lot 29 in Block 5002; thence

17) Along the common dividing line of Lot 24 and Lot 29 in Block 5002, South 51 degrees 50 minutes 00seconds West, a distance of 75.00 feet to a Capped Iron Pin found; thence

18) Along the dividing line of Lot 24 and Lot 29 in Block 5002, South 38 degrees 10 minutes 00 seconds East, a distance of 75.00 feet to a Capped Iron Pin found; thence

19) Along the dividing line of Lot 24 and Lot 29, North 51 degrees 50 minutes 00 seconds East, a distance of 150.00 feet to a Capped Iron Pin found in the Southwesterly Right-of-Way Line of New Hampshire Avenue; thence

20) Along the Southwesterly Right-of-Way Line of New Hampshire Avenue, South 38 degrees 10 minutes 00 seconds East, a distance of 537.15 feet to the point and place of Beginning.

**_FOR INFORMATIONAL PURPOSES ONLY:_**
**_BEING_** known as Lot 24 and 30, Block 5002 on the Township of Mullica Tax Map

**Legal Description drawn in accordance with a survey prepared by Thomas J. Ertle & Associates, LLC, dated 8/23/05**

# EXHIBIT "C"



\\Rhel01\tern's docs\SHUTE\SWEETWATER\Financing Documents\Guaranty Sweetwater - S.W Cafe Corp.doc

# GUARANTY AGREEMENT

**THIS GUARANTY AGREEMENT ("Guaranty")** is made and entered into on August 29, 2005, by **S.W. CAFÉ CORP.** (the "Guarantor"), with an address of 2780 7th Avenue, Sweetwater, Mullica Township, NJ 08037, in consideration of the extension loans and other credit accommodation by **S.W. CAFÉ, LLC** (the "Lender"), to **SWEETWATER HOLDINGS, LLC,** a New Jersey Limited Liability Company (the "Borrower"), and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

1.  **Guaranty.** The undersigned Guarantor is financially interested in the affairs of the Borrower and will directly benefit by the extension of loans and other credits by the Lender to the Borrower and therefore hereby guarantees the prompt payment and performance of all loans, advances, debts, liabilities, obligations, covenants and duties owing by the Borrower to the Lender of any kind or nature, present or future (including any interest accruing thereon after maturity, or after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding relating to the Borrower, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), whether or not evidenced by any note, guaranty or other instrument, whether arising under any agreement, instrument or document, whether or not for the payment of money, whether arising by reason of an extension of credit, opening of a letter of credit, loan, equipment lease or guarantee, under any interest or currency swap, future, option or other interest rate protection or similar agreement, or in any other manner, whether arising out of overdrafts on deposit or other accounts or electronic funds transfers (whether through automated clearing houses or otherwise) or out of the Lender's non-receipt of or inability to collect funds or otherwise not being made whole in connection with depository transfer check or other similar arrangements, whether direct or indirect (including those acquired by assignment or participation), absolute or contingent, joint or several, due or to become due, now existing or hereafter arising, and any amendments, extensions, renewals or increases and all costs and expenses of the Lender incurred in the documentation, negotiation, modification, enforcement, collection or otherwise in connection with any of the foregoing, including reasonable attorneys' fees and expenses (hereinafter referred to collectively as the **"Obligations"**). If the Borrower defaults under any such Obligations, the Guarantor will pay the amount due to the Lender.

2.  **Guaranty Absolute and Unconditional.** The liability of the Guarantor under this Guaranty is absolute and unconditional irrespective of:

    (a) any lack of validity or enforceability of any of the Loan Documents;

    (b) any change in the time, manner, place or amount of payment or in any other term of all or any of the Indebtedness, or any other amendment or waiver of or any consent to departure from any of the terms of the Indebtedness;

1

(c) any exchange, release or non-perfection of any collateral or lien securing all or any part of the Indebtedness, which exchange, release or non-perfection the Guarantor expressly agrees will not be deemed an unjustifiable impairment of the collateral;

(d) any release or amendment or waiver of or consent to departure from any other guaranty, for all or any part of the Indebtedness;

(e) any settlement or compromise with any Borrower or any other person relating to the Indebtedness; or

(f) any other circumstances which might otherwise constitute a defense available to, or a discharge of, any Borrower, any guarantor or other obligor in respect of the Indebtedness or the Guarantor in respect of this Guaranty.

This Guaranty is a continuing guarantee and shall remain in full force and effect until all of the Indebtedness has been paid in full and will continue to be effective, or be reinstated, as the case may be, if at any time any of the Indebtedness is rescinded, avoided or rendered void or must otherwise be returned by the Lender for any reason, including, without limitation, the insolvency or bankruptcy of any Borrower, the Guarantor or otherwise, all as though such payment had not been made.

3.    **Waiver.**  This is an absolute, unconditional, irrevocable and continuing guaranty and will remain in full force and effect until all of the Obligations have been indefeasibly paid in full, and the Lender has terminated this Guaranty.  This Guaranty will remain in full force and effect even if there is no principal balance outstanding under the Obligations at a particular time or from time to time.  This Guaranty will not be affected by any surrender, exchange, acceptance, compromise or release by the Lender of any other party, or any other guaranty or any security held by it for any of the Obligations, by any failure of the Lender to take any steps to perfect or maintain its lien or security interest in or to preserve its rights to any security or other collateral for any of the Obligations or any guaranty, or by any irregularity, unenforceability or invalidity of any of the Obligations or any part thereof or any security or other guaranty thereof.  The Guarantor's obligations hereunder shall not be affected, modified or impaired by any counterclaim, set-off, deduction or defense based upon any claim the Guarantor may have against the Borrower or the Lender, except payment or performance of the Obligations.  The Guarantor hereby waives (a) promptness and diligence; (b) notice of incurring any Indebtedness by the Borrower; (c) notice of any actions taken by the Lender or the Borrower under any Loan Document; (d) acceptance of this Guaranty and reliance thereon by the Lender; (e) presentment, demand of payment, notice of dishonor or nonpayment, protest and notice of protest with respect to the Indebtedness, and all other formalities of every kind in connection with the enforcement of the Indebtedness or of the obligations of Guarantor hereunder or of any other guarantor, the omission of or delay in which, but for the provisions hereof, might constitute grounds for relieving Guarantor of the obligations hereunder; (f) any requirement that the Lender protect, secure, perfect or insure any security interest or lien or any property subject thereto or exhaust any right or take any action against the Borrower, the Guarantor, any other person or any collateral; and (g) notice of any election by the Lender to sell any of the property mortgaged, assigned or pledged as security for any of the Indebtedness at a public or private sale.

**4.   Voided Repayments.** If any demand is made at any time upon the Lender for the repayment or recovery of any amount received by it in payment or on account of any of the Obligations and if the Lender repays all or any part of such amount by reason of any judgment, decree or order of any court or administrative body or by reason of any settlement or compromise of any such demand, the Guarantor will be and remain liable hereunder for the amount so repaid or recovered to the same extent as if such amount had never been received originally by the Lender. The provisions of this section will be and remain effective notwithstanding any contrary action which may have been taken by the Guarantor in reliance upon such payment, and any such contrary action so taken will be without prejudice to the Lender's rights hereunder and will be deemed to have been conditioned upon such payment having become final and irrevocable.

**5.   Subrogation, Reimbursement and Indemnity.** The Guarantor waives (a) all right to seek reimbursement, indemnity or contribution from the Borrower, and (b) any right to subrogation it may have or acquire as result of performance under this Guaranty. If, notwithstanding such waiver, any amount shall be paid to the Guarantor on account of such subrogation, indemnification or contribution at any time when the Indebtedness has not been paid in full, such amount shall be held in trust for the benefit of the Lender, shall be segregated from the other funds of Guarantor and shall forthwith be paid over to the Lender to be applied in whole or in part by the Lender against the Indebtedness, whether matured or unmatured, in accordance with the Loan Documents.

**6.   Financial Statements.** Unless compliance is waived in writing by the Lender or until all of the Obligations have been paid in full, the Guarantor will promptly submit to the Lender such information relating to the Guarantor's affairs (including but not limited to annual financial statements and tax returns for the Guarantor) or any security for the Guaranty as the Lender may reasonably request.

In the event that any such information submitted to the Lender has been prepared by an outside accountant, the same shall be accompanied by a statement in writing signed by the accountant disclosing that the accountant is aware that the information prepared by the accountant would be submitted to and relied upon by the Lender in connection with the Lender's determination to grant or continue credit.

**7.   Costs.** To the extent that the Lender incurs any costs or expenses in protecting or enforcing its rights under the Obligations or this Guaranty, including reasonable attorneys' fees and the costs and expenses of litigation, such costs and expenses will be due on demand, will be included in the Obligations and will bear interest from the incurring or payment thereof at the Default Rate (as defined in any of the Obligations).

**8.   Notices.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder must be in writing and will be effective upon receipt.   Such notices and other communications may be hand-delivered, sent by facsimile transmission with confirmation of delivery and a copy sent by first-class mail, or sent by nationally

recognized overnight courier service, to the addresses for the Lender and the Guarantor set forth above or to such other address as one may give to the other in writing for such purpose.

**9.     Preservation of Rights.**  No delay or omission on the Lender's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power, nor will the Lender's action or inaction impair any such right or power.  The Lender's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which the Lender may have under other agreements, at law or in equity.  The Lender may proceed in any order against the Borrower, the Guarantor or any other obligor of, or collateral securing, the Obligations.

**10.     Illegality.**  In case any one or more of the provisions contained in this Guaranty should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

**11.     Right of Set-off; Security Interest.**  Upon the occurrence of an Event of Default, the Lender is authorized at any time, without notice to the Guarantor, to set off and apply to any unpaid Indebtedness:  (a) any amounts which the Lender from time to time may owe the Guarantor, including any balance or share of any general or special deposit, certificate of deposit, savings certificate or other account (regardless of the source or intended use of any funds in such account); and (b) any other property, tangible or intangible, owned by or in which the Guarantor has an interest which may be in the possession or control of the Lender, in which accounts and other property Guarantor grants the Lender a security interest.  This right is in addition to and not in limitation of any other rights, including of set-off, which the Lender may have by law.

**12.     Continuing Guaranty; Assignment.**  This Guaranty is a continuing guaranty and will:  (a) be binding upon the Guarantor, its successors and assigns; and (b) inure to the benefit of and be enforceable by the Lender and its successors, transferees and assigns; provided, however, that the Guarantor can not assign this Guaranty without the prior written consent of the Lender.

**13.     Guaranty Not Modified by Bankruptcy.**  Neither the Guarantor's obligation in accordance with the terms of this Guaranty, nor any remedy for the enforcement, nor the amount of the Indebtedness of the Borrower will be impaired, modified, or limited in any manner whatsoever by any impairment, modification, discharge or limitation of the Indebtedness of the Borrower or its estate in Bankruptcy or any remedy for the enforcement, resulting from the operation of any present or future provision of the Bankruptcy Code of the United States or other statute, or from the decision of any court interpreting any of the same.  The amount of the Indebtedness will, for the purposes of this Guaranty, be determined as if no such impairment, stay, modification, discharge or limitation had occurred.

**14.     Consent To Jurisdiction; Service of Process.**  In the event the Lender brings any action hereunder in any court of record of the state governing this Guaranty, the Guarantor consents

to and confers personal jurisdiction over the Guarantor by such court or courts and agrees that service of process may be made upon the Guarantor by mailing a copy of such process to Guarantor.

15.    **Waiver of Jury Trial.**  GUARANTOR WAIVES TRIAL BY JURY IN ANY ACTION UNDER OR RELATING TO THIS GUARANTY AND TO THE INDEBTEDNESS OF THE BORROWER TO THE LENDER.

16.    **Governing Law.**  This Guaranty will be governed by, and construed in accordance with, the laws of the State of New Jersey.

17.    **Indemnity.**  The Guarantor agrees to indemnify each of the Lender, its directors, officers and employees and each legal entity, if any, who controls the Lender (the "**Indemnified Parties**") and to hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation or preparation therefore) which any Indemnified Party may incur or which may be asserted against any Indemnified Party as a result of the execution of or performance under this Guaranty; provided, however, that the foregoing indemnity agreement shall not apply to claims, damages, losses, liabilities and expenses solely attributable to an Indemnified Party's gross negligence or willful misconduct.  The indemnity agreement contained in this Section shall survive the termination of this Guaranty.  The Guarantor may participate at its expense in the defense of any such claim.

18.    **Equal Credit Opportunity Act.**  If the Guarantor is not an Applicant for credit under Section 202.2 (e) of the Equal Credit Opportunity Act of 1974 ("ECOA"), the Guarantor acknowledges that (i) this Guaranty has been executed to provide credit support for the Obligations, and (ii) the Guarantor was not required to execute this Guaranty in violation of Section 202.7(d) of the ECOA.

This Agreement of Guaranty shall be construed in accordance with the laws of the State of New Jersey.

ATTEST:

S.W. CAFÉ CORP.

By: _____
JOSEPH S. CAVALIERI

By: _____
JEFFREY R. ANASTASI

-5-

# EXHIBIT "D"

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY, CAMDEN DIVISION

GREAT AMERICAN E & S                      :
INSURANCE COMPANY,                        :
                                          :
   Plaintiff,              :
                                          :
v.                                        :  Civil Action No.
                                          :
S.W. CAFÉ CORP.; S.W. CAFÉ,               :
LLC; and JOSEPH CAVALIERI,                :
                                          :
   Defendants.              :

## COMPLAINT FOR DECLARATORY JUDGMENT AND JURY TRIAL DEMAND

Plaintiff, GREAT AMERICAN E & S INSURANCE COMPANY ("Great American"), by way of Complaint against Defendants, S.W. Café Corp. ("Sweetwater Café"), S.W. CAFÉ, LLC ("S.W. Café"), and JOSEPH CAVALIERI ("Cavalieri"), avers as follows:

### Nature of the Action

1.  In this action, Great American seeks a declaration regarding whether the policy of insurance it issued to Sweetwater Café was cancelled effective June 9, 2008 and, if so, a declaratory judgment that Great American has no liability under the policy of insurance for any loss and damage sustained as a result of a June 30, 2008 fire at the property operated by Sweetwater Café.

### Parties

2.  Plaintiff, Great American, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in the City of Cincinnati, Ohio. It issues insurance policies and is licensed to do business in the State of New Jersey.

3.     Defendant, Sweetwater Café, is a corporation incorporated under the laws of the State of New Jersey, having its principal place of business in Atlantic County, Township of Mullica, New Jersey. Sweetwater Cafe operates a restaurant.

4.     Defendant, S.W. Café, is a New Jersey limited liability company. Its members are Randy Ficken and John Shute, both of whom are citizens of the State of New Jersey with residences in Atlantic County, the City of Egg Harbor and the Town of Hammonton, respectively. S.W. Café is listed as a mortgageholder on the policy of insurance issued by Great American to Sweetwater Café.

5.     Cavalieri is a citizen of the State of New Jersey with a residence in Atlantic County, the Town of Hammonton. Cavalieri is listed as a mortgageholder on the policy of insurance issued by Great American to Sweetwater Café.

### Jurisdiction and Venue

6.     This Court has jurisdiction under 28 U.S.C. §§ 1332 and 2201 and venue is proper under 28 U.S.C. § 1391. The parties are citizens of different states and the amount in controversy exceeds $75,000.

### The Policy

7.     Great American, through its managing general agent, the Walnut Advisory Corp. ("Walnut"), issued to Sweetwater Café a policy of insurance, No. PAC 3896203, effective December 12, 2007 to December 12, 2008 (the "Policy"), providing, among other coverages, coverage for the property located at 2780 7th Avenue, Sweetwater, New Jersey 08037 (the "building") and for business income and extra expense associated with the operation of the restaurant in the building. A copy of the Policy is attached hereto as Exhibit A and incorporated herein by reference.

2

8.      The Policy contains a "mortgage clause" which provides that "loss, if any, on building items, shall be payable to" S.W. Café and Cavalieri "as interests may appear."

9.      With respect to cancellation, the Policy provides as follows:

COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

A.      CANCELLATION

1.      The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

*        *        *

4.      Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5.      If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

*        *        *

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

*        *        *

F.      Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

*        *        *

2.      Mortgageholders

*        *        *

3

  f.  If we cancel this policy, we will give written notice to the mortgageholder at least:

   (1)  10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   (2)  30 days before the effective date of cancellation if we cancel for any other reason.

*  *  *

<b><u>The Cancellation of the Policy</u></b>

10.  Sweetwater Café financed payment of the premium due under the Policy through a premium finance agreement it entered into with Premium Payment Plan, a premium finance company.

11.  On information and belief, the premium finance agreement contains a power of attorney enabling Premium Payment Plan to cancel the Policy for non-payment of an installment due under the premium finance agreement.

12.  On May 22, 2008, Premium Payment Plan mailed a Notice of Intent to Cancel for non-payment of premium installment to Sweetwater Café and to the insurance broker indicated on the premium finance agreement, Aconorate Insurance Agency, Inc. ("Aconorate"). The Notice of Intent to Cancel advised Sweetwater Café and Aconorate that the Policy would be cancelled on June 5, 2008, if payment for the total due of $1,973.88 was not received by Premium Payment Plan before June 5, 2008. A copy of the Notice of Intent to Cancel is attached hereto as Exhibit B and incorporated herein by reference.

13.  On information and belief, Premium Payment Plan did not receive any payment from Sweetwater Café or any other person acting on behalf of Sweetwater Café before June 5, 2008.

4

14.    On June 5, 2008, Premium Payment Plan mailed a Notice of Cancellation for non-payment of premium installment to Sweetwater Café, Aconorate, Walnut and Great American. The Notice of Cancellation advised that it effected an "unconditional cancellation" of the Policy effective June 9, 2008. A copy of the Notice of Cancellation is attached hereto as Exhibit C and incorporated herein by reference.

15.    Notice of cancellation was not provided by Walnut or Great American to the mortgageholders, S.W. Café and Cavalieri, because the Policy requires such notice to be provided only in the event that the Policy is canceled by Great American.

16.    Between June 9 and 16, 2008, on information and belief, discussions took place between Aconorate (and others acting on behalf of Sweetwater Café) and Walnut, as managing general agent for Great American, regarding the possibility of voiding the Notice of Cancellation and/or reinstating the Policy if payment was received by Premium Payment Plan.

17.    On information and belief, Sweetwater Café made a payment to Premium Payment Plan in the amount of $1,862.16 on or about June 11, 2008.

18.    Sweetwater Café claims that Premium Payment Plan issued a "Reinstatement Request" on June 18, 2008 to Great American, Walnut and Sweetwater Casino. However, Great American never received the purported "Reinstatement Request." On information and belief, Walnut never received the purported "Reinstatement Request." Significantly, the copy of the purported "Reinstatement Request" issued to Sweetwater Café states that "you must consider your insurance policy(ies) CANCELLED until you receive on [sic] official 'Notice of Reinstatement' from your insurance company(ies)." A copy of the purported "Reinstatement Request" issued to Sweetwater Café is attached hereto as Exhibit D and incorporated herein by reference.

5

19.    At no time was the Notice of Cancellation voided, the Policy reinstated or a "Notice of Reinstatement" issued by Walnut or Great American.

20.    On July 14, 2008, Walnut issued a check to Aconorate in the amount of $8,447.19 for the unearned premium under the Policy.

## The Loss

21.    On June 30, 2008, the building was severely damaged by fire.

22.    Great American has investigated and adjusted the fire, subject to a reservation of rights, notwithstanding the apparent cancellation of the Policy effective June 9, 2008, in part because Sweetwater Café has represented to Great American its belief that the Notice of Cancellation was either defective or voided and/or the Policy reinstated.

## The Dispute

23.    The parties dispute whether the Policy was in effect on June 30, 2008, the date of the fire at the building.

24.    Great American now brings this action for a declaration regarding whether the Policy was cancelled effective June 9, 2008 and, if so, for a declaratory judgment that it has no liability under the Policy for any loss and damage sustained as a result of the June 30, 2008 fire at the building.

25.    An actual controversy exists between Great American and Sweetwater Café with respect to Great American's liability to Sweetwater Café, S.W. Café and Cavalieri for the loss and damage sustained as a result of the June 30, 2008 fire at the building. Declaratory relief from this Court is therefore appropriate to declare the parties' rights and obligations under the Policy.

WHEREFORE, Plaintiff, GREAT AMERICAN E & S INSURANCE COMPANY, seeks

a declaration regarding whether the Policy was cancelled effective June 9, 2008 and, if so,

demands judgment in its favor and against Defendants, S.W. CAFÉ CORP.; S.W. CAFÉ, LLC;

and JOSEPH CAVALIERI, declaring and adjudging that it has no liability under the Policy to

any of the Defendants for any loss and damage sustained as a result of the June 30, 2008 fire at

the building, and for such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN


By: /s/ Steven J. Polansky
STEVEN J. POLANSKY, ESQUIRE
Attorney for Plaintiff Great American E&S
Insurance Company


Steven J. Polansky, Esquire
Marshall, Dennehey, Warner,
Coleman & Goggin
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002
(856) 441-6000
Fax (856) 414-6077

*Of Counsel:*
Thomas B. Orlando, Esquire
Foran, Glennon, Palandech & Ponzi, PC
150 S. Wacker Dr., 11th Floor
Chicago, IL 60606
312-863-5000
Fax: 312-863-5099


06/1321791.v1

A

ORIGINAL POLICY

AES 3061 (Ed. 12 05)

|  |  |  |
|---|---|---|
| Policy No. | PAC | 3896203 |
| Renewal Of | NEW | |

## BUSINESSPRO® POLICY COMMON DECLARATIONS

**NAMED INSURED** SW CAFE CORP. T/A SWEETWATER CASINO

**AND ADDRESS:** 2780 SEVENTH AVENUE
SWEETWATER, NJ 08037

IN RETURN FOR PAYMENT OF THE PREMIUM,
AND SUBJECT TO ALL TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE
THE INSURANCE AS STATED IN THIS
POLICY.

AGENT'S NAME AND ADDRESS:
THE WALNUT ADVISORY CORP. - HOTEL
95 MOUNT BETHEL ROAD
WARREN, NJ 07059

Insurance is afforded by the Company named below, a Capital Stock Corporation:
GREAT AMERICAN E & S. INSURANCE COMPANY

POLICY PERIOD: From 12/12/2007 To 12/12/2008
12:01 A.M. Standard Time at the address of the Named Insured

This policy consists of the following Coverage Parts for which a premium is indicated. This premium may be subject to adjustment.

| | | Premium |
|---|---|---|
| Commercial Property | 25% Minimum Earned Premium Applies | $ 8,210 |
| Commercial General Liability | | $ 8,000 |
| Commercial Crime | | $ |
| Commercial Inland Marine | | $ |
| Commercial Boiler and Machinery | NO FLAT CANCELLATIONS PERMITTED | $ Included |
| Commercial Auto | | $ |
| Commercial Umbrella | | $ |
| | | $ |
| | | $ |
| Commercial Liquor Liability | | $ 600 |
| | TOTAL $ | 17,810 |

FORMS AND ENDORSEMENTS applicable to all
Coverage Parts and made part of this Policy at
time of issue are listed on the attached Forms
and Endorsements Schedule IL 88 01 (11/85).

NOTICE - See enclosed endorsement for "Surplus Lines Notification"

POLICY ALTERNATE MAILING ADDRESS:

THE WALNUT ADVISORY CORPORATION
This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a certificate of authority by the New Jersey department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer but the policy is not covered by the New Jersey Insurance Guaranty Association to the extent of any right of recovery for the obligation of an insolvent insurer in Basis N.J.S.A. 17:30D-30 et al if a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by a New Jersey Surplus Lines Guaranty Fund.

SLAS 00266 .....07-0208

ES 3061 (Ed. 12/05) PRO                    (Page 1 of 1)

ORIGINAL POLICY

**GREAT AMERICAN**

Administrative Office
580 Walnut Street
Cincinnati, Ohio 45202
TEL 1-513-369-5000

CF 72 00 (Ed. 11 85)

Policy No. PAC 3896263

## BUSINESSPRO PROPERTY COVERAGE PART
### DECLARATIONS PAGE

| NAMED INSURED: S.W. CAFE CORP. T/A SWEETWATER CASINO 2780 SEVENTH AVENUE    SWEETWATER, NJ  08037 | POLICY PERIOD: 12/12/07 to 12/12/08 |
|---|---|

**DESIGNATED PREMISES:**

| Prem. No. | Bldg. No. | Location | Occupancy |
|---|---|---|---|
| 1 | 1 | 2780 SEVENTH AVENUE SWEETWATER, NJ  08037 | RESTAURANT |

**MORTGAGE CLAUSE:** Subject to the provisions of the Mortgage Clause attached hereto, loss, if any, on building items, shall be payable to:

| Prem. No. | Bldg. No. | Mortgage Holder Name and Mailing Address | |
|---|---|---|---|
| 1 | 1 | SW CAFE, LLC | 4730 PLEASANT MILLS ROAD SWEETWATER, NJ  08036-4000 |
| 1 | 1 | JOSEPH CALVAL IRI | 8 MEADOW DRIVE MOORESTOWN, NJ  08057 |

**PREMIUM FOR THIS COVERAGE PART IS:**

Total Advance Premium:  $  8,210

Payable at Inception:  $  8,210
$ 8,210

BUSINESSPRO (Reg. U.S. Pat. Off.)
72 00 (Ed. 11/85) PRO                    (Page 1 of 3)

ORIGINAL POLICY

CP 00 10
(Ed. 04 02)

# BUILDING AND PERSONAL
## PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section H. – Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this Section, A.1., and limited in A.2., Property Not Covered, if a limit of Insurance is shown in the Declarations for that type of property.

a. Building, meaning the building or structure described in the Declarations, including;

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed

(a) machinery; and

(b) equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) fire extinguishing equipment;

(b) outdoor furniture;

(c) floor coverings; and

(d) appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) if not covered by other insurance:

(a) additions under construction, alterations and repairs to the building or structure;

(b) materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

b. Your Business Personal Property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form:

(1) furniture and fixtures;

(2) machinery and equipment;

(3) "stock";

(4) all other personal property owned by you and used in your business;

(5) labor, materials or services furnished or arranged by you on personal property of others;

Copyright, ISO Properties, Inc., 2001
(Page 1 of 18)

ORIGINAL POLICY

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

    (a) multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

    (b) divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

## F. Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

### 1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) divide the Limit of Insurance of the property by the figure determined in Step (1);

(3) multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1 (Underinsurance):**

| When: | | |
|---|---|---|
| The value of the property is | $ | 250,000 |
| The Coinsurance percentage for it is | | 80% |
| The Limit of Insurance for it is | $ | 100,000 |
| The Deductible is | $ | 250 |
| The amount of loss is | $ | 40,000 |

Step (1): $250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $100,000 ÷ $200,000 = .50

Step (3): $ 40,000 X .50 = $20,000

Step (4): $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

| When: | | |
|---|---|---|
| The value of the property is | $ | 250,000 |
| The Coinsurance percentage for it is | | 80% |
| The Limit of Insurance for it is | $ | 200,000 |
| The Deductible is | $ | 250 |
| The amount of loss is | $ | 40,000 |

Copyright, ISO Properties, Inc. 2001
(Page 14 of 18)

ORIGINAL POLICY

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,00 x 80%). Therefore, the Limit of insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

b. If one Limit of insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

Example No. 3:

Where: The value of the property is:

| | |
|---|---|
| Bldg. at Location No. 1 | $ 75,000 |
| Bldg. at Location No. 2 | $ 100,000 |
| Personal Property at Location No. 2 | $ 75,000 |
| | $ 250,000 |

The Coinsurance percentage for it is. 80%
The Limit of insurance for Buildings and Personal Property at Location Nos. 1 and 2 is $ 180,000
The Deductible is $ 1,000
The amount of loss is:
Bldg. at Location No. 2 $ 30,000
Personal Property at Location No. 2 $ 20,000
$ 50,000

Step (1): $250,000 X 80% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2): $180,000 ÷ $225,000 = .80

Step (3): $ 50,000 X .80 = $40,000

Step (4): $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

2. Mortgageholders

a. The term mortgageholder includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) pays any premium due under this Coverage Part at our request if you have failed to do so;

(2) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

(3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) the mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) the mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and

Copyright, ISO Properties, Inc., 2001
(Page 15 of 18)

ORIGINAL POLICY

note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

G. Optional Coverages

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. Agreed Value

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

b. If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

c. The terms of this Optional Coverage apply only to loss or damage that occurs:

(1) on or after the effective date of this Optional Coverage; and

(2) before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

2. Inflation Guard

a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

(1) the Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

(2) the percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) the number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

Example:

If: The applicable Limit of Insurance is $100,000

The annual percentage increase is 8%

The number of days since the beginning of the policy year (or last policy change) is 146

The amount of increase is: $100,000 X .08 X 146 ÷ 365 = $3,200

3. Replacement Cost

a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

b. This Optional Coverage does not apply to:

(1) personal property of others;

(2) contents of a residence;

Copyright, ISO Properties, Inc., 2001

CP 00 10 (Ed. 04/02) XS                                (Page 18 of 18)

# EXHIBIT "E"

GREAT AMERICAN E & S INSURANCE COMPANY
4C0 MASSASOIT AVENUE, SUITE 113
EAST PROVIDENCE RI 02914

# NOTICE OF CANCELLATION OF INSURANCE

Named Insured & Mailing Address:

SW CAFE CORP. T/A SWEETWATER CASINO
2780 SEVENTH AVENUE
SWEETWATER NJ 08037

Producer: 895141

THE WALNUT ADVISORY CORP
PO BOX 4417
WARREN NJ 07059-0417

Policy No.:  PAC3896203
Type of Policy:  PACKAGE
Date of Cancellation:  06/09/2008; 12:01 A.M. Local Time at the mailing address of the Named Insured.

We are cancelling this policy. Coverage will cease on the Date of Cancellation shown above.

Our records indicate that you are an "insured" or other party of interest under this policy. This is your notice that the named insured's coverage under this policy is being cancelled at the date and time indicated in the box above.

Your interest in this policy as an "insured" or other party of interest is being cancelled effective 06/09/2008; 12:01 A.M. Local Time at the mailing address of the named insured.

Mortgagee/Lienholder

SW CAFE, LLC
4730 PLEASANT MILLS ROAD
SWEETWATER NJ 08038

Date Mailed:
1st day of July, 2008

*Suzie Wilkinson*

AUTHORIZED REPRESENTATIVE

FORM# CC9697NJ51995
ODEN 3.0.08.042

Copy for Mortgagee/Lienholder

NJCC19NONPMNT
07012008SNNN
Page 1 of 1