## THE UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| GREAT AMERICAN E & S INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | Civil Action No. 1:08-cv-04117-JEI-KMW |
| S. W. CAFÉ CORP., S. W. CAFÉ, LLC and JOSEPH CAVALIERI, | Civil Action |
| Defendants. | **DOCUMENT ELECTRONICALLY FILED** |
| S. W. CAFÉ, CORP. d/b/a SWEETWATER CASINO, a New Jersey Corporation, | **Motion Date: October 19, 2009** |
| Third-Party Plaintiff, | **Oral Argument Requested** |
| v. | |
| PREMIUM PAYMENT PLAN and WALNUT ADVISORY GROUP, | |
| Third-Party Defendants. | |

---

## PREMIUM PAYMENT PLAN'S BRIEF IN REPLY TO THE WALNUT ADVISORY GROUP'S OPPOSITION TO PREMIUM'S MOTION TO DISMISS S.W. CAFÉ CORPORATION'S THIRD-PARTY COMPLAINT PURSUANT TO RULE 12(b)(6)

---

James F. Moscagiuri (JM-8928)
**COURTER, KOBERT & COHEN**
1001 Route 517
Hackettstown, NJ 07840
Telephone (908) 852-2600
Facsimile (908) 852-8225
Attorneys for Third-Party Defendant,
Premium Payment Plan

**On the Brief:**
James F. Moscagiuri, Esq.

{00273356-1}

# **TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................1

LEGAL ARGUMENT...................................................................................................3

            WALNUT'S OPPOSITION TO PREMIUM'S MOTION TO
            DISMISS LACKS ANY FACTUAL OR LEGAL SUPPORT
            AND, THEREFORE, SHOULD BE REJECTED BY THIS
            COURT ................................................................................................3

CONCLUSION...............................................................................................................9

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

Carr v. Peerless Ins., Co
    724 A.2d 454 (Vt. 1998) ...........................................................................................2,4,6,7

Kende Leasing Corporation v. A.I. Credit Corp., 217 N.J. Super. 101,
    (App. Div.), cert. denied
    108 N.J. 664 (1987)……………………………………………………1,2,3,4,5,6,7,8

Precision Mechanical Services, Inc. v. T.J. Pfund Associates, Inc.
    2003 WL 21659672 (Conn. Super.),
    35 Conn. L. Rptr. 54 ...........................................................................................2,3,4,5,6,7,8

Unger v. AFCO Credit Corp.
    239 F.Supp.2d 447 (D.N.J. 2002) ...................................................................................1,2

Unger v. AFCO Credit Corp.
    United States District Court, Docket No. 00-6303
    ( D.N.J. December 26, 2001) .........................................................................1,2,3,4,5,6,7,8

Universal Fire & Casualty Insurance Co. v. Jabin,
    16 F.3d 1465 (7th Cir. 1994) ...................................................................................2,4,6,7

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................................1,9

**Statutes**

N.J.S.A. 17:16D-13..................................................................................................................5

## PRELIMINARY STATEMENT

Premium has moved, pursuant to Rule 12(b)(6), to dismiss the third-party complaint filed against it by Sweetwater Café Corporation. Sweetwater has filed no opposition. Nevertheless, the Walnut Advisory Group, a co-defendant in this case, has contested Premium's motion to dismiss. This brief will respond to the unsound legal arguments asserted by Walnut, and will confirm that the facts presently before this court, when considered in light of the proper legal standards, compel this court to grant Premium's motion.

First, Walnut asserts that the New Jersey Appellate Division's holding in <u>Kende Leasing</u>, and this court's holding in <u>Unger</u>, did not consider and, hence, did not eliminate the possibility that Sweetwater could pursue Premium based upon a cause of action for detrimental reliance. As was clearly established in Premium's initial brief, if it were to be found that Premium's cancelation of Sweetwater's insurance policy was wrongful, then Sweetwater's insurance coverage would be unaffected. In other words, Sweetwater will enjoy full coverage under its policy. In light of these indisputable facts, Walnut cannot reasonably contend that Sweetwater might be permitted to pursue Premium based upon a cause of action for detrimental reliance. Simply put, the case law is in sharp contrast to any such contention and, therefore, this court must disregard Walnut's first argument.

Alternatively, Walnut attempts to distinguish the holding in <u>Kende Leasing</u> by setting forth a misinterpretation of said holding. Walnut effectively asks this court to ignore <u>Kende Leasing</u>, as well as its own holding in <u>Unger</u>. Based upon this its flawed logic, Walnut then asserts that this court should adopt the holdings set forth by the Supreme Court of Vermont and the Seventh Circuit Court of Appeals in <u>Carr v. Peerless Ins. Co.</u>, 724 <u>A.2d</u> 454 (Vt. 1998) and <u>Universal Fire & Casualty Insurance Co. v. Jabin</u>, 16 <u>F.</u>3d 1465 (7th Cir. 1994). Yet, this court already engaged

in a comprehensive review of these cases in <u>Unger</u> and, upon conclusion, rejected their reasoning in favor of the analysis and conclusions reached in <u>Kende Leasing</u>.

The Superior Court of Connecticut painstakingly reviewed the <u>Unger</u> court's holding and, in doing so, presented a roadmap, which has tremendous utility here. <u>See</u> <u>Precision Mechanical Services, Inc. v. T.J. Pfund Associates, Inc</u>. 2003 <u>WL</u> 21659672 (Conn. Super.), 35 <u>Conn. L. Rptr</u>. 54.[1]  In <u>Precision</u>, the court outlines, in great detail, the <u>Unger</u> court's rational for rejecting the holdings set forth in <u>Carr</u> and <u>Jabin</u>.  The <u>Precision</u> holding, thus, confirms that which was espoused by Premium in its initial brief, and further confirms that Walnut's opposition lacks any merit.

---

[1] A true and correct copy of <u>Precision Mechanical Services, Inc. v. T.J. Pfund Associates, Inc</u>. 2003 <u>WL</u> 21659672 (Conn. Super.), 35 <u>Conn. L. Rptr</u>. 54, is attached to the accompanying Affidavit of James F. Moscagiuri, Esq., as Exhibit "A."

## LEGAL ARGUMENT

**WALNUT'S OPPOSITION TO PREMIUM'S MOTION TO DISMISS LACKS ANY FACTUAL OR LEGAL SUPPORT AND, THEREFORE, SHOULD BE REJECTED BY THIS COURT.**

Walnut argues that this court should disregard the New Jersey Appellate Division's holding in Kende Leasing and this court's own analysis in Unger. Instead, Walnut asserts that this Court should adopt the holdings of the Supreme Court of Vermont and the Seventh Circuit Court of Appeals. For the reasons that follow, Walnut's position is without merit, and should be rejected in all respects.

In Precision Mechanical, the plaintiff filed an eight-count amended complaint, alleging in counts five through seven that, defendant, Afco Credit Corporation, an insurance premium finance company, wrongfully canceled the plaintiff's general liability insurance policy and failed to inform it of the cancelation. Id. at 1. The plaintiff's complaint asserted causes of action for breach of contract, negligence and violations of the Connecticut Unfair Insurance Practices Act. Subsequent to the cancelation, a fire occurred at the insured's property causing extensive damage. As a result of the fire, numerous claims were filed against the plaintiff. Because Afco had cancelled the policy, the plaintiff's insurer refused to indemnify and defend the plaintiff for those claims. Ibid.

Thereafter, Afco moved for summary judgment. Afco asserted that counts five through seven should be dismissed because it was not an insurance carrier, broker or agent and, thus, owed plaintiff no duty when it canceled plaintiff's insurance policy. Ibid. For purposes of the summary judgment motion, Afco conceded that it wrongfully canceled the plaintiff's insurance policy but that its only duty to the plaintiff was to return the premiums it received as a result of the wrongful cancelation. Id. at 1,2. Both parties acknowledged the lack of controlling law in

Connecticut and, as a result, plaintiff asserted that the holdings in Carr and Jabin should be adopted.  Afco asserted that the court should consider and follow the reasoning of a number of decisions from New Jersey and New York, which Afco argued "have unequivocally held that a premium finance company holds no duty to an insured, and therefore has no liability to an insured for a wrongfully canceled policy other than to return the premiums received as a result of the wrongful cancelation."  Id. at 2.

The Precision court stated that the Unger v. Afco Corporation, United States District Court, Docket No. 00-6303 (D.N.J. December 26, 2001), decision provided a useful starting point for the examination of how Connecticut's sister states have resolved the issue.  Unger was useful because, among other things, it involved the same issue, the contract language was the same and the controlling State statute was almost identical.  Id. at 5.

The Precision Court stated:

The plaintiff in Unger, the plaintiff in the present case, asserted claims in breach of contract and negligence against Afco for the wrongful termination of an insurance policy that resulted in the refusal by the insured's insurance company to indemnify Unger for a fire loss.  In Unger, the federal district court noted that it would 'consider decisions of the New Jersey Supreme Court, the Appellate Division of the New Jersey Superior Court, federal courts applying New Jersey law, and analogous decisions applying the law of other states in predicting how the New Jersey Supreme Court would decide the matter in question.  Id. at 5. (Citation omitted).   The Unger court relied heavily on the decision of the Appellate Division of the New Jersey Superior Court in Kende Leasing Corporation v. A.I. Credit Corp., 217 N.J. Super. 101, (App. Div.), cert. denied 108 N.J. 664 (1987), in holding that, under the circumstances of the case, Unger had failed to state any claim against Afco entitling her to relief.   The court undertook a consideration of public policy, the law of other states and the existence of an administrative scheme under the New Jersey Insurance Premium Finance Company Act, all of which the Unger court found did not significantly detract from the holding in Kende, but at least, in part, provided additional support to the conclusion reached in Kende.

Id. at 5.

The Precision court continued:

In <u>Kende</u>, the New Jersey Appellate Division held 'that [a premium finance company's] failure to mail [the insured] a notice of intent to cancel rendered ineffective the subsequent notice of cancelation. Therefore, [the insured's] policy was in effect at the time of the [insured's loss] and, under the terms of the policy [the insurance company] was legally liable to pay [the insured] for the fire loss it sustained.' <u>Id.</u> at 5. (Citation omitted). The court in <u>Unger</u> notes that the <u>Kende</u> court's holding was based on New Jersey case law interpreting statutory notice requirements and the language of the statute itself. (Citation omitted). The statute in issue was <u>N.J.S.A.</u> 17:16D-13, which is nearly identical to Connecticut's General Statutes 38a-170. Specifically, the <u>Unger</u> and <u>Kende</u> courts were addressing subsection (a), which, in essence, states that when a premium finance company acting under a power of attorney cancels a contract or contracts, 'the insurance contract or contracts shall not be canceled by the premium finance company unless such cancellation is effectuated in accordance with the provisions of this section.'

* * *

The court in <u>Unger</u> also reviewed public policy considerations undertaken in <u>Kende</u>. The Appellate Division in <u>Kende</u> 'specifically rejected the insurer's implicit argument that the purpose of the statutory notice requirement is satisfied even if the insurance policy is considered canceled so long as the insured possesses a claim for breach of duty against the premium finance company for its failure to comply with such a requirement.' (Citation omitted). The <u>Unger</u> court considered the <u>Kende</u> court's statement that '[n]otice of intent to cancel is intended to help an insured keep his policy from lapsing, not to give him recourse against a finance company once the hardships of not having coverage have already befallen him' to say, in other words, that 'the purpose of the statutory policy provision is promoted, not by permitting a cause of action against a premium finance company, but by treating a failure of the finance company to follow the statutory notice provision as vitiating any purported cancelation of the insurance policy, thereby allowing the insured to pursue a cause of action against the insurer under such a policy. <u>Id.</u> at 6. (Citation omitted). The court in <u>Unger</u> further noted that it was not necessary to hold a premium finance company liable to protect an insured and ensure strict compliance with the New Jersey act, that such considerations would actually be honored by treating any cancelation in which the statutory notice requirements had been violated as a nullity and permitting the insured to recover from the insurer under the insurance policy. <u>Ibid.</u>

* * *

The <u>Unger</u> court also considered the case law of New York State on the policy concern that a substantial and unjustified burden would be placed on a premium finance company by making it liable under the insurance policy to an insured.

The New York courts cited by <u>Unger</u> have taken the same approach as that of the court in <u>Kende</u> and held that 'if the insured could show an erroneous notice of cancelation, the cancellation will be treated as a nullity' and 'the insured will have recourse against the insurer under the policy itself.' (Citation omitted). <u>Unger</u> notes, '[e]ven more significantly, the <u>Basic Image</u> court justifies its decision by observing that the premium finance agency does not buy the risk.' (Citation omitted). <u>Unger</u> highlights further public policy arguments made by New York courts and adopted in <u>Kende</u>, which the <u>Unger</u> court contends provide even further support for the conclusion reached in <u>Kende</u>: '[Basic Image] noted that the <u>Home Mutual</u> court found that public policy considerations disfavor holding a premium finance company liable to an insurer for the policy amount because, given such extensive liability, qualifying banks and lending units might well decline to act as premium financing agencies.' (Citation omitted).  The <u>Unger</u> court further addressed this policy concern in stating '[t]he objective of ensuring that the risk of significant liability does not diminish the availability of premium financing applies in this context.  Even if the statutory notice provision is to be strictly construed, such consideration is not promoted if premium financing is not available.' (Citation omitted).

<u>Id</u>. at 6,7.

The <u>Precision</u> court then went on to analyze how the court in <u>Unger</u> dealt with the holdings that did not follow the New Jersey approach established in <u>Kende</u>:

Following its review of New Jersey case law and that of other jurisdictions relied upon by the New Jersey courts, especially <u>Kende</u>, the <u>Unger</u> court takes up consideration of the law in those jurisdictions that have expressly rejected <u>Kende</u> and its approach, notwithstanding statutory provisions nearly identical to those of New Jersey. <u>Unger</u> examines two cases, <u>Carr v. Peerless Ins., Co.</u>, 724 A.2d 454 (Vt. 1998), a case relied upon by the plaintiff in the present case in support of its opposition to the defendant's motion and <u>Universal Fire & Casualty Insurance Co. v. Jabin</u>, 16 F.3d 1465 (7th Cir. 1994). <u>Unger</u> notes that in <u>Carr</u>, '[t]he Vermont Supreme Court … held that an insured can bring an action against a premium finance company for failing to comply with statutory cancelation procedures either based on a private right of action arising out of the statute itself or a theory of breach of contract and fiduciary relationships … The court specifically imposed on the premium finance company potential liability for all benefits under the policy … Similarly, the Seventh Circuit in <u>Jabin</u> held that the Illinois statute, equivalent to the Insurance Premium Finance Company Act, confers upon the insured a cause of action against the premium finance company for any cancellation it effectuates in breach of the [statute's] notice requirements.' (Citations omitted). <u>Unger v. Afco Credit Corp.</u>, <u>supra</u>, at 26.

* * *

In <u>Carr</u>, the Vermont Supreme Court stated that it did not find controlling the policy concerns relied upon in <u>Kende</u> and was more persuaded by the court's analysis in <u>Jabin</u>, which emphasized that 'the statutory language restricting cancellation without compliance with the statute specifically restricts cancelation by the premium finance company.' (Citation omitted).  The <u>Carr</u> court felt that in construing the Vermont statute according to its ordinary meaning, as it must, there was nothing in the statutory scheme to suggest that the insurer is responsible for the improper actions of the finance company and that '[w]hen the Legislature has deemed it appropriate to regulate or limit an insurance company's ability to cancel a policy it has issued, the Legislature has enacted statutes that plainly say so.' (Citation omitted).  Nonetheless, the <u>Carr</u> court concluded that it should infer the existence of a private right of action in favor of the insured against the premium finance company. (Citation omitted).

\* \* \*

The <u>Unger</u> court found '[t]he persuasiveness of these opposing cases is significantly reduced by their simultaneous rejection of any liability on the part of the insurer to the insured.  Both courts concluded that, even if the premium finance company fails to provide the required notices, the insurer is not liable to the insured because any cancellation of the insurance policy sill remains valid and effective ... These courts explicitly criticized <u>Kende's</u> finding that such an insurer remains potentially liable under the policy.' (Citations omitted).   <u>Unger v. Afco Credit Corp.</u>, <u>supra</u>, at 27.

\* \* \*

The court's final consideration in <u>Unger</u> was the overall administrative scheme established by the New Jersey Premium Finance Company Act.  Noting that the most serious argument that could be made against the <u>Kende</u> approach to premium finance company liability is that the entity responsible for the improper and ineffective cancelation seemingly does not face any negative consequences for its conduct, the <u>Unger</u> court points out how the act itself provides an administrative scheme to enforce its provisions. ... Citing the relevant New Jersey statutes, the court notes that the act requires a person engaged in financing insurance premiums to obtain a license from the commissioner of banking with fines imposed if the person engages in such business without a license. (Citations omitted). ... The New Jersey act also provides that the commissioner 'may revoke or suspend the license of a premium finance company when and if after investigation the commissioner finds that ... [s]uch company has violated any of the provisions of [the New Jersey Act].' (Citations omitted). ...  New Jersey's act also authorizes the imposition of financial penalties in lieu of license suspension or revocation. ...  <u>Unger</u> thus held that '[g]iven the existence of such administrative sanctions, a failure of a premium finance company to abide by the requirements of the statutory notice provision does subject it to possible sanction,

thus diminishing the need [to] hold such an entity liable in the context of private civil litigation.' (Citation omitted).

Id. at 7-9.

The Precision court, which ultimately followed Kende and Unger, set forth the Unger court's ultimate conclusion:

> On facts identical to those in the present case, the Unger court 'having fully considered the admittedly complex issues and law regarding the potential liability of a premium finance company to the insured, follows the Kende approach and finds that the insured … **has no cognizable claim against the premium finance company arising out of its alleged failure to provide sufficient notices**.' Unger, supra, at 30.

> Ibid. (Emphasis added).

Against the above backdrop, if there was any reason for this court to doubt Premium's legal analysis with respect to the holding in Kende, as well as Unger, then it is respectfully submitted that it may rely upon the comprehensive and extremely analytic and well-written Opinion of The Honorable Richard P. Gilardi for the Superior Court of Connecticut. Judge Gilardi comes to the same conclusion as Premium did in its initial brief. Simply put, it is patently obvious that the precise issue, which exists in the case presently before the court, was thoroughly analyzed and decided by the New Jersey Appellate Division, as well as this court in Unger. Accordingly, the same result that was reached by this court in Unger, and as explained by Judge Gilardi in Precision, should be reached in this matter.

## CONCLUSION

For the reasons espoused above, as well as in Premium's initial brief, it is respectfully submitted that Walnut's opposition to Premium's motion to dismiss Sweetwater's third-party complaint pursuant to <u>Fed. R. Civ. P</u>. 12 (b)(6), is without factual support or legal merit and, accordingly, Premium's motion should be granted at this juncture of the case.

By: /s/ James F. Moscagiuri

James F. Moscagiuri (JM-8928)
**COURTER, KOBERT & COHEN**
1001 Route 517
Hackettstown, NJ 07840
Telephone (908) 852-2600
Facsimile (908) 852-8225

Attorneys for Third-Party Defendant,
Premium Payment Plan

James F. Moscagiuri (JM-8928)
**COURTER, KOBERT & COHEN**
A Professional Corporation
1001 Route 517
Hackettstown, NJ 07840
Telephone (908) 852-2600
Facsimile (908) 852-8225
E-Mail jmoscagiuri@ckclaw.com

Attorneys for Third-Party Defendant,
Premium Payment Plan

**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| GREAT AMERICAN E & S INSURANCE COMPANY, | Civil Action No. 1:08-cv-04117-JEI-KMW |
| Plaintiff, | Civil Action |
| v. | **DOCUMENT ELECTRONICALLY FILED** |
| S. W. CAFÉ CORP., S. W. CAFÉ, LLC and JOSEPH CAVALIERI, | |
| Defendants. | **CERTIFICATION OF JAMES F. MOSCAGIURI** |
| S. W. CAFÉ, CORP. d/b/a SWEETWATER CASINO, a New Jersey Corporation, | |
| Third-Party Plaintiff, | |
| v. | |
| PREMIUM PAYMENT PLAN and WALNUT ADVISORY GROUP, | |
| Third-Party Defendants. | |

1.      I am an attorney at law in the State of New Jersey, and a member of the law firm of Courter, Kobert & Cohen, P.C., counsel for Third-Party Defendant, Premium Payment Plan

{00273368-1}

("Premium").  I am one of the attorneys responsible for the handling of the within matter on behalf of Premium and, as such, am personally familiar with the facts and circumstances set forth herein.

2.      Annexed hereto as Exhibit "A" is a true and correct copy of the Honorable Richard P. Gilardi's opinion in the matter entitled Precision Mechanical Services, Inc. v. T. J. PFund Assoc., Inc., 2003 WL 21659672 (Conn. Super.), 35 Conn. L. Rptr. 54.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ James F. Moscaguiri
James F. Moscagiuri (JM-8928)

Dated:  October 13, 2009

{00273368-1}

# EXHIBIT A

Not Reported in A.2d, 2003 WL 21659672 (Conn.Super.), 35 Conn. L. Rptr. 54

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

> Superior Court of Connecticut,
> Judicial District of New Haven.
> PRECISION MECHANICAL SERVICES, INC.,
> v.
> T.J. PFUND ASSOCIATES, INC.

> No. CV98-0416692.
> June 19, 2003.

Early Ludwick & Sweeney LLC, New Haven, for Precision Mechanical Services Inc.

Lustig & Brown LLP, Stamford, for TJ PFund Associates Inc., and Marianne Pfund.

Tyler Cooper & Alcorn, Stamford, for AFCO Credit Corporation.

Tyler Cooper & Alcorn, New Haven, for AFCO Credit Corporation.

Halloran & Sage, Hartford, for N.I.F. Services of New England.

Della Jacono, John F. Law Offices, Meriden, for Scottdale Insurance Company.

RICHARD P. GILARDI, Judge.

## FACTS

**\*1** The plaintiff, Precision Mechanical Services, Inc., filed an eight-count amended complaint on July 30, 2002, alleging in counts five, six and seven [FN1] that on May 23, 1996, the defendant, AFCO Credit Corporation (AFCO), an insurance premium finance company, wrongfully canceled the plaintiff's general liability insurance policy and failed to inform it of the cancellation. The plaintiff alleges that on August 9, 1996, while one its employees was performing repair services at a unit of a condominium complex, a fire occurred that caused extensive damage to the complex. As a result of the fire, numerous claims were filed against the plaintiff. Because the defendant had canceled the policy, however, the plaintiff's insurer refused to indemnify or defend the plaintiff for these claims.

> FN1. Counts one through four are asserted against the plaintiff's insurance agent and broker, T.J. Pfund Associates, Inc. and Marianne Pfund d/b/a Pfund Associates; count eight is asserted against the plaintiff's insurer, Scottsdale Insurance Company.

In count five, which sounds in breach of contract, the plaintiff alleges that it had an agreement with the defendant to provide financing for the policy that it held with its insurer. The plaintiff alleges that by canceling the financed insurance policy, the defendant breached the agreement in a number of ways, including the failure "to comply with the Connecticut General Statutes in terms of notifying the plaintiff that said policy had been canceled."

In count six, which sounds in negligence, the plaintiff alleges that the defendant canceled the policy under the authority of a commercial finance agreement that the defendant knew or should have known had been executed with the forged signature of the plaintiff's president.[FN2] The plaintiff alleges that the defendant knew or should have known, at the time of the cancellation, that it was canceling the plaintiff's policy without having the requisite legal authority to do so.

FN2. This commercial finance agreement is referenced in counts six and seven as Exhibit B. There is no Exhibit B attached to the plaintiff's amended complaint; the court will assume that Exhibit B attached to the plaintiff's original complaint, dated August 5, 1998, is the Exhibit B referenced in the amended complaint.

In count seven, the plaintiff alleges that the course of conduct engaged in by the defendant violates provisions of the Connecticut Unfair Insurance Practices Act ("CUIPA"), General Statutes § 38a-815 et seq., and the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes § 42-110a et seq.

On September 12, 2002, the defendant filed a motion for summary judgment on counts five, six and seven on the ground that because the defendant is not an insurance carrier, broker or agent, it owed the plaintiff no duty when it canceled the plaintiff's policy and that the defendant is therefore entitled to summary judgment as a matter of law. In accordance with Practice Book § 11-10, the defendant filed memoranda in support of its motion, and the plaintiff timely filed a memorandum of law in opposition. In accordance with Practice Book § 17-45, the parties properly attached affidavits and other supporting documents to these memoranda. At the court's request, the defendants T.J. Pfund Associates and Marianne Pfund d/b/a Pfund Associates filed additional memoranda in opposition to this motion.

## DISCUSSION

A "motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be fried." *Wilson v. New Haven,* 213 Conn. 277, 279, 567 A.2d 829 (1989). "Summary judgment in favor of the defendant is properly granted if the defendant in its motion raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Internal quotation marks omitted.) *Serrano v. Burns,* 248 Conn. 419, 424, 727 A.2d 1276 (1999). Summary judgment may be used to contest the legal sufficiency of a complaint. *Boucher Agency, Inc. v. Zimmer,* 160 Conn. 404, 409, 279 A.2d 540 (1971). "The issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment because the question is one of law." *Soares v. George A. Tomasso Construction Corp.,* 66 Conn.App. 466, 469 n. 2, 784 A.2d 1041 (2001).

**\*2** The defendant, who concedes "for purposes of this motion the accuracy of the facts alleged in the plaintiff's complaint-namely, that AFCO wrongfully canceled the Policy-" moves for summary judgment on the ground that, as a matter of law, AFCO has no liability to the plaintiff other than to return the premiums it received as a result of the wrongful cancellation. In support of its motion for summary judgment, the defendant points to General Statutes § 38a-170, subsections (a) and (e).[FN3] Subsection (a) governs the cancellation of an insurance company contract by an insurance premium finance company acting under a power of attorney to cancel contained in the finance agreement. Subsection (e) provides that upon cancellation, the issuer shall return gross valued premiums to the premium financing company for credit to the insured's account.

FN3. General Statutes § 38a-170 provides in relevant part: "(a) When an insurance premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract or contracts listed in the agreement on account of any default on the part of the insured, the insurance contract or contracts shall not be cancelled by the insurance premium finance company unless such cancellation is effectuated in accordance with the provisions of this section.(e) Whenever an insurance contract is cancelled in accordance with the provisions of this section, the insurer shall return whatever gross premiums are due under the insurance contract to the insurance premium finance company effecting the cancellation for crediting to the account of the insured.

The defendant argues that because no Connecticut court has specifically addressed the issue of the scope of liability of a premium finance company to an insured claiming wrongful cancellation of an

insurance policy, this court should consider and follow the reasoning of a number of decisions from other jurisdictions that have addressed this issue. In his memorandum of law, the defendant cites a number of cases from New Jersey and New York, which the defendant argues "have unequivocally held that a premium finance company holds no duty to an insured, and therefore has no liability to an insured for a wrongfully canceled policy other than to return the premiums received as a result of the wrongful cancellation." The defendant urges this court to adopt the reasoning of those cases that the failure of a premium finance company to follow statutory prescriptions regarding notice of cancellation, prescriptions similar to those found in Connecticut's General Statutes § 13a-170, renders any purported cancellation a nullity under the law and gives the insured recourse against the insurer under the policy itself.

The plaintiff argues in its memorandum of law in opposition to the defendant's motion for summary judgment that the defendant owes a duty of care to the plaintiff and the breach of that duty, specifically, the wrongful cancellation of an insured's insurance policy, imposes liability upon the premium finance company. In support of that argument the plaintiff posits that the power of attorney contained in the premium finance agreement with the defendant created an agency relationship that placed the defendant in a fiduciary relationship with the defendant. The plaintiff argues that the defendant "violated § 38a-170 and breached its contract with Precision Mechanical when it failed to comply with the notice provisions of both the statute and the Commercial Premium Finance Agreement." The plaintiff further argues that because the defendant's wrongful cancellation of the plaintiff's general liability policy amounts to gross negligence and wilful misconduct, the defendant's liability is not limited to the return of refunded premiums, but also includes liability for the consequential damages resulting from the cancellation.

**\*3** The plaintiff, who also acknowledges the lack of controlling law in Connecticut on the issue of the liability of a premium finance company for the wrongful termination of an insurance policy, urges this court to look for instruction to the decisions of courts in Vermont and Illinois interpreting their states' counterparts to § 38a-170. Those courts infer in their statutes, which are nearly identical to § 38a-170, a private right of action in favor of an insured against a premium finance company that fails to comply with statutory notice requirements for cancellation of a policy.

As both parties have indicated, there is no Connecticut case law that directly addresses the legal issue before this court. The defendant has conceded for the purpose of deciding its motion for summary judgment that there is no genuine issue of material fact regarding the cancellation of the plaintiff's general liability policy. The defendant concedes that the cancellation, whether under the contract or statutory requirements, was wrongful. The remaining question, therefore, is a legal question: Is the defendant liable to the plaintiff for the losses the plaintiff suffered as a result of this wrongful cancellation?

The parties have drawn support for their respective positions from the few Connecticut decisions that do involve some interpretation of § 38a-170, although not the sections of that statute relevant to the issue now before the court. For example, the plaintiff argues in its memorandum of law that the court in *Colagoivanni v. Premium Financing Specialists, Inc.*, judicial district of New Haven at New Haven, Docket No. CV 95 0370642 (July 22, 1996, Corradino, J.), "purports that a premium finance company, as opposed to an insurance company, should be responsible for its own misconduct." The plaintiff bases that conclusion on the following language from *Colagoivanni:* "The power of attorney given to [a premium financing company] to request that the policy be canceled is a mechanism created by finance companies and recognized by statute to protect finance companies against insureds who do not meet their financial obligations to finance companies to keep current with loan installments to finance premiums ... Insurers and their agents cannot rationally have imposed on them the obligation to police the financial relationships between finance companies and insureds nor should they be held responsible for errors or mistakes made by Premium Financing companies concerning requests for cancellation by those companies. *Id.*

The court in *Colagoivanni.* however, was not faced with the issue of the liability of a premium finance company that wrongfully cancels an insured's insurance policy. The issue in *Colagoivanni* was whether an insurance company that had canceled a policy pursuant to a notice of cancellation from a premium financing company had a duty to notify the insured of the cancellation of the policy. The

court stated that "[g]iven these circumstances there is no reason to impose a duty of notice of cancellation on agents of the insurer in addition to the notice of cancellation requirements already imposed on the Premium Financing Companies when such companies initiate cancellation, § 38a-170 (b)." *Id.* The language in *Colagoivanni* relied upon by the plaintiff in support of its argument that the defendant is liable to him for the wrongful cancellation of the policy is dicta. The plaintiff's argument is further undercut by the following language in *Colagoivanni:* "As discussed, the statute [§ 38a-170] provides that notice by the Premium Finance company to the insured is a prerequisite of a valid cancellation." (Emphasis added.) *Id* .

**\*4** Similarly, in *Jefferson v. New Haven County Ins. Agency, Inc.,* judicial district of New Haven at New Haven, Docket No. 309714 (January 15, 1993, Thompson, J.), the issue before the court was whether summary judgment should enter in favor of an insurance company who had failed, *inter alia,* to issue a notice of cancellation to either the insured or the premium finance company with which the insured had signed a contract for the payment of premiums and failed to ascertain or ensure that the premium finance company had notified the plaintiff of the cancellation of the policy. The plaintiff in *Jefferson* had argued in opposition to the insurance company's motion for summary judgment that the insurance company was statutorily and contractually obligated to send notice of the cancellation to the insured. In granting summary judgment for the insurance company, the court held that the applicable statute in a situation where the insurance company received a notice of cancellation from an insurance premium financing company holding a power of attorney from the insured to request cancellation was General Statutes § 38a-170, not §§ 38a-307 and 38a-308. The court noted that § 38a-170(c) requires that notice of cancellation be sent to the insured by the premium finance company and that the notice requirements relative to the insurer, as set forth in § 38a-170(d) [FN4] did not require the insurance company to notify the insured.

> FN4. General Statutes § 38a-170(d) provides: "All statutory, regulatory, and contractual provisions or restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party shall apply where cancellation is effected under the provisions of this section. The insurer shall give the prescribed notice in behalf of itself or the insured to any such governmental agency, mortgagee or other third party on or before the second business day after the day it receives the notice of cancellation from the insurance premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation."

*Jefferson,* like *Colagoivanni,* does not address the issue of the liability of a premium finance company that fails to meet statutory or contractual requirements to give notice to the insured when the power of attorney contained in a premium financing agreement is exercised to cancel the insured's policy. Nonetheless, the defendant argues in its memorandum of law that "[a] reading of these ... cases reveals that Connecticut courts have universally interpreted the purpose behind Section 38a-170 as providing protection to the interests of premium finance companies ... According [ly], these cases are consistent with other jurisdiction's findings that like statutes insulate [a] premium finance company from liability to an insured based on a claim of wrongful cancellation of a policy."

The sole appellate court case dealing with § 38a-170 is *Reliance Ins. Co. v. Reider,* 54 Conn.App. 77, 730 A.2d 1229 (1999). This case, however, involved the interpretation of subsection (d) of § 38a-170, specifically, what is the result of an insurer's failure to provide notice of cancellation to those parties the insurer is charged with notifying under the statute. The court in *Reliance* noted that " § 38a-170(a) provides that insurance contracts listed in a premium finance agreement that grants a power of attorney to the finance company 'shall not be canceled' by the finance company 'unless such cancellation is effectuated in accordance with the provisions of this section.' " (Emphasis in original.) *Id.,* at 85. The court therefore held that because the insurance company failed to file timely notice of cancellation with those agencies it was required to notice under § 38a-170(d), the cancellation permitted under § 38a-170(a) and (d) was not effective and the plaintiff's loss was covered under the policy. The defendant, who recognizes that *Reliance* interprets subsection (d) of § 38a-170, which is

not in issue in the present case, nonetheless argues that "the case clearly stands for the indisputable proposition that failure to strictly abide by the statutory notice requirements contained in § 38a-170 renders any cancellation of a policy ineffective."

**\*5** The defendants T.J. Pfund Associates, Inc. and Marianne Pfund d/b/a Pfund Associates, Inc., who at the court's request filed memoranda of law in opposition to the defendant AFCO's motion for summary judgment, argue that the defendant AFCO's reading of *Reliance* is over broad because the subsection in issue in that case was 38a-170(d).

Two things are clear to this court, First, the determination of the defendant's motion for summary judgment turns on a question of law-what is the liability, if any, of a premium finance company that wrongfully cancels an insurance policy. Second, there is no Connecticut case law that directly addresses this issue and the related case law that does exist is not particularly instructive as to how this question of law should be answered. A number of jurisdictions, however, have examined the issue now before this court, and it is worth noting that the statutes relevant to this question are nearly identical in all those jurisdictions.

*Unger v. AFCO Credit Corporation,* United States District Court, Docket No. 00-6303 (D.N.J. December 26, 2001), provides a useful starting point for the examination of how our sister states have resolved the issue now before this court. *Unger* is useful for a number of reasons. The defendant and the insurance company in *Unger* are the same as those in the present case, as well as the controlling issue, the arguments made by each party, the language of the controlling state statutes and the contract language of the premium financing agreements.

The plaintiff in **Unger**, the plaintiff in the present case, asserted claims in breach of contract and negligence against **AFCO** for the wrongful termination of an insurance policy that resulted in the refusal by Scottsdale Insurance Company to indemnify **Unger** for a fire loss. In **Unger** the federal district court noted that it would "consider decisions of the New Jersey Supreme Court, the Appellate Division of the New Jersey Superior Court, federal courts applying New Jersey law, and analogous decisions applying the law of other states in predicting how the New Jersey Supreme Court would decide the matter in question." *Id.,* at 10 n. 5. The *Unger* court relied heavily on the decision of the Appellate Division of the New Jersey Superior Court in *Kende Leasing Corporation v. A.I. Credit Corp.* 217 N.J.Super. 101, 524 A.2d 1306 (App.Div.), cert. denied, 108 N.J. 664, 532 A.2d 242 (1987), in holding that, under the circumstances of the case, Unger had failed to state any claim against AFCO entitling her to relief The court undertook a consideration of public policy, the law of other states and the existence of an administrative scheme under the New Jersey Insurance Premium Finance Company Act,[FN5] all of which the *Unger* court found did not significantly detract from the holding in *Kende,* but at least, in part, provided additional support for the conclusion reached in *Kende.*

FN5. Connecticut's counterpart to the New Jersey Premium Finance Company Act is found at General Statutes §§ 38a-160 through 38a-170.

In *Kende,* the New Jersey Appellate Division held "that [a premium finance company's] failure to mail [the insured] a notice of intent to cancel rendered ineffective the subsequent notice of cancellation. Therefore, [the insured's] policy was in effect at the time of the [insured's loss] and, under the terms of the policy [insurance company] was legally liable to pay [the insured] for the fire loss it sustained." *Id.,* at 113. The court in *Unger* notes that the *Kende* court's holding was based on New Jersey case law interpreting statutory notice requirements and the language of the statute itself. *Unger v. AFCO Credit Corp., supra,* at 17. The statute in issue was N.J. Stat. Ann. § 17: 16D-13, which is nearly identical to Connecticut's General Statutes § 38a-170. Specifically, the *Unger* and *Kende* courts were addressing subsection (a), which, in essence, states that when a premium finance company acting under a power of attorney cancels a contract or contracts, "the insurance contract or contracts shall not be canceled by the premium finance company unless such cancellation is effectuated in accordance with the provisions of this section."

**\*6** The court in *Unger* also reviewed public policy considerations undertaken in *Kende.* The

Appellate Division in *Kende* "specifically rejected the insurer's implicit argument that the purpose of the statutory notice requirement is satisfied even if the insurance policy is considered canceled so long as the insured possesses a claim for breach of duty against the premium finance company for its failure to comply with such a requirement." [FN6] *Id.,* at 17 The *Unger* court considered the *Kende* court's statement that "[n]otice of intent to cancel is intended to help an insured keep his policy from lapsing, not to give him recourse against a finance company once the hardships of not having coverage have already befallen him" to say, in other words, that "the purpose of the Statutory Policy Provision is promoted, not by permitting a cause of action against a premium finance company, but by treating a failure of the finance company to follow the Statutory Notice Provision as vitiating any purported cancellation of the insurance policy, thereby allowing the insured to pursue a cause of action against the insurer under such a policy." *Id.,* at 17-18.

> FN6. *Unger* notes that the " *Kende* court ... rejected the insurer's argument that the premium finance company acted as the insured's agent in terminating the insurance policy by observing that the company's sending a notice of cancellation was motivated by self-interest and not a desire to benefit [the insured]." (Internal quotation marks omitted.). **Unger** v. **AFCO** *Credit Corp., supra,* at 24.

The court in **Unger** further noted that it was not necessary to hold a premium finance company liable to protect an insured and ensure strict compliance with the New Jersey act, that such considerations would actually be honored by treating any cancellation in which the statutory notice requirements had been violated as a nullity and permitting the insured to recover from the insurer under the insurance policy.

The *Unger* court also considered the case law of New York State on the policy concern that a substantial and unjustified burden would be placed on a premium finance company by making it liable under the insurance policy to an insured. The New York courts cited by *Unger* have taken the same approach as that of the court in *Kende* and held that "if the insured could show an erroneous notice of cancellation, 'the cancellation will be treated as a nullity' and the insured will have recourse against the insurer under the policy itself." *Id.,* at 22, quoting *Best Image, Inc. v. Transamerica Ins. Finance Corp.,* 660 N.Y.S.2d 433 (App.Div .1977). **Unger** notes, "[e]ven more significantly, the *Basic Image* court justifies its decision by observing that the premium finance agency does not buy the risk." (Internal quotation marks omitted.) **Unger** v. **AFCO** *Credit Corp., supra,* at 22-23. **Unger** highlights further public policy arguments made by the New York courts and adopted in *Kende,* which the **Unger** court contends provide even further support for the conclusion reached in *Kende:* "[ *Basic Image* ] noted that the *Home Mutual* [ *Ins. Co. v. Broadway Bank,* 53 N.Y.2d 568 (1981) ] court found that public policy considerations disfavor holding a premium finance company liable to an insurer for the policy amount because, given such extensive liability, qualifying banks and lending units might well decline to act as premium financing agencies." (Internal quotation marks omitted.) **Unger** v. **AFCO** *Credit Corp., supra,* at 23.

**\*7** The **Unger** court further addresses this policy concern in stating: "[T]he objective of ensuring that the risk of significant liability does not diminish the availability of premium financing applies in this context. Even if the Statutory Notice Provision is to be strictly construed, such consideration is not promoted if premium financing is not available." *Id.,* at 24.

Following its review of New Jersey case law and that of the other jurisdictions relied upon by the New Jersey courts, especially *Kende,* the *Unger* court takes up consideration of the law in those jurisdictions that have expressly rejected *Kende* and its approach, notwithstanding statutory provisions nearly identical to those of New Jersey. *Unger* examines two cases, *Carr v. Peerless Ins. Co.,* 724 A.2d 454 (Vt.1998),. a case relied upon by the plaintiff in the present case in support of its opposition to the defendant's motion, and *Universal Fire & Casualty Ins. Co. v. Jabin,* 16 F.3d 1465 (7th Cir.1994). *Unger* notes that in *Carr,* "[t]he Vermont Supreme Court ... held that an insured can bring an action against a premium finance company for failing to comply with statutory cancellation procedures either based on a private right of action arising out of the statute itself or a theory of breach of contract and fiduciary relationships ... The court specifically imposed on the premium

finance company potential liability for all the benefits under the policy ... Similarly, the Seventh Circuit in [ *Jabin* ] held that the Illinois statute, equivalent to the Insurance Premium Finance Company Act, confers upon the insured a cause of action against the premium finance company for any cancellation it effectuates in breach of the [statute's] notice requirements." (Citations omitted; internal quotation marks omitted.) *Unger v. AFCO Credit Corn. supra,* at 26.

In *Carr,* the Vermont Supreme Court stated that it did not find controlling the policy concerns relied upon in *Kende* and was more persuaded by the court's analysis in *Jabin,* which emphasized that "the statutory language restricting cancellation without compliance with the statute specifically restricts cancellation by the premium finance company" (Internal quotation marks omitted.) *Carr v. Peerless Ins. Co., supra,* at 724 A.2d 472. The *Carr* court felt that in construing the Vermont statute according to its ordinary meaning, as it must, there was nothing in the statutory scheme to suggest that the insurer is responsible for the improper actions of the finance company and that "[w]hen the Legislature has deemed it appropriate to regulate or limit an insurance company's ability to cancel a policy it has issued, the Legislature has enacted statutes that plainly say so." *Id.* Nonetheless, the *Carr* court concluded that it should infer the existence of a private right of action in favor of the insured against the premium finance company. *Id.*

**\*8** The *Unger* court found that "[t]he persuasiveness of these opposing cases is significantly reduced by their simultaneous rejection of any liability on the part of the insurer to the insured. Both courts concluded that, even if the premium finance company fails to provide the required notices, the insurer is not liable to the insured because any cancellation of the insurance policy still remains valid and effective ... These courts explicitly criticized *Kende's* finding that such an insurer remains potentially liable under the policy." (Citations omitted.) **Unger** v. **AFCO** Credit Corp., supra, at 27.

The court's final consideration in **Unger** was the overall administrative scheme established by the New Jersey Premium Finance Company Act. Noting that the most serious argument that could be made against the *Kende* approach to premium finance company liability is that the entity responsible for the improper and ineffective cancellation seemingly does not face any negative consequences for its conduct, the *Unger* court points out how the act itself provides an administrative scheme to enforce its provisions. Connecticut's statutes contain the same administrative scheme discussed by the court in *Unger.* Citing the relevant New Jersey statutes, the court notes that the act requires a person engaged in financing insurance premiums to obtain a license from the commissioner of banking with fines imposed if the person engages in such business without a license. *Id.,* at 28. This provision is found in Connecticut General Statutes § 38a-162. The New Jersey act also provides that the commissioner "may revoke or suspend the license of a premium finance company when and if after investigation the commissioner finds that ... [s]uch company has violated any of the provisions of [the New Jersey Act]." *Id.* Connecticut's counterpart to this section is General Statutes § 38a-164 (a)(4). New Jersey's act also authorizes the imposition of financial penalties in lieu of license suspension or revocation; *id.,* at 29; as do the Connecticut statutes at § 38a-164(b). *Unger* thus held that "[g]iven the existence of such administrative sanctions, a failure of a premium finance company to abide by the requirements of the Statutory Notice Provision does subject it to possible sanction, thus diminishing the need [to] hold such an entity liable in the context of private civil litigation." *Id.,* at 29-30.

On facts identical to those in the present case, the *Unger* court "having fully considered the admittedly complex issues and law regarding the potential liability of a premium finance company to an insured, follows the *Kende* approach and finds that the insured ... has no cognizable claim against the premium finance company arising out of its alleged failure to provide sufficient notices." *Id.,* at 30.

This court, having undertaken the same considerations as those delineated in the *Unger* decision reaches the same conclusion. Not only are the facts of this case and *Unger* identical, but also the language of the relevant statutes and the premium financing agreements. This court finds the reasoning of the *Unger* and *Kende* courts to be more persuasive than that of the courts in Vermont and Illinois. Although the public policy concerns addressed in *Unger* are not controlling, this court concludes that those concerns serve as a sound basis for this court's decision that a premium finance company that wrongfully cancels an insured's policy is not liable to the insured. Furthermore, this

court's resolution of this issue does not conflict with, but can be supported by, what scant related case law exists in Connecticut on this issue. Finally, there is nothing in the legislative history of the Connecticut statutes regulating premium financing companies to indicate that this court's decision is contrary legislative intent. Debate in the legislature on House Bill 6994, which is codified at §§ 38a-160 through 38a-170, indicates only that the purpose of the bill was to bring regulation to a previously unregulated field. "This bill sponsored by the Connecticut Insurance Department brings regulation into a field that has been unregulated for years in the state of Connecticut. The bill is an adoption of the model bill enforced in Washington, D.C. and establishes procedures over companies specializing in the financing of insurance premiums." 14 H.R. Proc ., Pt. 7, 1971 Sess., p. 3174.

**\*9** Although AFCO has conceded, for purposes of this summary judgment motion only, that cancellation of the policy was wrongful, should cancellation of the policy be found to be wrongful, such cancellation and any action taken by Scottsdale Insurance Company subsequent thereto would be a nullity.

For all of the above stated reasons, the defendant AFCO's motion for summary judgment on counts five, six and seven is granted.

Conn.Super.,2003.
Precision Mechanical Services, Inc. v. T.J. Pfund Associates, Inc.
Not Reported in A.2d, 2003 WL 21659672 (Conn.Super.), 35 Conn. L. Rptr. 54

END OF DOCUMENT

James F. Moscagiuri (JM-8928)
**COURTER, KOBERT & COHEN**
A Professional Corporation
1001 Route 517
Hackettstown, NJ 07840
Telephone (908) 852-2600
Facsimile (908) 852-8225
E-Mail jmoscagiuri@ckclaw.com

Attorneys for Third-Party Defendant, Premium Payment Plan

**THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| GREAT AMERICAN E & S INSURANCE COMPANY,<br><br>       Plaintiff,<br><br> v.<br><br>S. W. CAFÉ CORP., S. W. CAFÉ, LLC and JOSEPH CAVALIERI,<br><br>       Defendants.<br>-------------------------------------------------------<br>S. W. CAFÉ, CORP. d/b/a SWEETWATER CASINO, a New Jersey Corporation,<br><br>     Third-Party Plaintiff,<br><br> v.<br><br>PREMIUM PAYMENT PLAN and WALNUT ADVISORY GROUP,<br><br>     Third-Party Defendants. | Civil Action No. 1:08-cv-04117-JEI-KMW<br><br>Civil Action<br><br>**DOCUMENT ELECTRONICALLY FILED**<br><br>**CERTIFICATION OF SERVICE** |

   1.  I am an attorney at law in the State of New Jersey, and a member of the law firm of Courter, Kobert & Cohen, P.C., counsel for Third-Party Defendant, Premium Payment Plan ("Premium").

2.    I certify that the within documents have been served with the Court via electronic

filing, as well as upon the following:

**One Courtesy Copy Via Regular Mail**

Honorable Karen M. Williams, U.S.M.J.
Mitchell H. Cohen Building
And United States Court House
4th and Cooper Streets, Courtroom 5C
Camden, NJ 08101

Honorable Joseph E. Irenas, U.S.D.J.
Mitchell H. Cohen Building
And United States Court House
4th and Cooper Streets, Courtroom 5A
Camden, NJ 08101

**Via E-Mail mponzi@fgpp.com and torlando@fgpp.com**

Matthew S. Ponzi, Esq./Thomas B. Orlando, Esq.
Foran, Glennon, Palandech & Ponzi, PC
222 North LaSalle Street, Suite 1400
Chicago, IL 60605

**Via Electronic Filing with Court**

Michael J. Vassaloti, Esq.
Brown & Connery, LLP
360 Haddon Avenue
Post Office Box 539
Westmont, NJ 08108
Attorneys for S.W. Café Corp.

Steven J. Polansky, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002
Attorneys for Great American E&S Insurance Company

Keith A. Bonchi, Esq.
Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill
660 New Road, Suite 1-A
Northfield, NJ 08225
Attorneys for S. W. Café, LLC

{00273367-1}

David C. Donohue, Esq.
Farkas & Donohue, LLC
389 Passaic Avenue
Fairfield, NJ 07004
Attorneys for Walnut Advisory Group

3.     I further certify that a PDF form of the above-mentioned documents has been sent to the United Stated District Court, District of New Jersey, via electronic filing, which is identical to the text in the paper copies.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_/s/ James F. Moscaguiri_____
James F. Moscagiuri (JM-8928)

Dated:  October 13, 2009

{00273367-1}