1                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
2

3      _____
       GREAT AMERICAN E & S INSURANCE
4      COMPANY,
                     PLAINTIFF
5
          Vs.                          CIVIL NO.
6                                      08-4117 (JEI)
       S.W. CAFE CORP., S.W. CAFE,
7      LLC and JOSEPH CAVALIERI,
                     DEFENDANTS
8      _____

9      S.W. CAFE, LLC,
            DEFENDANT/THIRD-PARTY PLF.
10
       V.
11
       SWEETWATER HOLDINGS, LLC,
12     JEFFREY R. ANASTASI and ANITA
       ANASTASI,
13          THIRD-PARTY DEFENDANTS
       _____
14

15                             **JUNE 17, 2009**
                               MITCHELL COHEN COURTHOUSE
16                             JOHN F. GERRY PLAZA
                               CAMDEN, NEW JERSEY  08101
17

18

19     B E F O R E:       THE HONORABLE JOSEPH E. IRENAS
                          SENIOR U.S. DISTRICT COURT JUDGE
20                        DISTRICT OF NEW JERSEY

21

22

23
                               Certified as true and correct as required
24                             by Title 28, U.S.C. Section 753
                               /S/ Francis J. Gable
25                             FRANCIS J. GABLE, C.S.R., R.M.R.
                               OFFICIAL U.S. REPORTER


                    *United States District Court*
                       *Camden, New Jersey*

1   A P P E A R A N C E S:

2

3       MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
        BY:  STEVEN S. POLANSKY, ESQUIRE
4       FOR THE PLAINTIFF GREAT AMERICAN

5       FORAN, GLENNON, PALANDECH & PONZI, PC
        BY:  THOMAS B. ORLANDO, ESQUIRE
6       FOR THE PLAINTIFF GREAT AMERICAN

7

8       GOLDENBERG, MACKLER, SAYEGH, MINTZ, PFEFFER, BONCHI &
        GILL, PC
        BY:  JEFFREY D. LIGHT, ESQUIRE
9       FOR DEFENDANT/COUNTERCLAIMANT S.W. CAFE, LLC

10

11      BROWN & CONNERY, LLP
        BY:  MICHAEL J. VASSALOTTI, ESQUIRE
        FOR DEFENDANTS S.W. CAFE, CORP. & JOSEPH CAVALIERI
12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1          THE COURT:  First, this is the matter of Great

 2   American E & S Insurance Company, versus S.W. Cafe Corp., et

 3   al.  And then there's, of course, a third-party complaint,

 4   S.W. Cafe, LLC, versus Sweetwater Holdings, LLC, and some

 5   other individuals.

 6          We are here on cross-motions for summary judgment

 7   between -- as I say, two of the major players, the plaintiff

 8   Great American, and S.W. Cafe, LLC.

 9          Let us first have the appearances of counsel.

10          MR. POLANSKY:  Good morning, your Honor, Steven J.

11   Polansky, Marshall, Dennehey, Warner, Coleman and Goggin,

12   co-counsel for plaintiff Great American E & S Insurance

13   Company, and co-counsel is participating by telephone.

14          THE COURT:  Okay.  Let's have the entry then for

15   the -- our telephone guest.

16          MR. ORLANDO:  Thank you again, your Honor.  Tom

17   Orlando for plaintiff Great American.

18          THE COURT:  Okay.  Thank you.

19          MR. POLANSKY:  Thank you.

20          MR. LIGHT:  Good morning, your Honor, Jeffrey Light

21   from the Goldenberg Mackler firm for S.W. Cafe, LLC.

22          MR. VASSALOTTI:  Good morning, Michael Vassalotti

23   from Brown and Connery for Sweetwater Cafe Corp.

24          THE COURT:  S.W. Cafe Corp.

25          MR. VASSALOTTI:  S.W.

1          THE COURT:  There is no Sweetwater Cafe Corp.

2          MR. VASSALOTTI:  Well, there's a lot different --

3     we're the Corp., not the LLC.

4          THE COURT:  Right.  S.W. Cafe Corp., trades as

5     Sweetwater Casino I believe.

6          MR. VASSALOTTI:  Yes.

7          THE COURT:  In fact, the policy lists them as

8     trading as Sweetwater Casino.

9          MR. VASSALOTTI:  That's correct.

10         THE COURT:  And Sweetwater Casino is what, a

11    restaurant --

12         MR. VASSALOTTI:  Yes, it is -- was.

13         THE COURT:  It was, excuse me, a

14    restaurant/entertainment venue of some kind.

15         MR. VASSALOTTI:  Yes.

16         THE COURT:  Okay.

17         MR. VASSALOTTI:  We are the policy holder; they are

18    the mortgagee.

19         THE COURT:  A lot of paper was produced, but I'm not

20    sure the issues are quite as complex as all the paper might

21    suggest.  Well, it's complex enough.

22         I'm going to sort of go through the chronology as I

23    understand it, but first, one document that maybe is in this

24    mass of papers, but we've gone through it over and over again

25    we can't find it, is the premium finance agreement between --

1    I'll call it PPP, premium payment plan, and S.W. Cafe Corp.

2              Is it attached to the papers somewhere?  Does

3    somebody have one?

4              MR. ORLANDO:  I do not believe it is attached to --

5              THE COURT:  I'm sorry; say again sir?

6              MR. ORLANDO:  I do not believe it is attached to any

7    of the summary judgment papers.

8              THE COURT:  That gives me comfort.  Well, do we have

9    it then?  Does somebody have it with them?

10             MR. VASSALOTTI:  Judge, let me see.  I have it in my

11   file, I don't know if I have it in --

12             THE COURT:  The reason I say that is the statute

13   actually makes -- I mean I assume you all understand, I'm

14   referring at least to the New Jersey version of the statute,

15   but the statute seems to exist just about everywhere in the

16   country in pretty similar form.  17:16D-12, which is the

17   statute which governs insurance premium financing.

18             But there is a -- there is something called a --

19   what would be an agreement.  Because notice, one form of

20   notice is required to somebody named in the agreement.  So I

21   wanted to see the agreement.

22             Well, all right.  We'll go ahead without it for the

23   moment.  I would ask -- well, maybe I won't, but if you can

24   find it, to refer to it, so much the better.

25             Okay.  In any case, the Sweetwater Casino, the

1    restaurant, I'll call it that for the moment, was insured as

2    of at least December 12th, 2007, by a policy of insurance

3    issued by Great American, through its -- what is referred to

4    as its managing general agent, Walnut Advisory Corp.

5           The policy is for a one year period, from 12/12/07,

6    to 12/12/08.  The property is located in, can you believe it,

7    Sweetwater, New Jersey, and is described as a restaurant.  The

8    insured is S.W. Cafe Corp, trading as Sweetwater Casino.

9           It does not appear from the papers that the actual

10   owner of the fee interest in the property is in fact the

11   insured.  The insured is actually described as a guarantor, in

12   some of the papers.

13          But nevertheless clearly they have an insurable

14   interest.  There's nothing that suggests that they don't have

15   an insurable interest in the property, and they are the named

16   insureds, S.W. Cafe.  There's a period after S. and a period

17   after W, S.W. Cafe Corp, trading as S. W. Cafe.

18          It appears that the broker for the insured, for the

19   insured, was something called Aconorate?

20          MR. VASSALOTTI:  Aconorate.

21          THE COURT:  Aconorate.

22          MR. VASSALOTTI:  Yes.

23          THE COURT:  And that's -- oh, there's no N, it's

24   just AC?  A-c-o-n-o-r-a-t-e?

25          MR. VASSALOTTI:  Yes, Judge.

1          THE COURT:  Which is located in Hammonton.  Which in

2    five days is going to start picking its blueberries, I'm told

3    it starts on the 22nd of June.

4          But it's located in Aconorate -- I mean it's located

5    in Hammonton.  And they were the broker for the policy, on

6    behalf of the insured.

7          There's listed on the policy two mortgagees; one is

8    the SW Cafe, LLC, now there's no periods in the policy at

9    least after S or W, it just says SW Cafe LLC.  And the other

10   is Joseph Cavalieri.  They are both listed as mortgagees.

11         The policy contains a mortgagee clause, which I

12   would describe roughly as what I would call generically a type

13   of lost payee clause; meaning that the mortgagee, should there

14   be a casualty, a fire, gets paid up front its -- the damages

15   that are payable, or the casualty that's payable by the

16   insurance company.

17         The premium for that policy was financed by a New

18   York company, which as far as I can tell identifies itself as

19   Premium Payment Plan.  I don't know if that's the official

20   legal name, but that's what their letterhead says, but I'm

21   going to call them PPP.

22         It's not completely clear from the record whether

23   the year premium was paid and then they financed that with

24   monthly payments from the insured, or whether they were

25   paying -- or whether Great American was paid on some periodic

1    basis.  It's hard for me to tell.

2          But nobody suggests that as of the relevant

3    timeframe in June and early July, that the insurance company

4    was not fully paid up to that point.  There is no suggestion

5    that they were not paid.  There was no default in the payment

6    of the premium to the insured.

7          Now, this case of course has been brought about by a

8    fire which occurred on June 30th, 2008.  Which severely

9    damaged, and I gather closed down -- I mean the damage was so

10   severe that the restaurant no longer functions.  And that was

11   on June 30th, 2008.

12         Going back now -- let me mention one other thing.

13   There were two different types of cancellation provisions in

14   the policy.  The first is under what is called the common

15   policy conditions, which says -- and it says an A, capital A

16   is cancellation.

17         An A-1 says, the first named insured shown in the

18   declarations, that would be S.W. Cafe Corp, may cancel this

19   policy by mailing or delivering to us advanced written notice

20   of cancellation.

21         A-2 says, we, which means the insurance company, not

22   the insured, may cancel this policy by mailing or delivering

23   to the first named insured written notice of cancellation at

24   least 10 days before the effective date of cancellation if we

25   cancel for nonpayment of premium; and 30 days before the

1  effective date if we cancel for any other reason.

2          So that's the first cancellation provision, which

3  covers two kinds of cancellation, one by the insured, one by

4  the insurance company.

5          The mortgagee clause, which is a separate clause in

6  the policy, has its own cancellation provision, or

7  modification if you will of a cancellation.  It says, if we

8  cancel this policy, that means the insurance company, we will

9  give written notice to the mortgage holder, that would be the

10 mortgagee, at least 10 days before the effective date of

11 cancellation, if we cancel for non-payment of premium; and 30

12 days notice to the mortgagee if we cancel for any other

13 reason.

14         It kind of matches the general cancellation

15 provision, but it provides for notice to the mortgagee.

16 That's -- that's what makes it a little different than the

17 generalized cancellation clause.

18         The insured makes the payments I gather that were

19 due probably January, February, March, April.  There was a

20 payment due May 12th, 2008, of $1,862 and 16 cents.  That

21 payment is not made in a timely fashion.

22         I don't know what interchange there is between the

23 premium finance company and the insured.  But it's at least

24 alleged that a notice of intent to cancel, notice of intent to

25 cancel, it is alleged is sent to the insured.

1          Now, at this point I ought to -- oh, by the way,

2    that notice, according to the computer generated copy which is

3    attached to the papers, has a date on it of May 22nd, 2008.

4    Great American alleges that that's the date it was mailed.

5          That's denied, by Corp, denies it.  LLC says it

6    never received, either admits nor denies it, but it never

7    received a copy so it didn't know.  And Corp denies it, and

8    they claimed it wasn't even mailed until the 2nd of June, 10

9    days after the date of it.

10          There is no affidavits or records from PPP in the

11    record, which would give me any clue as to when it was

12    actually made.  I know there's a date on it, but that's --

13    that's a date.  I'm used to getting a letter from the

14    government that's dated 73 days before I receive it, and I

15    wonder what happened when I called; well, it went to our mail

16    room, how do we know what happened after it got to the mail

17    room.  So, that appears to be at least a contested issue at

18    this point as to when it was mailed.

19          Now, again, I ought to put by way of background,

20    it's also alleged, but I don't have a copy of the document,

21    but it would be standard, let me put it this way, in a premium

22    finance agreement, that the premium finance agreement gives a

23    power of attorney, or the insured gives the premium finance

24    company a power of attorney, to cancel on behalf of the

25    insured, to terminate, cancel, the insurance policy being

 1   financed.

 2        Now, one may wonder why is that, why does a -- why

 3   do they care whether it's cancelled or not.  And of course the

 4   answer when one thinks about it is obvious, but it may not be

 5   obvious on the surface; is if -- well, not if, to some extent

 6   the policy will already have been paid, beyond whenever the

 7   payment is due from the insured to the premium finance

 8   company.  And on cancellation they will be entitled to their

 9   money back.

10        In other words, the unused portion of the premium

11   would be refundable by the insurance company.  And the premium

12   finance agreement also provides any unearned premium gets

13   refunded of course to the finance company.

14        So, it becomes in a sense its security or part of

15   its security for the debt that it is incurred by paying the

16   insurance company the premium, and then trying to collect --

17   collect what it is advanced in monthly payments from the

18   insured.

19        And if there was any doubt about that, on a document

20   called notice of cancellation which I'll talk about in a

21   minute, it says -- well, it says:  To make certain that the

22   insured receives full credit for the gross unearned premium,

23   we suggest that you observe certain provisions and forward the

24   return premium directly to us; us being the premium finance

25   company.

1          So, that's why the finance company takes a power of

2   attorney giving it the right to immediately cancel a policy,

3   because it wants any unpaid premiums which it advanced, the

4   premium finance company advanced, wants it back.  Which at

5   least will reduce to some degree the debt that it will be owed

6   by the -- will be owed by the insured to the premium finance

7   company.

8          Okay.  So, we have this notice of intent to cancel.

9   Now, I probably ought to bring one more thing -- I said this

10  was simple, didn't I?  Bring one more thing into the mix.  As

11  far as I can tell almost every state has a law, and they seem

12  to be very similar.

13         I looked at Pennsylvania's, because it's referred to

14  in the case decided by the Third Circuit, which is somewhat

15  central to us, but it was decided under Pennsylvania's law.

16         And the two laws are -- are not quite identical, but

17  they're 97 percent identical to each other.  There's a five

18  day difference in timeframe, and there's a little language

19  that's different, but basically it's pretty much the same

20  statute.

21         And all these statutes generally put some

22  constraints on the ability of a premium finance company to

23  exercise its power of attorney, to cancel the policy.  In

24  other words, it puts legal constraints designed to some degree

25  to protect the insured, you know, and give the insured some

1    kind of notice.

2             And it first requires that that a notice of intent

3    to cancel, be sent to the insured.  And a copy to the

4    insurance agent or insurance broker indicated on the premium

5    finance agreement, that which I don't have, but -- but that

6    notice is required, okay.  That's 10 days before the effective

7    date of the cancellation.

8             Then it says:  After the expiration of the 10 day

9    period, the premium finance company may thereafter request in

10   the name of the insured, cancellation of such insurance

11   contract or contracts by mailing the insurer, meaning Great

12   American in this case would be, a notice of cancellation, and

13   the insurance contract shall be cancelled as if such notice of

14   cancellation had been submitted by the insured himself.

15            Then it says:  The premium finance company shall

16   also mail a notice of cancellation to the insured, to his last

17   known address and to the insurance agent or insurance broker

18   on the premium finance agreement, the effective date of such

19   cancellation shall not be earlier than three days after the

20   mailing of such notice to the insured and the insurance agent

21   or insurance broker.

22            Then there's a provision that deals with --

23   provisions in the contract dealing with notice requirements to

24   the mortgagee.  That's the subject of the Third Circuit

25   opinion, how that's interpreted, and I'm not going to get into

1     that now, but it is or may be at some date an issue in this

2     case.

3               Okay.  What happens next.  We have this notice of

4     intent to cancel.  It's disputed as to when it was mailed, but

5     was dated May 22nd, 2008.  And it purports to be to Sweetwater

6     Casino, the insured, and Aconorate, the broker, who generated

7     the business.

8               The next document attached to the papers is an

9     actual notice of cancellation.  It refers to the cancellation

10    being effective June 9th, 2008.  That language -- it says it

11    was sent -- it's stamped on it, or this computer generated

12    version of it, has put on it, this is a true copy of the

13    notice of cancellation sent to the insured on 6/05/2008.

14              There are attached to the papers three different

15    notices of cancellation.  In each case it says:  This is a

16    true copy of the notice of cancellation sent to the insured on

17    06/06/2008.

18              But in one case the address is Sweetwater Casino.

19    In one case, even though it says sent to the insured, the

20    addressee is Walnut Advisory Corp.  And in another case,

21    again, even though it says it's being sent to the insured, the

22    addressee is Great American E & S.

23              Once again really impossible to tell when this was

24    mailed.  Also, I don't see any copy as the statute requires to

25    Aconorate.  Although Aconorate is mentioned on the notice of

1    intent to cancel, it's not mentioned anywhere on the notices

2    of cancellation.  Okay.

3          Thereafter, the insured sometime before June 18th --

4    now I think there may be some allegations of when that occurs,

5    but it appears clear that it must have happened before the

6    18th of June, and I'll tell you in a minute why that appears

7    to be clear.

8          The insured pays the missing installment, and I

9    assume there were some late charges, and maybe some interest

10   charges additional, but they apparently pay it.  Because on

11   the 18th of June, Premium Payment Plan writes a letter to the

12   Sweetwater Casino, the insured.

13         And says:  As you are aware due to non-payment of

14   your installment, we previously sent out a request to cancel

15   your policy to the insurance company; we've received the

16   payment which was past due, and that's how I -- this is dated

17   the 18th so I assume it's accurate.

18         And a request -- and a request in capital letters

19   for some reason, to have the policies reinstated has been

20   issued to your insurance company; however, you must consider

21   your insurance policy cancelled until you receive an official

22   notice of reinstatement from your insurance company; we

23   request that you contact your insurance agent to protect

24   yourself immediately.

25               Nothing in the record tells me whether, A, the

1  insurance company received the request that PPP says it sent

2  on the 18th of June.  Remember, this is 12 days before the

3  fire.  We have no idea what they did with it.  I have no idea

4  whether they ever attempted to return the premium, the short

5  rate -- you know, if the policy was cancelled they should have

6  sent the premium back, but they never even attempted to send

7  he premium back, the unearned premium.

8          Nor do I know whether the insured contacted the

9  company to check on whether the policy had in fact been

10 reinstated, I have no idea.  But to me it's significant, what

11 makes this case at least a little more interesting, is that,

12 A, the premium was paid, or the premium finance company's

13 installment was paid, the premium had already been paid; and

14 according to PPP they requested that the policy be reinstated.

15 What happened with that request is beyond me at this point.

16         On June 30th, the building burns down.  What happens

17 between the 18th and the 30th, again, I don't know.

18         On the 1st, the insurance company says -- sends a

19 notice of cancellation, and it says:  We are cancelling this

20 policy.  Which is of course different from their legal

21 position; we are cancelling this policy, coverage will cease

22 on the date of cancellation shown above.

23         Well, the date of cancellation, guess what, is June

24 9th, I think -- where is that -- yes, June 9th, 2008, which

25 relates to the premium finance cancellation.

1            So, to start with, we are cancelling something of a

2    date three weeks ago, is a little strange.  They don't give

3    any reason for the cancellation in the notice.  And of course

4    it doesn't appear that they had any reason to cancel, that

5    they had no reason to cancel.

6            Whether they would have had a reason to say the

7    policy was in fact cancelled by the insured or an agent of the

8    insured three weeks ago, that would be one thing.  But they

9    don't say that, they just say we're cancelling the policy.

10            And that was July 1st.  It says date mailed -- I

11    don't really know if it was mailed that day, but it says date

12    mailed, 1st of July.  Clearly they got notice of the fire,

13    everybody ran around panicked and they quick got this notice.

14    I can't make a finding they all ran around panicked, but they

15    didn't spend a lot of time studying the file.  And they quick

16    got a notice of cancellation out.

17            Probably not even in their wildest imagination at

18    that time thinking of the distinction between an insurance

19    company cancelling a policy for not compliance with policy

20    conditions, as distinct from an insured cancelling a policy

21    because it wants its money back.

22            But one thing they knew then on July 1st, they

23    didn't want to pay the policy, they knew that.  And so this

24    notice of cancellation goes out.

25            I assume that everyone would agree with me, that if

1  the cancellation by the premium finance company was not done

2  in accordance with the statute, this policy is in effect.

3  Everybody agree with that?

4          MR. LIGHT:  Yes.

5          MR. VASSALOTTI:  Yes, your Honor.

6          THE COURT:  Anybody disagree with that?

7          Are people remaining silent because they don't know

8  the answer?

9          MR. O:  I think I agree, your Honor.  But can you

10  just say that again so I --

11          THE COURT:  I'll state it again.

12          MR. ORLANDO:  Thank you.

13          THE COURT:  That if the policy was not cancelled by

14  the premium finance company, in accordance with the statute,

15  meaning NJSA 17:16D-13, then this policy is still in force.

16  Was in force on July 1st.

17          MR. ORLANDO:  Yes, we agree.

18          THE COURT:  All right.  So everybody agrees with

19  that.  Well, why isn't there an issue of fact -- and I read

20  the pleadings to see -- you know, because the allegation was

21  that it was mailed on the 22nd.

22          Well, it's denied.  And not only is it denied, but

23  there's -- actually one of the pleadings specifically alleges

24  that they didn't -- that it wasn't mailed and they say -- the

25  premium finance company's own records say that it was mailed

1   on June 2nd.  Let me see.

2           Yes -- well, paragraph 12 is where the complaint

3   alleges -- Great American's complaint alleges on May 22nd,

4   2008 Premium Payment Plan mailed a notice of intent.  The

5   answer by Corp, says, denied.  Premium Payment Plan's customer

6   account records show that the intent to cancel was sent to

7   answering defendants on June 2nd, 2008.  That's what it says.

8           There's nothing in this record at least, because I

9   can't find anything that any records of premium finance

10  company or anything -- heck, I can't even find the agreement

11  let alone anything else.

12          Number two, I can't find any record that the

13  notice -- that the cancellation itself was sent to Aconorate.

14  There's some indication it may have been sent to Aconorate

15  when the notice of intent to cancel, but the notice of

16  cancellation itself, there's nothing in the record -- I'm not

17  saying it wasn't done, I just can't tell.

18          Furthermore, we have the fact that there was --

19  appears to be a request to the company to reinstate the

20  policy.  We have no reaction from the company as to what they

21  did to that -- well A, whether they received, and if they

22  received it what they did with it.

23          We then have a notice of cancellation by the

24  insurance company, which is totally at odds with their whole

25  theory of the case, which is that it was cancelled by the

*United States District Court*
*Camden, New Jersey*

1  insured, when the notice says we cancel it.

2          In short, this is a case that cries out for

3  discovery to find out what happened here.  And, by the way, I

4  mean the Third Circuit case, that if everything were done

5  properly, in other words, if the thing had -- the thing; if

6  the policy had been properly terminated by the premium finance

7  company, clearly Sweetwater, the insured, has a problem with

8  *Gallatin Fuels* case, that's their -- *Gallatin Fuels versus*

9  *Westchester Fire Insurance Company*, which is 244 Federal

10  Appendix 424, it's an non-precedential opinion.

11          One of those authors is my classmate, Jane Roth.

12  Not that I would -- she reverses me, why should I not disagree

13  with her.

14          But I don't get to that issue yet.  Because I only

15  get to that -- that issue has to do -- at least as relates to

16  this case, has to do with the mortgagee's rights as -- under

17  interpreting what is sub-paragraph D of 17:16D-13.

18          But I don't get there yet, because if this policy

19  wasn't cancelled properly under the statute, I don't have to

20  worry about -- you know, and timeframes are very important

21  here.  If the notice -- if the notice of intent to cancel

22  wasn't mailed until the 2nd of June, or some date like that,

23  rather than the 22nd of May, well, that's a big difference.

24  Throws all the timeframes off.

25          I have no opinion, I mean I'm not taking sides in

1   the dispute, I have no way of knowing at this point, but it

2   seems to me that the only person -- I shouldn't say the only,

3   but the most significant person on the mailing might be the --

4   PPP itself as to what its records show.

5        All right.  With that background I'll hear -- who

6   moved first?  Who was the mover and who was the cross mover?

7        MR. LIGHT:  Your Honor, S.W. Cafe LLC --

8        THE COURT:  Did you move for summary judgment?

9        MR. LIGHT:  Yes.

10       THE COURT:  And Great American cross-moved?

11       MR. ORLANDO:  That's right.

12       MR. LIGHT:  That's correct.

13       THE COURT:  Well, then I will let you argue in the

14  order in which you are filed your motion.  So you're the first

15  moving party, go ahead.

16       MR. LIGHT:  Thank you, your Honor.  This is unusual

17  since you've already I think pretty much decided that the

18  motions will be sounds like denied, because there are

19  questions of fact as to -- that need to be addressed, with

20  regard to the cancellation itself.

21       But with regard to our position, we have -- S.W.

22  Cafe LLC is the holder of 1.4 million dollar mortgage.  And

23  the position Great American's taken as to cancellation and

24  notice, has some problems to it.  Number one it defies common

25  sense --

1           THE COURT:  Well, *Gallatin* is your big problem right

2   now.

3           MR. LIGHT:  Yes, they rely completely on *Gallatin*.

4   *Gallatin* is unpublished, it's not precedential --

5           THE COURT:  No, it's published.  We don't use that

6   anymore.  They're precedential or non-precedential.

7   Everything is published.

8           MR. LIGHT:  As I understand it it's

9   non-precedential.

10          THE COURT:  It's not precedential.

11          MR. LIGHT:  And I think there's good reason, I think

12  it's wrongly decided --

13          THE COURT:  No, no, that's not why it's not

14  precedential.  It's not precedential because the panel decided

15  -- at the Third Circuit if they're -- if the panel wants to

16  make their opinion precedential they have to circulate it to

17  the entire Third Circuit bench, and they get a chance to weigh

18  in on it.

19          If they make it non-precedential, they don't have to

20  circulate it.  The panel has to reach agreement, but if the

21  panel reaches agreement, they don't circulate it to the rest

22  and it's non-precedential.  Not because they think it's wrong;

23  well, we'll issue it anyhow, we don't think it's right but

24  we'll issue it because we want to be done with it.

25          MR. LIGHT:  Judge, I think it's wrongly decided, I

1   know they think it's rightly decided.  And it's -- under

2   Pennsylvania law there are some distinctions between the two

3   but --

4          THE COURT:  Not particularly relevant to the issues

5   here.  I mean that's why I went through the Pennsylvania

6   statute to see what the differences were if there were any,

7   and they were -- as it relates to this issue I'm not sure

8   there are much differences.

9          But why would I plunge into that issue until -- I

10  don't even get to that issue unless there's been a valid

11  cancellation.  Under the earlier paragraphs of the law.

12         MR. LIGHT:  That's correct, Judge, and you made your

13  views certainly known on that this morning.  But with regard

14  to our issue, 17:16D-13 does have this three step cancellation

15  process as your Honor has indicated.

16         First, there's the notice of intention which has to

17  be 10 days prior to the cancellation to the insured to say

18  look, you haven't paid you have 10 days to correct this.  And

19  then if they don't then there's a notice to -- from the

20  premium finance company to the insurer, and the statute says

21  that they can request cancellation.

22         So, it's interesting, it doesn't say that the

23  premium finance company can cancel it, it says you can request

24  cancellation from the -- from the insurer.  The implication

25  seems to be that the insurer is the one who decides whether or

 1   not the policy gets cancelled.

 2          THE COURT:  Well, there's nothing in this record

 3   that tells me what the insurance company did when -- well, if

 4   or when they got a notice of intent to cancel, because I don't

 5   really know they got it, it's hard to tell at this point.

 6          Or what they did when they got the letter of June

 7   18th from PPP, or -- no, they may not have gotten that letter,

 8   but they apparently were sent the letter requesting

 9   reinstatement.  I don't know where that is, I don't even know

10   I've seen a copy of that letter.  I don't know what they did.

11          All I know is that on July 1st the day after the

12   fire, they purport to cancel.  They say we are cancelling it,

13   which they had no right to do.  They didn't have a right to

14   cancel at that point because the premium was paid up to that

15   point.

16          So again, the whole scenario in this crucial, you

17   know, three week period or four week period, I'm not sure what

18   happened.  I really don't know what happened.

19          MR. LIGHT:  Agreed, your Honor.  My argument is to

20   the point that Great American's position appears to be that at

21   least with regard to this statute, and logically extended that

22   if an insurer, insured cancels its policy, the insurance

23   company never has an obligation to ever tell the mortgagee

24   that that was going to occur, they have no obligation to do

25   that.

**1**          That is just so contrary to I think the statute

**2** and --

**3**          THE COURT:  Why is that contrary to the statute?

**4**          MR. LIGHT:  Because of this three step policy.

**5** There's a request by the premium finance company to the

**6** insurer to cancel the policy.  And Section D says before you

**7** do that you have to give notice that's otherwise required, and

**8** you look to the policy.

**9**          It says, the insurer shall give prescribed notice on

**10** behalf of the mortgagee, on or before the second business day

**11** after the day it receives such notice of cancellation.  It

**12** clearly envisions another -- another step.  They have to

**13** notice the mortgagee.

**14**          If the mortgagee can't get notice, in common

**15** business practice, the mortgagee has no protection.  How is --

**16**          THE COURT:  You're reading more into the statute

**17** than is there.  It just says, such insurance -- after the

**18** expiration of such 10 day period, the premium finance company

**19** may thereafter request in the name of the insured,

**20** cancellation of such insurance contract or contracts by

**21** mailing to the insureds a notice of cancellation, that the

**22** insurance contract shall be cancelled as if such notice of

**23** cancellation had been submitted by the insured himself.

**24**          I mean I --

**25**          MR. LIGHT:  But they're really in the policy of

1    insurance, and the cases say they're really two contracts in

2    this insurance contract; there's a contract between the

3    insurer and the insured, there's a contract between the

4    insurer and the mortgagee.

5         The mortgagee has its own protectable interests and

6    those interests can only be advanced by -- by notice prior to

7    cancellation.  Otherwise a mortgagee is left with -- with --

8         THE COURT:  But that's the argument that *Gallatin*

9    dealt with.  That's -- you know, leaving aside whether it's

10   rightly or wrongly decided, they -- that was the whole issue

11   of -- well, sub-paragraph D of that section we're talking

12   about, Section 13; all statutory, regulatory and contractual

13   restrictions providing that the insurance contract may not be

14   cancelled, unless notice is given to the governmental agency,

15   mortgagee, which is what you're relying on, or other

16   third-party, shall apply where cancellation is effective under

17   the provisions of this section.  And it goes on.

18        MR. LIGHT:  I understand.

19        THE COURT:  And that was the exact argument -- your

20   argument was the exact argument raised exactly in the *Gallatin*

21   case.  And rejected by a non-precedential opinion of the Third

22   Circuit.

23        MR. LIGHT:  I know, your Honor, and the problem with

24   that opinion is that it turns asset based lending and secured

25   lending completely on its head.  You now have mortgagees who

1   have no way of knowing if a policy ever gets cancelled.

2        An insurer may cancel a policy for any number of

3   reasons.  They may decide I found a new insurance company and

4   it's cheaper, they may cancel.  Well, how does the mortgagee

5   ever know about that?  How -- how does the mortgagee ever know

6   if it's on the policy, if it has the right coverage if it's in

7   the rights amounts.

8        There's an insecurity that's created --

9        THE COURT:  The answer to that is easy; the

10  mortgagee insists that before they lend, they get a provision

11  in the policy that even that the insured -- that even if the

12  insured chooses to cancel the policy, that notice be given to

13  the mortgagee.

14       I mean that's -- that's easy to solve, it's just

15  nobody ever thought of it.  And Aconorate apparently never

16  thought of it.

17       MR. LIGHT:  Judge, we know that these -- these terms

18  are usually not negotiated provisions --

19       THE COURT:  That's not so, that's not so.  I mean

20  loss -- loss payee clauses do get negotiated, absolutely.  And

21  sometimes you get separate certificates of insurance for loss

22  payee that will have that just kind of provision in it.

23  That's not so.

24       But they are negotiated.  And they're easy to put

25  in.  And -- but that's neither here nor there.  It's a

1   question of the interpretation of the statute that is at issue

2   here.  They didn't negotiate it; whether they could have or

3   couldn't have, they didn't.  So the question is what does the

4   statute mean.

5          And I understand your position.  I really do.  And I

6   have to say when I first read the statute, I reacted the same

7   way you reacted; well, where is the notice to the mortgagee.

8   I reacted exactly the same way.  Until I read the *Gallatin*

9   case.

10         But my instinctive reaction was why are we even

11  here, this is a no-brainer.  And then I read the *Gallatin*

12  case, where they made that clear-cut distinction between

13  cancellation by the insured versus cancellation by the

14  insurance company.

15         And that -- and how they interpreted Section D,

16  subsection D.

17         MR. LIGHT:  And Judge we do have the fact that in

18  the cancellation they said we're cancelling the policy.

19         THE COURT:  Yes, as I say, the insurance company

20  didn't cover itself with glory when it reacted.  It reacted

21  hastily.  It had no need to act hastily because if it was

22  already cancelled, another notice wasn't necessary.

23         We don't know the history of this reinstatement.

24  The fact that the premium was paid, at least belatedly -- not

25  the premium, the premium finance company was paid its

1  installment.  There was allegedly a notice to reinstate.  We

2  don't know how they reacted or by failing to react that stops

3  them from denying it.

4          I mean, I don't know, there's all kinds of issues in

5  here.  And I'm taking -- I'm not making anything up, this is

6  all right in the documents.  Where the PPP says we sent a

7  notice to the insurance company asking them to reinstate.

8          Well, I don't know whether they reinstated or not.

9  Did they ever pay back or even attempt to pay back the short

10 premium, you know, the unearned premium.  Which if they really

11 thought the policy was cancelled they would have done.

12         Why did they send that silly July 1st notice, saying

13 we're cancelling the policy.  And we is always what's used

14 when the insurance company is acting, not the insured.

15         So, I'm not prejudging any of those issues, I just

16 don't know

17         MR. LIGHT:  I have nothing further, Judge.

18         THE COURT:  Okay.

19         Do you want to add anything?

20         MR. VASSALOTTI:  No, Judge.  I just wanted to -- I'm

21 an interested --

22         THE COURT:  You're an interested bystander.

23         MR. VASSALOTTI:  An interested bystander.  But I do

24 want to point out to the Court, Judge, that we have brought in

25 Walnut Group and Premium Payment Plan.  Walnut Group filed an

1  answer last week --

2       THE COURT:  But Walnut -- I'm not exactly sure what

3  the separate interest of Walnut Group is.  They're described

4  as the managing -- what was the words used; managing general

5  agent.

6       MR. VASSALOTTI:  That's an interesting phrase --

7       THE COURT:  Well, a lot of companies do use general

8  agents.  You know, even life insurance companies used to have

9  general agents.  They don't use that system much anymore, but

10 they used to have general agents around who had a role, but

11 I -- I don't really know what that means in this policy -- in

12 this scenario here.

13      MR. VASSALOTTI:  Suffice it to say, Judge, we agree

14 with you that there's a myriad of fact questions that are out

15 there.  And --

16      THE COURT:  Is Great American a surplus lines

17 carrier?

18      MR. ORLANDO:  Yes, your Honor.

19      THE COURT:  They are a surplus lines?

20      MR. VASSALOTTI:  Yes.

21      THE COURT:  For the record, surplus lines are people

22 who are not fully licensed in New Jersey, but where a certain

23 kind of determination is made by the commissioner of

24 insurance, they're allowed to sell policies in New Jersey.  In

25 certain very limited requirements they're allowed to sell in

1    New Jersey, I believe that's what --

2         MR. VASSALOTTI:  Through an agent.

3         THE COURT:  Through an agent.

4         MR. VASSALOTTI:  And that Walnut Group is that agent

5    in this case.

6         THE COURT:  Okay.  So, I don't know whether they

7    really have any independent liability or not here.

8         MR. VASSALOTTI:  Judge, I think just a little bit of

9    discovery will answer all these factual questions that you

10   have --

11        THE COURT:  But the issue here, nobody's alleging

12   that Great American is insolvent or something, that we have

13   another deep packet.  Either there's coverage or there isn't

14   coverage.

15        If there's coverage my assumption is they'll pay; if

16   there's not coverage, they won't pay.

17        MR. ORLANDO:  That's right.

18        THE COURT:  I mean I don't -- it's not a case where

19   I have somebody in receivership, like Great American was in

20   receivership somewhere and I have to find another deep pocket,

21   and I looked after Walnut Group, a ha, we'll have them and

22   they'll pay, you know.

23        MR. VASSALOTTI:  But that's all I have, Judge.

24        THE COURT:  Okay, thank you.

25        All right.  Let's hear from Great American.

1          MR. ORLANDO:  Thank you, your Honor.  We absolutely

2     agree with you that there are a myriad of fact questions that

3     have to be discovered.

4          It is -- our cross-motions for summary judgment are

5     not addressing whether or not the attempted cancellation by

6     PPP was valid in the first instance.  And we understand you

7     have identified all of the fact issues that are contested and

8     remain to be resolved.

9          Our understanding of how we come before you today on

10    the cross-motions is that the mortgagee, S.W. Cafe, LLC, is

11    taking the position that even if the policy was properly

12    cancelled by PPP, they would still be entitled to the

13    insurance proceeds as the mortgagee, because of -- because of

14    the fact that they did not receive notice of the cancellation

15    from Great American.  And that they are seeking that you enter

16    an order requiring Great American to pay those proceeds within

17    30 days of an entry of the order.

18         And so that's why I think that we're here now.  I

19    think that the cross -- both motions, that is the motion

20    brought by Great American, my client, and the motion brought

21    by the mortgagee, assume that the -- the attempted

22    cancellation by PPP is valid for purposes of this distinct

23    issue between Great American and the mortgagee.

24         And in that context it's simply Great American's

25    position that if it is ultimately determined that the policy

1    was properly cancelled by PPP, it is also or was also properly

2    cancelled as to the mortgagee because the mortgagee was not

3    entitled to the separate notice from Great American.

4            And of course our argument is based, you know,

5    squarely on the *Gallatin Fuels* decision.

6            THE COURT:  I understand.  I understand your point,

7    yes.  My inclination, however, is not to decide theoretical

8    issues.  Judges always get in trouble when they decide

9    theoretical issues.

10           If there's no cancellation, I don't have to decide

11   whether D -- what the meaning of D is.  Whether *Gallatin* is

12   correctly or incorrectly decided.  And what a district judge's

13   role is in -- you know, when faced with a rather square Third

14   Circuit opinion.

15           See, in the old days, they -- if you go back pre

16   Judge Becker, a lot of -- if there wasn't a precedential

17   opinion you have what we used to call judgment orders.

18           The Third Circuit would just say for the reasons

19   below we affirm or, you know, the court below -- but had no

20   reasoning of any kind.  So you didn't have to worry about --

21   you know, a district judge didn't have to worry about

22   overruling.

23           But Judge Becker started the procedure of saying

24   every case should have an opinion.  And those opinions,

25   lawyers being lawyers and judges being judges, began getting

1    longer and longer and longer.

2          And now since I've sat on the Circuit fairly

3    regularly for the last three or four years, you know, now we

4    get 20 page, 15 page unpublished opinions, and sometimes quite

5    important issues, interesting issues.

6          And I think that puts a district judge in a little

7    bit of a different position, than facing.  You know, a one

8    line judgment order or something.  Well, there's nothing to

9    really deal with that.

10         And so -- but, be that as it may, I'm still -- you

11   know, that's an issue I shouldn't have to decide unless I need

12   to decide it.  And I think the first issue in this case was it

13   ever cancelled or not.

14         And since both sides seem to agree that the efficacy

15   of the cancellation itself at this point is up in the air --

16   am I right?  Nobody really disagrees with that, that there's

17   factual disputes.

18         I'm -- and of course, as I say, if it wasn't

19   effectively cancelled, properly cancelled under the statute,

20   then the mortgagee is home free.  The -- well, everybody, the

21   insured, the mortgagee, everybody is home free.  They'll get

22   their coverage, and I have no doubt that Great American will

23   pay.

24         Subject to whatever appellate rights they have, but

25   at the end of the day if it's determined that there wasn't a

1    proper cancellation, they'll pay -- they'll pay what they owe.

2            And if -- if I reach the conclusion that it was

3    cancelled, then I'm going to decide *Gallatin*.  But at that

4    point it will be pure legal issue really.  I'll have a factual

5    record that tells me exactly what happened.  You know, I'll

6    have all the details, and factual details will be resolved,

7    and then I'll -- I won't call it a simple legal issue, but not

8    a hard issue to, you know, to deal with.

9            And it's whether the distinction between who does

10   the cancelling, you know, makes a difference in interpreting

11   the statute.  And I will decide it.

12           Anybody want to add anything else?

13           MR. LIGHT:  Nothing, your Honor.

14           MR. VASSALOTTI:  No, Judge.

15           THE COURT:  All right.  For the reasons I think I

16   already articulated, I'm going to deny both cross-motions for

17   summary judgment.

18           Where does discovery stand, just out of curiosity?

19           MR. VASSALOTTI:  Judge, we've been doing paper

20   discovery --

21           THE COURT:  You haven't had really dep discovery.

22           MR. VASSALOTTI:  We haven't pending this.

23           THE COURT:  I hope I maybe focused you all a little

24   bit.

25           MR. VASSALOTTI:  I think you have, Judge.

*United States District Court*
*Camden, New Jersey*

1          MR. ORLANDO:  Yes, Judge.

2          THE COURT:  There's all good lawyers in this case,

3   so it might well have gotten there without me, but I hope I

4   maybe focused you a little bit.

5          Do you think it might be helpful if the magistrate

6   judge had another conference, a scheduling conference here?

7          MR. VASSALOTTI:  Judge, I think with the appearance

8   of the new parties, Walnut Group, and we still haven't heard

9   from Premium Payment Plan --

10          THE COURT:  Have they been joined?

11          MR. VASSALOTTI:  Yes.

12          THE COURT:  Have they been served?

13          MR. VASSALOTTI.  Yes.  And like I said Walnut Group

14   just answered --

15          THE COURT:  Yes, I looked -- in fact, I have the

16   answer of Walnut Group, I looked at it.

17          MR. VASSALOTTI:  I haven't heard from anybody from

18   Premium Payment Plan.

19          THE COURT:  They're in New York State?  They're

20   located in New York?

21          MR. VASSALOTTI:  Yes, I believe so.

22          THE COURT:  That's what their letterhead says.

23          MR. VASSALOTTI:  Yes.  I will re-double my efforts

24   to find out where they are, and I think once they're in we'll

25   be really be in a position to --

1          THE COURT:  All right.  I'm going to tell the

2    magistrate to maybe in a month, you know, or three weeks, get

3    a settlement -- not a settlement; well if he wants to do that

4    too, but a status conference to, you know, sort of get going

5    where we're going here so we can move the case forward.

6          Who is the magistrate in this case?

7          MR. VASSALOTTI:  Judge, we were transferred to --

8          THE COURT:  Judge Williams?

9          MR. POLANSKY:  Judge Williams is the new magistrate.

10         THE COURT:  The new magistrate on this one?  Okay.

11   Then I'll just notify her that she should give you a couple of

12   weeks to see if you can get straightened out with finding

13   something out about PPP, but --

14         MR. VASSALOTTI:  Okay.

15         THE COURT:  But have a conference so you can get the

16   settlement -- the scheduling -- judges, we are so leaning

17   towards settlements; but this case I think there's probably

18   going to be even before settlement talks, there's got to be

19   some discovery.

20         MR. VASSALOTTI:  Right, Judge.

21         THE COURT:  To move the matter forward.

22         MR. VASSALOTTI:  Okay.

23         THE COURT:  All right.  I thank you all, and I'll

24   issue an order turning down the cross-motions for summary

25   judgment.

1          MR. POLANSKY:  Thank you, your Honor.

2          MR. VASSALOTTI:  Thank you, Judge.

3          MR. ORLANDO:  Thank you, your Honor.

4          THE COURT:  Thank you very much.

5          THE DEPUTY CLERK:  All rise.

6          (Matter concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$1,862** [1] - 9:20

**/**

**/S** [1] - 1:24

**0**

**06/06/2008** [1] - 14:17
**08-4117** [1] - 1:6
**08101** [1] - 1:16

**1**

**1.4** [1] - 21:22
**10** [8] - 8:24, 9:10,
10:8, 13:6, 13:8,
23:17, 23:18, 25:18
**12** [2] - 16:2, 19:2
**12/12/07** [1] - 6:5
**12/12/08** [1] - 6:6
**12th** [2] - 6:2, 9:20
**13** [1] - 26:12
**15** [1] - 34:4
**16** [1] - 9:20
**17** [1] - 1:15
**17:16D-12** [1] - 5:16
**17:16D-13** [3] - 18:15,
20:17, 23:14
**18th** [7] - 15:3, 15:6,
15:11, 15:17, 16:2,
16:17, 24:7
**1st** [7] - 16:18, 17:10,
17:12, 17:22, 18:16,
24:11, 29:12

**2**

**20** [1] - 34:4
**2007** [1] - 6:2
**2008** [9] - 8:8, 8:11,
9:20, 10:3, 14:5,
14:10, 16:24, 19:4,
19:7
**2009** [1] - 1:15
**22nd** [6] - 7:3, 10:3,
14:5, 18:21, 19:3,
20:23
**244** [1] - 20:9
**28** [1] - 1:24
**2nd** [4] - 10:8, 19:1,
19:7, 20:22

**3**

**30** [3] - 8:25, 9:11,
32:17
**30th** [4] - 8:8, 8:11,
16:16, 16:17

**4**

**424** [1] - 20:10

**6**

**6/05/2008** [1] - 14:13

**7**

**73** [1] - 10:14
**753** [1] - 1:24

**9**

**97** [1] - 12:17
**9th** [3] - 14:10, 16:24

**A**

**A-1** [1] - 8:17
**A-2** [1] - 8:21
**ability** [1] - 12:22
**absolutely** [2] - 27:20,
32:1
**AC** [1] - 6:24
**accordance** [2] - 18:2,
18:14
**according** [2] - 10:2,
16:14
**account** [1] - 19:6
**accurate** [1] - 15:17
**Aconorate** [10] - 6:19,
6:20, 6:21, 7:4, 14:6,
14:25, 19:13, 19:14,
27:15
**ACONORATE** [1] -
6:24
**act** [1] - 28:21
**acting** [1] - 29:14
**actual** [2] - 6:9, 14:9
**add** [2] - 29:19, 35:12
**additional** [1] - 15:10
**address** [2] - 13:17,
14:18
**addressed** [1] - 21:19
**addressee** [2] - 14:20,
14:22
**addressing** [1] - 32:5

**admits** [1] - 10:6
**advanced** [5] - 8:19,
11:17, 12:3, 12:4,
26:6
**Advisory** [2] - 6:4,
14:20
**affidavits** [1] - 10:10
**affirm** [1] - 33:19
**agency** [1] - 26:14
**agent** [10] - 6:4, 13:4,
13:17, 13:20, 15:23,
17:7, 30:5, 31:2,
31:3, 31:4
**agents** [3] - 30:8,
30:9, 30:10
**ago** [2] - 17:2, 17:8
**agree** [7] - 17:25,
18:3, 18:9, 18:17,
30:13, 32:2, 34:14
**Agreed** [1] - 24:19
**agreement** [12] - 4:25,
5:19, 5:20, 5:21,
10:22, 11:12, 13:5,
13:18, 19:10, 22:20,
22:21
**agrees** [1] - 18:18
**ahead** [2] - 5:22, 21:15
**air** [1] - 34:15
**al** [1] - 3:3
**allegation** [1] - 18:20
**allegations** [1] - 15:4
**alleged** [3] - 9:24,
9:25, 10:20
**allegedly** [1] - 29:1
**alleges** [4] - 10:4,
18:23, 19:3
**alleging** [1] - 31:11
**allowed** [2] - 30:24,
30:25
**almost** [1] - 12:11
**alone** [1] - 19:11
**AMERICAN** [3] - 1:3,
2:3, 2:6
**American** [20] - 3:2,
3:8, 3:12, 3:17, 6:3,
7:25, 10:4, 13:12,
14:22, 21:10, 30:16,
31:12, 31:19, 31:25,
32:15, 32:16, 32:20,
32:23, 33:3, 34:22
**American's** [4] - 19:3,
21:23, 24:20, 32:24
**amounts** [1] - 27:7
**ANASTASI** [2] - 1:12,
1:12
**ANITA** [1] - 1:12
**answer** [7] - 11:4,
18:8, 19:5, 27:9,
30:1, 31:9, 36:16
**answered** [1] - 36:14

**answering** [1] - 19:7
**anyhow** [1] - 22:23
**appear** [2] - 6:9, 17:4
**appearance** [1] - 36:7
**appearances** [1] - 3:9
**appellate** [1] - 34:24
**Appendix** [1] - 20:10
**apply** [1] - 26:16
**April** [1] - 9:19
**argue** [1] - 21:13
**argument** [6] - 24:10,
26:8, 26:19, 26:20,
33:4
**articulated** [1] - 35:16
**aside** [1] - 26:9
**asset** [1] - 26:24
**assume** [5] - 5:13,
15:9, 15:17, 17:25,
32:21
**assumption** [1] -
31:15
**attached** [6] - 5:2, 5:4,
5:6, 10:3, 14:8,
14:14
**attempt** [1] - 29:9
**attempted** [4] - 16:4,
16:6, 32:5, 32:21
**attorney** [4] - 10:23,
10:24, 12:2, 12:23
**authors** [1] - 20:11
**aware** [1] - 15:13

**B**

**background** [2] -
10:19, 21:5
**based** [2] - 26:24, 33:4
**basis** [1] - 8:1
**Becker** [2] - 33:16,
33:23
**becomes** [1] - 11:14
**began** [1] - 33:25
**behalf** [3] - 7:6, 10:24,
25:10
**belatedly** [1] - 28:24
**below** [2] - 33:19
**bench** [1] - 22:17
**better** [1] - 5:24
**between** [11] - 3:7,
4:25, 9:22, 16:17,
17:18, 23:2, 26:2,
26:3, 28:12, 32:23,
35:9
**beyond** [2] - 11:6,
16:15
**big** [2] - 20:23, 22:1
**bit** [4] - 31:8, 34:7,
35:24, 36:4
**blueberries** [1] - 7:2

**BONCHI** [1] - 2:7
**brainer** [1] - 28:11
**bring** [1] - 12:9
**Bring** [1] - 12:10
**broker** [6] - 6:18, 7:5,
13:4, 13:17, 13:21,
14:6
**brought** [4] - 8:7,
29:24, 32:20
**Brown** [1] - 3:23
**BROWN** [1] - 2:10
**building** [1] - 16:16
**burns** [1] - 16:16
**business** [3] - 14:7,
25:10, 25:15
**BY** [4] - 2:3, 2:5, 2:8,
2:11
**bystander** [2] - 29:22,
29:23

**C**

**C.S.R** [1] - 1:25
**CAFE** [5] - 1:6, 1:9,
2:9, 2:11
**Cafe** [19] - 3:2, 3:4,
3:8, 3:21, 3:23, 3:24,
4:1, 4:4, 5:1, 6:8,
6:16, 6:17, 7:8, 7:9,
8:18, 21:7, 21:22,
32:10
**CAMDEN** [1] - 1:16
**cancel** [32] - 8:18,
8:22, 8:25, 9:1, 9:8,
9:11, 9:12, 9:24,
9:25, 10:24, 10:25,
12:2, 12:8, 12:23,
13:3, 14:4, 15:1,
15:14, 17:4, 17:5,
19:6, 19:15, 20:1,
20:21, 23:23, 24:4,
24:12, 24:14, 25:6,
27:2, 27:4, 27:12
**cancellation** [59] -
8:13, 8:16, 8:20,
8:23, 8:24, 9:2, 9:3,
9:6, 9:7, 9:11, 9:14,
9:17, 11:8, 11:20,
13:7, 13:10, 13:12,
13:14, 13:16, 13:19,
14:9, 14:13, 14:15,
14:16, 15:2, 16:19,
16:22, 16:23, 16:25,
17:3, 17:16, 17:24,
18:1, 19:13, 19:16,
19:23, 21:20, 21:23,
23:11, 23:14, 23:17,
23:21, 23:24, 25:11,
25:20, 25:21, 25:23,

26:7, 26:16, 28:13,
28:18, 32:5, 32:14,
32:22, 33:10, 34:15,
35:1
**cancelled** [21] - 11:3,
13:13, 15:21, 16:5,
17:7, 18:13, 19:25,
20:19, 24:1, 25:22,
26:14, 27:1, 28:22,
29:11, 32:12, 33:1,
33:2, 34:13, 34:19,
35:3
**cancelling** [10] -
16:19, 16:21, 17:1,
17:9, 17:19, 17:20,
24:12, 28:18, 29:13,
35:10
**cancels** [1] - 24:22
**capital** [2] - 8:15,
15:18
**care** [1] - 11:3
**carrier** [1] - 30:17
**case** [26] - 5:25, 8:7,
12:14, 13:12, 14:2,
14:15, 14:18, 14:19,
14:20, 16:11, 19:25,
20:2, 20:4, 20:8,
20:16, 26:21, 28:9,
28:12, 31:5, 31:18,
33:24, 34:12, 36:2,
37:5, 37:6, 37:17
**cases** [1] - 26:1
**Casino** [8] - 4:5, 4:8,
4:10, 5:25, 6:8, 14:6,
14:18, 15:12
**casualty** [2] - 7:14,
7:15
**CAVALIERI** [2] - 1:7,
2:11
**Cavalieri** [1] - 7:10
**cease** [1] - 16:21
**central** [1] - 12:15
**cents** [1] - 9:20
**certain** [4] - 11:21,
11:23, 30:22, 30:25
**certainly** [1] - 23:13
**certificates** [1] - 27:21
**Certified** [1] - 1:23
**chance** [1] - 22:17
**charges** [1] - 15:9,
15:10
**cheaper** [1] - 27:4
**check** [1] - 16:9
**chooses** [1] - 27:12
**chronology** [1] - 4:22
**Circuit** [9] - 12:14,
13:24, 20:4, 22:15,
22:17, 26:22, 33:14,
33:18, 34:2
**circulate** [3] - 22:16,

22:20, 22:21
**CIVIL** [1] - 1:5
**claimed** [1] - 10:8
**classmate** [1] - 20:11
**clause** [5] - 7:11, 7:13,
9:5, 9:17
**clauses** [1] - 27:20
**clear** [4] - 7:22, 15:5,
15:7, 28:12
**clear-cut** [1] - 28:12
**clearly** [3] - 6:13, 20:7,
25:12
**Clearly** [1] - 17:12
**CLERK** [1] - 38:5
**client** [1] - 32:20
**closed** [1] - 8:9
**clue** [1] - 10:11
**co** [2] - 3:12, 3:13
**co-counsel** [2] - 3:12,
3:13
**COHEN** [1] - 1:15
**COLEMAN** [1] - 2:2
**Coleman** [1] - 3:11
**collect** [2] - 11:16,
11:17
**comfort** [1] - 5:8
**commissioner** [1] -
30:23
**common** [3] - 8:14,
21:24, 25:14
**companies** [2] - 30:7,
30:8
**Company** [3] - 3:2,
3:13, 20:9
**company** [45] - 7:16,
7:18, 8:3, 8:21, 9:4,
9:8, 9:23, 10:24,
11:8, 11:11, 11:13,
11:16, 11:25, 12:1,
12:4, 12:7, 12:22,
13:9, 13:15, 15:15,
15:20, 15:22, 16:1,
16:9, 16:18, 17:19,
18:1, 18:14, 19:10,
19:19, 19:20, 19:24,
20:7, 23:20, 23:23,
24:3, 24:23, 25:5,
25:18, 27:3, 28:14,
28:19, 28:25, 29:7,
29:14
**COMPANY** [1] - 1:4
**company's** [2] -
16:12, 18:25
**complaint** [3] - 3:3,
19:2, 19:3
**completely** [3] - 7:22,
22:3, 26:25
**complex** [2] - 4:20,
4:21
**compliance** [1] -

17:19
**computer** [2] - 10:2,
14:11
**concluded** [1] - 38:6
**conclusion** [1] - 35:2
**conditions** [2] - 8:15,
17:20
**conference** [4] - 36:6,
37:4, 37:15
**Connery** [1] - 3:23
**CONNERY** [1] - 2:2
**consider** [1] - 15:20
**constraints** [2] -
12:22, 12:24
**contact** [1] - 15:23
**contacted** [1] - 16:8
**contains** [1] - 7:11
**contested** [2] - 10:17,
32:7
**context** [1] - 32:24
**contract** [9] - 13:11,
13:13, 13:23, 25:20,
25:22, 26:2, 26:3,
26:13
**contracts** [3] - 13:11,
25:20, 26:1
**contractual** [1] - 26:12
**contrary** [2] - 25:1,
25:3
**copy** [8] - 10:2, 10:7,
10:20, 13:3, 14:12,
14:16, 14:24, 24:10
**Corp** [15] - 3:2, 3:23,
3:24, 4:1, 4:3, 4:4,
5:1, 6:4, 6:8, 6:17,
8:18, 10:5, 10:7,
14:20, 19:5
**CORP** [2] - 1:6, 2:11
**correct** [5] - 1:23, 4:9,
21:12, 23:12, 23:18
**correctly** [1] - 33:12
**counsel** [3] - 3:9,
3:12, 3:13
**country** [1] - 5:16
**couple** [1] - 37:11
**course** [8] - 3:3, 8:7,
11:3, 11:13, 16:20,
17:3, 33:4, 34:18
**COURT** [68] - 1:1,
1:19, 3:1, 3:14, 3:18,
3:24, 4:1, 4:4, 4:7,
4:10, 4:13, 4:16,
4:19, 5:5, 5:8, 5:12,
6:21, 6:23, 7:1, 18:6,
18:11, 18:13, 18:18,
21:8, 21:10, 21:13,
22:1, 22:5, 22:10,
22:13, 23:4, 24:2,
25:3, 25:16, 26:8,
26:19, 27:9, 27:19,

28:19, 29:18, 29:22,
30:2, 30:7, 30:16,
30:19, 30:21, 31:3,
31:6, 31:11, 31:18,
31:24, 33:6, 35:15,
35:21, 35:23, 36:2,
36:10, 36:12, 36:15,
36:19, 36:22, 37:1,
37:8, 37:10, 37:15,
37:21, 37:23, 38:4
**Court** [1] - 29:24
**court** [1] - 33:19
**COURTHOUSE** [1] -
1:15
**cover** [1] - 28:20
**coverage** [7] - 16:21,
27:6, 31:13, 31:14,
31:15, 31:16, 34:22
**covers** [1] - 9:3
**created** [1] - 27:8
**credit** [1] - 11:22
**cries** [1] - 20:2
**cross** [8] - 3:6, 21:6,
21:10, 32:4, 32:10,
32:19, 35:16, 37:24
**cross-motions** [5] -
3:6, 32:4, 32:10,
35:16, 37:24
**cross-moved** [1] -
21:10
**crucial** [1] - 24:16
**curiosity** [1] - 35:18
**customer** [1] - 19:5
**cut** [1] - 28:12

## D

**damage** [1] - 8:9
**damaged** [1] - 8:9
**damages** [1] - 7:14
**date** [17] - 8:24, 9:1,
9:10, 10:3, 10:4,
10:9, 10:12, 10:13,
13:7, 13:18, 14:1,
16:22, 16:23, 17:2,
17:10, 17:11, 20:22
**dated** [3] - 10:14,
14:5, 15:16
**days** [14] - 7:2, 8:24,
8:25, 9:10, 9:12,
10:9, 10:14, 13:6,
13:19, 16:2, 23:17,
23:18, 32:17, 33:15
**deal** [2] - 34:9, 35:8
**dealing** [1] - 13:23
**deals** [1] - 13:22
**dealt** [1] - 26:9
**debt** [2] - 11:15, 12:5
**December** [1] - 6:2

**decide** [8] - 27:3, 33:7,
33:8, 33:10, 34:11,
34:12, 35:3, 35:11
**decided** [9] - 12:14,
12:15, 21:17, 22:12,
22:14, 22:25, 23:1,
26:10, 33:12
**decides** [1] - 23:25
**decision** [1] - 33:5
**declarations** [1] - 8:18
**deep** [2] - 31:13, 31:20
**default** [1] - 8:5
**DEFENDANT/
COUNTERCLAIMANT**
[1] - 2:9
**DEFENDANT/THIRD** -
[1] - 1:9
**DEFENDANT/THIRD-
PARTY** [1] - 1:9
**defendants** [1] - 19:7
**DEFENDANTS** [3] -
1:7, 1:13, 2:11
**defies** [1] - 21:24
**degree** [2] - 12:5,
12:24
**delivering** [2] - 8:19,
8:22
**denied** [5] - 10:5,
18:22, 19:5, 21:18
**denies** [3] - 10:5, 10:6,
10:7
**Dennehey** [1] - 3:11
**DENNEHEY** [1] - 2:2
**deny** [1] - 35:16
**denying** [1] - 29:3
**dep** [1] - 35:21
**DEPUTY** [1] - 38:5
**describe** [1] - 7:12
**described** [3] - 6:7,
6:11, 30:3
**designed** [1] - 12:24
**details** [2] - 35:6
**determination** [1] -
30:23
**determined** [2] -
32:25, 34:25
**difference** [3] - 12:18,
20:23, 35:10
**differences** [2] - 23:6,
23:8
**different** [7] - 4:2,
8:13, 9:16, 12:19,
14:14, 16:20, 34:7
**directly** [1] - 11:24
**disagree** [2] - 18:6,
20:12
**disagrees** [1] - 34:16
**discovered** [1] - 32:3
**discovery** [6] - 20:3,
31:9, 35:18, 35:20,

35:21, 37:19
**dispute** [1] - 21:1
**disputed** [1] - 14:4
**disputes** [1] - 34:17
**distinct** [2] - 17:20, 32:22
**distinction** [3] - 17:18, 28:12, 35:9
**distinctions** [1] - 23:2
**DISTRICT** [4] - 1:1, 1:1, 1:19, 1:20
**district** [3] - 33:12, 33:21, 34:6
**document** [4] - 4:23, 10:20, 11:19, 14:8
**documents** [1] - 29:6
**dollar** [1] - 21:22
**done** [5] - 18:1, 19:17, 20:4, 22:24, 29:11
**double** [1] - 36:23
**doubt** [2] - 11:19, 34:22
**down** [3] - 8:9, 16:16, 37:24
**due** [5] - 9:19, 9:20, 11:7, 15:13, 15:16

**E**

**early** [1] - 8:3
**easy** [3] - 27:9, 27:14, 27:24
**effect** [1] - 18:2
**effective** [7] - 8:24, 9:1, 9:10, 13:6, 13:18, 14:10, 26:16
**effectively** [1] - 34:19
**efficacy** [1] - 34:14
**efforts** [1] - 36:23
**Either** [1] - 31:13
**either** [1] - 10:6
**end** [1] - 34:25
**enter** [1] - 32:15
**entire** [1] - 22:17
**entitled** [3] - 11:8, 32:12, 33:3
**entry** [2] - 3:14, 32:17
**envisions** [1] - 25:12
**ESQUIRE** [4] - 2:3, 2:5, 2:8, 2:11
**et** [1] - 3:2
**everywhere** [1] - 5:15
**exact** [2] - 26:19, 26:20
**exactly** [4] - 26:20, 28:8, 30:2, 35:5
**excuse** [1] - 4:13
**exercise** [1] - 12:23
**exist** [1] - 5:15

**expiration** [2] - 13:8, 25:18
**extended** [1] - 24:21
**extent** [1] - 11:5

**F**

**faced** [1] - 33:13
**facing** [1] - 34:7
**fact** [14] - 4:7, 6:10, 16:9, 17:7, 18:19, 19:18, 21:19, 28:17, 28:24, 30:14, 32:2, 32:7, 32:14, 36:15
**factual** [4] - 31:9, 34:17, 35:4, 35:6
**failing** [1] - 29:2
**fairly** [1] - 34:2
**far** [2] - 7:18, 12:11
**fashion** [1] - 9:21
**February** [1] - 9:19
**Federal** [1] - 20:9
**fee** [1] - 6:10
**file** [2] - 5:11, 17:15
**filed** [2] - 21:14, 29:25
**finance** [29] - 4:25, 9:23, 10:22, 10:23, 11:7, 11:12, 11:13, 11:24, 12:1, 12:4, 12:6, 12:22, 13:5, 13:9, 13:15, 13:18, 16:12, 16:25, 18:1, 18:14, 18:25, 19:9, 20:6, 23:20, 23:23, 25:5, 25:18, 28:25
**financed** [3] - 7:17, 7:23, 11:1
**financing** [1] - 5:17
**Fire** [1] - 20:9
**fire** [5] - 7:14, 8:8, 16:3, 17:12, 24:12
**firm** [1] - 3:21
**First** [2] - 3:1, 23:16
**first** [12] - 3:9, 4:23, 8:14, 8:17, 8:23, 9:2, 13:2, 21:6, 21:14, 28:6, 32:6, 34:12
**five** [2] - 7:2, 12:17
**focused** [2] - 35:23, 36:4
**FOR** [4] - 2:3, 2:6, 2:9, 2:11
**FORAN** [1] - 2:5
**force** [2] - 18:15, 18:16
**form** [2] - 5:16, 5:19
**forward** [3] - 11:23, 37:5, 37:21
**four** [2] - 24:17, 34:3

**Francis** [1] - 1:24
**FRANCIS** [1] - 1:25
**free** [2] - 34:20, 34:21
**front** [1] - 7:14
**Fuels** [3] - 20:8, 33:5
**full** [1] - 11:22
**fully** [2] - 8:4, 30:22
**functions** [1] - 8:10
**Furthermore** [1] - 19:18

**G**

**Gable** [1] - 1:24
**GABLE** [1] - 1:25
**Gallatin** [12] - 20:8, 22:1, 22:3, 22:4, 26:8, 26:20, 28:8, 28:11, 33:5, 33:11, 35:3
**gather** [2] - 8:9, 9:18
**general** [6] - 6:4, 9:14, 30:4, 30:7, 30:9, 30:10
**generalized** [1] - 9:17
**generally** [1] - 12:21
**generated** [3] - 10:2, 14:6, 14:11
**generically** [1] - 7:12
**GERRY** [1] - 1:16
**GILL** [1] - 2:8
**given** [2] - 26:14, 27:12
**GLENNON** [1] - 2:5
**glory** [1] - 28:20
**Goggin** [1] - 3:11
**GOGGIN** [1] - 2:2
**Goldenberg** [1] - 3:21
**GOLDENBERG** [1] - 2:7
**government** [1] - 10:14
**governmental** [1] - 26:14
**governs** [1] - 5:17
**GREAT** [3] - 1:3, 2:3, 2:6
**Great** [24] - 3:1, 3:8, 3:12, 3:17, 6:3, 7:25, 10:4, 13:11, 14:22, 19:3, 21:10, 21:23, 24:20, 30:16, 31:12, 31:19, 31:25, 32:15, 32:16, 32:20, 32:23, 32:24, 33:3, 34:22
**gross** [1] - 11:22
**Group** [8] - 29:25, 30:3, 31:4, 31:21, 36:8, 36:13, 36:16

**guarantor** [1] - 6:11
**guess** [1] - 16:23
**guest** [1] - 3:15

**H**

**Hammonton** [2] - 7:1, 7:5
**hard** [3] - 8:1, 24:5, 35:8
**hastily** [1] - 28:21
**head** [1] - 26:25
**hear** [2] - 21:5, 31:25
**heard** [2] - 36:8, 36:17
**heck** [1] - 19:10
**helpful** [1] - 36:5
**himself** [2] - 13:14, 25:23
**history** [1] - 28:23
**holder** [4] - 4:17, 9:9, 21:22
**HOLDINGS** [1] - 1:11
**Holdings** [1] - 3:4
**home** [2] - 34:20, 34:21
**Honor** [15] - 3:10, 3:16, 3:20, 18:5, 18:9, 21:7, 21:16, 23:15, 24:19, 26:23, 30:18, 32:1, 35:13, 38:1, 38:3
**HONORABLE** [1] - 1:19
**hope** [2] - 35:23, 36:3

**I**

**idea** [3] - 16:3, 16:10
**identical** [2] - 12:16, 12:17
**identified** [1] - 32:7
**identifies** [1] - 7:18
**imagination** [1] - 17:17
**immediately** [2] - 12:2, 15:24
**implication** [1] - 23:24
**important** [2] - 20:20, 34:5
**impossible** [1] - 14:23
**inclination** [1] - 33:7
**incorrectly** [1] - 33:12
**incurred** [1] - 11:15
**independent** [1] - 31:7
**indicated** [2] - 13:4, 23:15
**indication** [1] - 19:14
**individuals** [1] - 3:5

**insecurity** [1] - 27:8
**insists** [1] - 27:10
**insolvent** [1] - 31:12
**installment** [4] - 15:8, 15:14, 16:13, 29:1
**instance** [1] - 32:6
**instinctive** [1] - 28:10
**insurable** [2] - 6:13, 6:15
**INSURANCE** [1] - 1:3
**insurance** [44] - 5:17, 6:2, 7:16, 8:3, 8:21, 9:4, 9:8, 10:25, 11:11, 11:16, 13:4, 13:10, 13:13, 13:17, 13:20, 13:21, 15:15, 15:20, 15:21, 15:22, 15:23, 16:1, 16:18, 17:18, 19:24, 24:3, 24:22, 25:17, 25:20, 25:22, 26:1, 26:2, 26:13, 27:3, 27:21, 28:14, 28:19, 29:7, 29:14, 30:8, 30:24, 32:13
**Insurance** [3] - 3:2, 3:12, 20:9
**insured** [53] - 6:1, 6:8, 6:11, 6:18, 6:19, 7:6, 7:24, 8:6, 8:17, 8:22, 8:23, 9:3, 9:18, 9:23, 9:25, 10:23, 10:25, 11:7, 11:18, 11:22, 12:6, 12:25, 13:3, 13:10, 13:14, 13:16, 13:20, 14:6, 14:13, 14:16, 14:19, 14:21, 15:3, 15:8, 15:12, 16:8, 17:7, 17:8, 17:20, 20:1, 20:7, 23:17, 24:22, 25:19, 25:23, 26:3, 27:11, 27:12, 28:13, 29:14, 34:21
**insureds** [2] - 6:16, 25:21
**insurer** [10] - 13:11, 23:20, 23:24, 23:25, 24:22, 25:6, 25:9, 26:3, 26:4, 27:2
**intent** [11] - 9:24, 12:8, 13:2, 14:4, 15:1, 19:4, 19:6, 19:15, 20:21, 24:4
**intention** [1] - 23:16
**interchange** [1] - 9:22
**interest** [5] - 6:10, 6:14, 6:15, 15:9, 30:3
**interested** [1] - 29:21,

29:22, 29:23
**interesting** [4] - 16:11, 23:22, 30:6, 34:5
**interests** [2] - 26:5, 26:6
**interpretation** [1] - 28:1
**interpreted** [2] - 13:25, 28:15
**interpreting** [2] - 20:17, 35:10
**IRENAS** [1] - 1:19
**issue** [21] - 10:17, 14:1, 18:19, 20:14, 20:15, 22:23, 22:24, 23:7, 23:9, 23:10, 23:14, 26:10, 28:1, 31:11, 32:23, 34:11, 34:12, 35:4, 35:7, 35:8, 37:24
**issued** [2] - 6:3, 15:20
**issues** [9] - 4:20, 23:4, 29:4, 29:15, 32:7, 33:8, 33:9, 34:5
**itself** [7] - 7:18, 19:13, 19:16, 21:4, 21:20, 28:20, 34:15

## J

**Jane** [1] - 20:11
**January** [1] - 9:19
**JEFFREY** [2] - 1:12, 2:8
**Jeffrey** [1] - 3:20
**JEI** [1] - 1:6
**Jersey** [5] - 5:14, 6:7, 30:22, 30:24, 31:1
**JERSEY** [3] - 1:1, 1:16, 1:20
**JOHN** [1] - 1:16
**joined** [1] - 36:10
**Joseph** [1] - 7:10
**JOSEPH** [3] - 1:7, 1:19, 2:11
**judge** [3] - 33:21, 34:6, 36:6
**Judge** [24] - 5:10, 6:25, 22:25, 23:12, 27:17, 28:17, 29:17, 29:20, 29:24, 30:13, 31:8, 31:23, 33:16, 33:23, 35:14, 35:16, 35:25, 36:1, 36:7, 37:7, 37:8, 37:9, 37:20, 38:2
**JUDGE** [1] - 1:19
**judge's** [1] - 33:12
**Judges** [1] - 33:8

**judges** [3] - 33:25, 37:16
**judgment** [8] - 3:6, 5:7, 21:8, 32:4, 33:17, 34:8, 35:17, 37:25
**July** [7] - 8:3, 17:10, 17:12, 17:22, 18:16, 24:11, 29:12
**JUNE** [1] - 1:15
**June** [17] - 7:3, 8:3, 8:8, 8:11, 10:8, 14:10, 15:3, 15:6, 15:11, 16:2, 16:16, 16:23, 16:24, 19:1, 19:7, 20:22, 24:6

## K

**kind** [6] - 4:14, 9:14, 13:1, 27:22, 30:23, 33:20
**kinds** [2] - 9:3, 29:4
**knowing** [2] - 21:1, 27:1
**known** [2] - 13:17, 23:13

## L

**language** [2] - 12:18, 14:10
**last** [3] - 13:16, 30:1, 34:3
**late** [1] - 15:9
**law** [4] - 12:11, 12:15, 23:2, 23:11
**laws** [1] - 12:16
**lawyers** [3] - 33:25, 36:2
**leaning** [1] - 37:16
**least** [13] - 5:14, 6:2, 7:9, 8:24, 9:10, 9:23, 10:17, 12:5, 16:11, 19:8, 20:15, 24:21, 28:24
**leaving** [1] - 26:9
**left** [1] - 26:7
**legal** [5] - 7:20, 12:24, 16:20, 35:4, 35:7
**lend** [1] - 27:10
**lending** [2] - 26:24, 26:25
**letter** [6] - 10:13, 15:11, 24:6, 24:7, 24:8, 24:10
**letterhead** [2] - 7:20, 36:22
**letters** [1] - 15:18

**liability** [1] - 31:7
**licensed** [1] - 30:22
**life** [1] - 30:8
**Light** [1] - 3:20
**LIGHT** [21] - 2:8, 3:20, 18:4, 21:7, 21:9, 21:12, 21:16, 22:3, 22:8, 22:11, 22:25, 23:12, 24:19, 25:4, 25:25, 26:18, 26:23, 27:17, 28:17, 29:17, 35:13
**limited** [1] - 30:25
**line** [1] - 34:8
**lines** [3] - 30:16, 30:19, 30:21
**listed** [2] - 7:7, 7:10
**lists** [1] - 4:7
**LLC** [15] - 1:7, 1:9, 1:11, 2:9, 3:4, 3:8, 3:21, 4:3, 7:8, 7:9, 10:5, 21:7, 21:22, 32:10
**LLP** [1] - 2:10
**located** [5] - 6:6, 7:1, 7:4, 36:20
**logically** [1] - 24:21
**look** [2] - 23:18, 25:8
**looked** [4] - 12:13, 31:21, 36:15, 36:16
**loss** [3] - 27:20, 27:21
**lost** [1] - 7:13

## M

**MACKLER** [1] - 2:7
**Mackler** [1] - 3:21
**magistrate** [5] - 36:5, 37:2, 37:6, 37:9, 37:10
**mail** [3] - 10:15, 10:16, 13:16
**mailed** [13] - 10:4, 10:8, 10:18, 14:4, 14:24, 17:10, 17:11, 17:12, 18:21, 18:24, 18:25, 19:4, 20:22
**mailing** [6] - 8:19, 8:22, 13:11, 13:20, 21:3, 25:21
**major** [1] - 3:7
**managing** [3] - 6:4, 30:4
**March** [1] - 9:19
**Marshall** [1] - 3:11
**MARSHALL** [1] - 2:2
**mass** [1] - 4:24
**matches** [1] - 9:14
**matter** [2] - 3:1, 37:21

**Matter** [1] - 38:6
**mean** [12] - 5:13, 7:4, 8:9, 20:4, 20:25, 23:5, 25:24, 27:14, 27:19, 28:4, 29:4, 31:18
**meaning** [4] - 7:13, 13:11, 18:15, 33:11
**means** [3] - 8:21, 9:8, 30:11
**mention** [1] - 8:12
**mentioned** [2] - 14:25, 15:1
**Michael** [1] - 3:22
**MICHAEL** [1] - 2:11
**might** [4] - 4:20, 21:3, 36:3, 36:5
**million** [1] - 21:22
**MINTZ** [1] - 2:7
**minute** [2] - 11:21, 15:6
**missing** [1] - 15:8
**MITCHELL** [1] - 1:15
**mix** [1] - 12:10
**modification** [1] - 9:7
**moment** [2] - 5:23, 6:1
**money** [2] - 11:9, 17:21
**month** [1] - 37:2
**monthly** [2] - 7:24, 11:17
**morning** [4] - 3:10, 3:20, 3:22, 23:13
**mortgage** [2] - 9:9, 21:22
**mortgagee** [1] - 38:6
**mortgagee** [30] - 4:18, 7:11, 7:13, 9:5, 9:10, 9:12, 9:15, 13:24, 24:23, 25:10, 25:13, 25:14, 25:15, 26:4, 26:5, 26:7, 26:15, 27:4, 27:5, 27:10, 27:13, 28:7, 32:10, 32:13, 32:21, 32:23, 33:2, 34:20, 34:21
**mortgagee's** [1] - 20:16
**mortgagees** [2] - 7:7, 7:10, 26:25
**most** [1] - 21:3
**motion** [3] - 21:14, 32:19, 32:20
**motions** [7] - 3:6, 21:18, 32:4, 32:10, 32:19, 35:16, 37:24
**move** [3] - 21:8, 37:5, 37:21
**moved** [2] - 21:6, 21:10
**mover** [2] - 21:6

**moving** [1] - 21:15
**MR** [73] - 3:10, 3:16, 3:19, 3:20, 3:22, 3:25, 4:2, 4:6, 4:9, 4:12, 4:15, 4:17, 5:4, 5:6, 5:10, 6:20, 6:22, 6:25, 18:4, 18:5, 18:9, 18:12, 18:17, 21:7, 21:9, 21:11, 21:12, 21:16, 22:3, 22:8, 22:11, 22:25, 23:12, 24:19, 25:4, 25:25, 26:18, 26:23, 27:17, 28:17, 29:17, 29:20, 29:23, 30:6, 30:13, 30:18, 30:20, 31:2, 31:4, 31:8, 31:17, 31:23, 32:1, 35:13, 35:14, 35:19, 35:22, 35:25, 36:1, 36:7, 36:11, 36:13, 36:17, 36:21, 36:23, 37:7, 37:9, 37:14, 37:20, 37:22, 38:1, 38:2, 38:3
**must** [2] - 15:5, 15:20
**myriad** [2] - 30:14, 32:2

## N

**name** [3] - 7:20, 13:10, 25:19
**named** [4] - 5:20, 6:15, 8:17, 8:23
**necessary** [1] - 28:22
**need** [3] - 21:19, 28:21, 34:11
**negotiate** [1] - 28:2
**negotiated** [3] - 27:18, 27:20, 27:24
**never** [5] - 10:6, 16:6, 24:23, 27:15
**nevertheless** [1] - 6:13
**NEW** [3] - 1:1, 1:16, 1:20
**New** [8] - 5:14, 6:7, 7:17, 30:22, 30:24, 31:1, 36:19, 36:20
**new** [4] - 27:3, 36:8, 37:9, 37:10
**next** [2] - 14:3, 14:8
**NJSA** [1] - 18:15
**NO** [1] - 1:5
**no-brainer** [1] - 28:11
**Nobody** [1] - 34:16
**nobody** [2] - 8:2, 27:15

nobody's [1] - 31:11
non [8] - 9:11, 15:13, 20:10, 22:6, 22:9, 22:19, 22:22, 26:21
non-payment [2] - 9:11, 15:13
non-precedential [6] - 20:10, 22:6, 22:9, 22:19, 22:22, 26:21
nonpayment [1] - 8:25
nothing [6] - 6:14, 19:8, 19:16, 24:2, 29:17, 34:8
Nothing [2] - 15:25, 35:13
notice [61] - 5:19, 5:20, 8:19, 8:23, 9:9, 9:12, 9:15, 9:24, 10:2, 11:20, 12:8, 13:1, 13:2, 13:6, 13:12, 13:13, 13:16, 13:20, 13:23, 14:3, 14:9, 14:13, 14:16, 14:25, 15:22, 16:19, 17:3, 17:12, 17:13, 17:16, 17:24, 19:4, 19:13, 19:15, 19:23, 20:1, 20:21, 21:24, 23:16, 23:19, 24:4, 25:7, 25:9, 25:11, 25:13, 25:14, 25:21, 25:22, 26:6, 26:14, 27:12, 28:7, 28:22, 29:1, 29:7, 29:12, 32:14, 33:3
notices [2] - 14:15, 15:1
notify [1] - 37:11
Number [2] - 19:12, 21:24
number [1] - 27:2

**O**

obligation [2] - 24:23, 24:24
observe [1] - 11:23
obvious [2] - 11:4, 11:5
occur [1] - 24:24
occurred [1] - 8:8
occurs [1] - 15:4
odds [1] - 19:24
OF [2] - 1:1, 1:20
OFFICIAL [1] - 1:25
official [2] - 7:19, 15:21
old [1] - 33:15
once [1] - 36:24

Once [1] - 14:23
One [1] - 20:11
one [21] - 4:23, 5:3, 5:19, 6:5, 7:7, 8:12, 9:3, 11:2, 11:4, 12:9, 12:10, 14:18, 14:19, 17:8, 17:22, 18:23, 21:24, 23:25, 34:7, 37:10
opinion [9] - 13:25, 20:10, 20:25, 22:16, 26:21, 26:24, 33:14, 33:17, 33:24
opinions [2] - 33:24, 34:4
order [5] - 21:14, 32:16, 32:17, 34:8, 37:24
orders [1] - 33:17
ORLANDO [12] - 2:5, 3:16, 5:4, 5:6, 18:12, 18:17, 21:11, 30:18, 31:17, 32:1, 36:1, 38:3
Orlando [1] - 3:17
otherwise [1] - 25:7
Otherwise [1] - 26:7
ought [3] - 10:1, 10:19, 12:9
overruling [1] - 33:22
owe [1] - 35:1
owed [2] - 12:5, 12:6
own [3] - 9:6, 18:25, 26:5
owner [1] - 6:10

**P**

packet [1] - 31:13
page [2] - 34:4
paid [13] - 7:14, 7:23, 7:25, 8:4, 8:5, 11:6, 16:12, 16:13, 23:18, 24:14, 28:24, 28:25
PALANDECH [1] - 2:5
panel [4] - 22:14, 22:15, 22:20, 22:21
panicked [2] - 17:13, 17:14
paper [3] - 4:19, 4:20, 35:19
papers [8] - 4:24, 5:2, 5:7, 6:9, 6:12, 10:3, 14:8, 14:14
paragraph [3] - 19:2, 20:17, 26:11
paragraphs [1] - 23:11
part [1] - 11:14
participating [1] -

3:13
particularly [1] - 23:4
parties [1] - 36:8
PARTY [1] - 1:9, 1:13
party [3] - 3:3, 21:15, 26:16
past [1] - 15:16
pay [11] - 15:10, 17:23, 29:9, 31:15, 31:16, 31:22, 32:16, 34:23, 35:1
payable [2] - 7:15
payee [3] - 7:13, 27:20, 27:22
paying [2] - 7:25, 11:15
payment [8] - 5:1, 8:5, 9:11, 9:20, 9:21, 11:7, 15:13, 15:16
Payment [7] - 7:19, 15:11, 19:4, 19:5, 29:25, 36:9, 36:18
payments [3] - 7:24, 9:18, 11:17
pays [1] - 15:8
PC [3] - 2:2, 2:5, 2:8
pending [1] - 35:22
Pennsylvania [1] - 23:2, 23:5
Pennsylvania's [2] - 12:13, 12:15
people [2] - 18:7, 30:21
percent [1] - 12:17
period [7] - 6:5, 6:16, 13:9, 24:17, 25:18
periodic [1] - 7:25
periods [1] - 7:8
person [2] - 21:2, 21:3
PFEFFER [1] - 2:7
phrase [1] - 30:6
picking [1] - 7:2
PLAINTIFF [3] - 1:4, 2:3, 2:6
plaintiff [3] - 3:7, 3:12, 3:17
Plan [6] - 7:19, 15:11, 19:4, 29:25, 36:9, 36:18
plan [1] - 5:1
Plan's [1] - 19:5
players [1] - 3:7
PLAZA [1] - 1:16
pleadings [2] - 18:20, 18:23
PLF [1] - 1:9
plunge [1] - 23:9
pocket [1] - 31:20
point [3] - 8:4, 10:1, 10:18, 16:15, 21:1,

24:5, 24:14, 24:15, 24:20, 29:24, 33:6, 34:15, 35:4
Polansky [1] - 3:11
POLANSKY [5] - 2:3, 3:10, 3:19, 37:9, 38:1
policies [2] - 15:19, 30:24
policy [55] - 4:7, 4:17, 6:2, 6:5, 7:5, 7:7, 7:8, 7:11, 7:17, 8:14, 8:15, 8:19, 8:22, 9:6, 9:8, 10:25, 11:6, 12:2, 12:23, 15:15, 15:21, 16:5, 16:9, 16:14, 16:20, 16:21, 17:7, 17:9, 17:19, 17:20, 17:23, 18:2, 18:13, 18:15, 19:20, 20:6, 20:18, 24:1, 24:22, 25:4, 25:6, 25:8, 25:25, 27:1, 27:2, 27:6, 27:11, 27:12, 28:18, 29:11, 29:13, 30:11, 32:11, 32:25
PONZI [1] - 2:5
portion [1] - 11:10
position [9] - 16:21, 21:21, 21:23, 24:20, 28:5, 32:11, 32:25, 34:7, 36:25
power [4] - 10:23, 10:24, 12:1, 12:23
PPP [13] - 5:1, 7:21, 10:10, 16:1, 16:14, 21:4, 24:7, 29:6, 32:6, 32:12, 32:22, 33:1, 37:13
practice [1] - 25:15
pre [1] - 33:15
precedential [13] - 20:10, 22:4, 22:6, 22:9, 22:10, 22:14, 22:16, 22:19, 22:22, 26:21, 33:16
prejudging [1] - 29:15
premium [50] - 4:25, 5:1, 5:17, 7:17, 7:23, 8:6, 8:25, 9:11, 9:23, 10:21, 10:22, 10:23, 11:7, 11:10, 11:11, 11:12, 11:16, 11:22, 11:24, 12:4, 12:6, 12:22, 13:4, 13:9, 13:15, 13:18, 16:4, 16:6, 16:7, 16:12, 16:13, 16:25, 18:1, 18:14, 18:25, 19:9,

20:6, 23:20, 23:23, 24:14, 25:5, 25:18, 28:24, 28:25, 29:10
Premium [7] - 7:19, 15:11, 19:4, 19:5, 29:25, 36:9, 36:18
premiums [1] - 12:3
prescribed [1] - 25:9
pretty [3] - 5:16, 12:19, 21:17
previously [1] - 15:14
problem [3] - 20:7, 22:1, 26:23
problems [1] - 21:24
procedure [1] - 33:23
proceeds [2] - 32:13, 32:16
process [1] - 23:15
produced [1] - 4:19
proper [1] - 35:1
properly [7] - 20:5, 20:6, 20:19, 32:11, 33:1, 34:19
property [3] - 6:6, 6:10, 6:15
protect [2] - 12:25, 15:23
protectable [1] - 26:5
protection [1] - 25:15
provides [2] - 9:15, 11:12
providing [1] - 26:13
provision [6] - 9:2, 9:6, 9:15, 13:22, 27:10, 27:22
provisions [5] - 8:13, 11:23, 13:23, 26:17, 27:18
published [2] - 22:5, 22:7
pure [1] - 35:4
purport [1] - 24:12
purports [1] - 14:5
purposes [1] - 32:22
put [5] - 10:19, 10:21, 12:21, 14:12, 27:24
puts [2] - 12:24, 34:6

**Q**

questions [4] - 21:19, 30:14, 31:9, 32:2
quick [2] - 17:13, 17:15
quite [3] - 4:20, 12:16, 34:4

## R

**R.M.R** [1] - 1:25
**raised** [1] - 26:20
**ran** [2] - 17:13, 17:14
**rate** [1] - 16:5
**rather** [2] - 20:23, 33:13
**re** [1] - 36:23
**re-double** [1] - 36:23
**reach** [2] - 22:20, 35:2
**reaches** [1] - 22:21
**react** [1] - 29:2
**reacted** [6] - 28:6, 28:7, 28:8, 28:20, 29:2
**reaction** [2] - 19:20, 28:10
**read** [4] - 18:19, 28:6, 28:8, 28:11
**reading** [1] - 25:16
**really** [15] - 14:23, 17:11, 24:5, 24:18, 25:25, 26:1, 28:5, 29:10, 30:11, 31:7, 34:9, 34:16, 35:4, 35:21, 36:25
**reason** [9] - 5:12, 9:1, 9:13, 15:19, 17:3, 17:4, 17:5, 17:6, 22:11
**reasoning** [1] - 33:20
**reasons** [3] - 27:3, 33:18, 35:15
**receive** [3] - 10:14, 15:21, 32:14
**received** [6] - 10:6, 10:7, 15:15, 16:1, 19:21, 19:22
**receivership** [2] - 31:19, 31:20
**receives** [2] - 11:22, 25:11
**record** [6] - 7:22, 10:11, 15:25, 18:9, 19:12, 19:16, 24:2, 30:21, 35:5
**records** [5] - 10:10, 18:25, 19:6, 19:9, 21:4
**reduce** [1] - 12:5
**refer** [1] - 5:24
**referred** [2] - 6:3, 12:13
**referring** [1] - 5:14
**refers** [1] - 14:9
**refundable** [1] - 11:11
**refunded** [1] - 11:13
**regard** [4] - 21:20,

21:21, 23:13, 24:21
**regularly** [1] - 34:3
**regulatory** [1] - 26:12
**reinstate** [3] - 19:19, 29:1, 29:7
**reinstated** [4] - 15:19, 16:10, 16:14, 29:8
**reinstatement** [3] - 15:22, 24:9, 28:23
**rejected** [1] - 26:21
**relates** [3] - 16:25, 20:15, 23:7
**relevant** [2] - 8:2, 23:4
**rely** [1] - 22:3
**relying** [1] - 26:15
**remain** [1] - 32:8
**remaining** [1] - 18:7
**Remember** [1] - 16:2
**REPORTER** [1] - 1:25
**request** [12] - 13:9, 15:14, 15:18, 15:23, 16:1, 16:15, 19:19, 23:21, 23:23, 25:5, 25:19
**requested** [1] - 16:14
**requesting** [1] - 24:8
**required** [4] - 1:23, 5:20, 13:6, 25:7
**requirements** [2] - 13:23, 30:25
**requires** [2] - 13:2, 14:24
**requiring** [1] - 32:16
**resolved** [2] - 32:8, 35:6
**rest** [1] - 22:21
**restaurant** [4] - 4:11, 6:1, 6:7, 8:10
**restaurant/entertainment** [1] - 4:14
**restrictions** [1] - 26:13
**return** [2] - 11:24, 16:4
**reverses** [1] - 20:12
**rightly** [2] - 23:1, 26:10
**rights** [3] - 20:16, 27:7, 34:24
**rise** [1] - 38:5
**role** [2] - 30:10, 33:13
**room** [2] - 10:16, 10:17
**Roth** [1] - 20:11
**roughly** [1] - 7:12

## S

**S.W** [20] - 1:6, 1:9, 2:9, 2:11, 3:2, 3:4, 3:8,

3:21, 3:24, 3:25, 4:4, 5:1, 6:8, 6:16, 6:17, 8:18, 21:7, 21:21, 32:10
**sat** [1] - 34:2
**SAYEGH** [1] - 2:7
**scenario** [2] - 24:16, 30:12
**scheduling** [2] - 36:6, 37:16
**second** [1] - 25:10
**Section** [4] - 1:24, 25:6, 26:12, 28:15
**section** [2] - 26:11, 26:17
**secured** [1] - 26:24
**security** [2] - 11:14, 11:15
**See** [1] - 33:15
**see** [7] - 5:10, 5:21, 14:24, 18:20, 19:1, 23:6, 37:12
**seeking** [1] - 32:15
**seem** [2] - 12:11, 34:14
**sell** [2] - 30:24, 30:25
**send** [2] - 16:6, 29:12
**sends** [1] - 16:18
**SENIOR** [1] - 1:19
**sense** [2] - 11:14, 21:25
**sent** [15] - 9:25, 13:3, 14:11, 14:13, 14:16, 14:19, 14:21, 15:14, 16:1, 16:6, 19:6, 19:13, 19:14, 24:8, 29:6
**separate** [4] - 9:5, 27:21, 30:3, 33:3
**served** [1] - 36:12
**settlement** [4] - 37:3, 37:16, 37:18
**settlements** [1] - 37:17
**severe** [1] - 8:10
**severely** [1] - 8:8
**shall** [6] - 13:13, 13:15, 13:19, 25:9, 25:22, 26:16
**short** [3] - 16:4, 20:2, 29:9
**show** [2] - 19:6, 21:4
**shown** [2] - 8:17, 16:22
**sides** [2] - 20:25, 34:14
**significant** [2] - 16:10, 21:3
**silent** [1] - 18:7
**silly** [1] - 29:12

**similar** [2] - 5:16, 12:12
**simple** [2] - 12:10, 35:7
**simply** [1] - 32:24
**solve** [1] - 27:14
**sometime** [1] - 15:3
**sometimes** [2] - 27:21, 34:4
**somewhat** [1] - 12:14
**somewhere** [2] - 5:2, 31:20
**sorry** [1] - 5:5
**sort** [2] - 4:22, 37:4
**sounds** [1] - 21:18
**specifically** [1] - 18:23
**spend** [1] - 17:15
**square** [1] - 33:13
**squarely** [1] - 33:5
**stamped** [1] - 14:11
**stand** [1] - 35:18
**standard** [1] - 10:21
**start** [2] - 7:2, 17:1
**started** [1] - 33:23
**starts** [1] - 7:3
**State** [1] - 19:25
**state** [2] - 12:11, 18:11
**STATES** [1] - 1:1
**status** [1] - 37:4
**statute** [20] - 5:12, 5:14, 5:15, 5:17, 12:20, 14:24, 18:2, 18:14, 20:19, 23:6, 23:20, 24:21, 25:1, 25:3, 25:16, 28:1, 28:4, 28:6, 34:19, 35:11
**statutes** [1] - 12:21
**statutory** [1] - 26:12
**step** [3] - 23:14, 25:4, 25:12
**STEVEN** [1] - 2:3
**Steven** [1] - 3:10
**still** [4] - 18:15, 32:12, 34:10, 36:8
**stops** [1] - 32:2
**straightened** [1] - 37:12
**strange** [1] - 17:2
**studying** [1] - 17:15
**sub** [2] - 20:17, 26:11
**sub-paragraph** [2] - 20:17, 26:11
**Subject** [1] - 34:24
**subject** [1] - 13:24
**submitted** [2] - 13:14, 25:23
**subsection** [1] - 28:16
**Suffice** [1] - 30:13

**suggest** [2] - 4:21, 11:23
**suggestion** [1] - 8:4
**suggests** [2] - 6:14, 8:2
**summary** [6] - 3:6, 5:7, 21:8, 32:4, 35:17, 37:24
**surface** [1] - 11:5
**surplus** [3] - 30:16, 30:19, 30:21
**SW** [2] - 7:8, 7:9
**SWEETWATER** [1] - 1:11
**Sweetwater** [13] - 3:4, 3:23, 4:1, 4:5, 4:8, 4:10, 5:25, 6:7, 6:8, 14:5, 14:18, 15:12, 20:7
**system** [1] - 30:9

## T

**talks** [1] - 37:18
**telephone** [2] - 3:13, 3:15
**terminate** [1] - 10:25
**terminated** [1] - 20:6
**terms** [1] - 27:17
**theoretical** [2] - 33:7, 33:9
**theory** [1] - 19:25
**thereafter** [2] - 13:9, 25:19
**Thereafter** [1] - 15:3
**thinking** [1] - 17:18
**thinks** [1] - 11:4
**THIRD** [1] - 1:13
**third** [2] - 3:3, 26:16
**Third** [8] - 12:14, 13:24, 20:4, 22:15, 22:17, 26:21, 33:13, 33:18
**THIRD-PARTY** [1] - 1:13
**third-party** [2] - 3:3, 26:16
**THOMAS** [1] - 2:5
**three** [9] - 13:19, 14:14, 17:2, 17:8, 23:14, 24:17, 25:4, 34:3, 37:2
**Throws** [1] - 20:24
**timeframe** [2] - 8:3, 12:18
**timeframes** [2] - 20:20, 20:24
**timely** [1] - 9:21
**Title** [1] - 1:24

**today** [1] - 32:9
**Tom** [1] - 3:16
**totally** [1] - 19:24
**towards** [1] - 37:17
**trades** [1] - 4:4
**trading** [3] - 4:8, 6:8, 6:17
**transferred** [1] - 37:7
**trouble** [1] - 33:8
**true** [3] - 1:23, 14:12, 14:16
**trying** [1] - 11:16
**turning** [1] - 37:24
**turns** [1] - 26:24
**two** [8] - 3:7, 7:7, 8:13, 9:3, 12:16, 19:12, 23:2, 26:1
**type** [1] - 7:12
**types** [1] - 8:13

## U

**U.S** [2] - 1:19, 1:25
**U.S.C** [1] - 1:24
**ultimately** [1] - 32:25
**Under** [1] - 23:11
**under** [7] - 8:14, 12:15, 20:16, 20:19, 23:1, 26:16, 34:19
**unearned** [4] - 11:12, 11:22, 16:7, 29:10
**UNITED** [1] - 1:1
**unless** [3] - 23:10, 26:14, 34:11
**unpaid** [1] - 12:3
**unpublished** [2] - 22:4, 34:4
**unused** [1] - 11:10
**unusual** [1] - 21:16
**up** [5] - 7:14, 8:4, 24:14, 29:5, 34:15

## V

**valid** [3] - 23:10, 32:6, 32:22
**VASSALOTTI** [38] - 2:11, 3:22, 3:25, 4:2, 4:6, 4:9, 4:12, 4:15, 4:17, 5:10, 6:20, 6:22, 6:25, 18:5, 29:20, 29:23, 30:6, 30:13, 30:20, 31:2, 31:4, 31:8, 31:23, 35:14, 35:19, 35:22, 35:25, 36:7, 36:11, 36:13, 36:17, 36:21, 36:23, 37:7, 37:14,

37:20, 37:22, 38:2
**Vassalotti** [1] - 3:22
**venue** [1] - 4:14
**version** [2] - 5:14, 14:12
**versus** [4] - 3:2, 3:4, 20:8, 28:13
**views** [1] - 23:13
**Vs** [1] - 1:5

## W

**Walnut** [11] - 6:4, 14:20, 29:25, 30:2, 30:3, 31:4, 31:21, 36:8, 36:13, 36:16
**wants** [5] - 12:3, 12:4, 17:21, 22:15, 37:3
**Warner** [1] - 3:11
**WARNER** [1] - 2:2
**week** [3] - 24:17, 30:1
**weeks** [4] - 17:2, 17:8, 37:2, 37:12
**weigh** [1] - 22:17
**Westchester** [1] - 20:9
**whole** [3] - 19:24, 24:16, 26:10
**wildest** [1] - 17:17
**Williams** [2] - 37:8, 37:9
**wonder** [2] - 10:15, 11:2
**words** [4] - 11:10, 12:24, 20:5, 30:4
**worry** [3] - 20:20, 33:20, 33:21
**writes** [1] - 15:11
**written** [3] - 8:19, 8:23, 9:9
**wrongly** [3] - 22:12, 22:25, 26:10

## Y

**year** [2] - 6:5, 7:23
**years** [1] - 34:3
**York** [3] - 7:18, 36:19, 36:20
**yourself** [1] - 15:24